## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DIANE KLAUS,**

   **Plaintiff,**

  **vs.**            **Civ. No. 20-1105  JFR/KK**

**VILLAGE OF TIJERAS, JAKE
BRUTON, DON JOHNSON, FELIX
GARCIA and MAXINE WILSON,
in their individual and official capacities,**

   **Defendants.**

## MEMORANDUM OPINION AND ORDER[1]

   **THIS MATTER** is before the Court on Plaintiff's *Motion for Partial Summary Judgment on Existence of Implied Employment Contract* ("Motion"), filed November 4, 2021. Doc. 126.   On November 18, 2021, Defendants filed a *Response to Plaintiff's Motion for Partial Summary Judgment on Existence of Implied Employment Contract and Cross Motion for Partial Summary Judgment* ("Cross Motion").  Doc. 141.  On February 8, 2022, Plaintiff filed a Reply to her Motion.  Doc. 167.  On February 11, 2022, Plaintiff filed a Response to Defendants' Cross Motion.  Doc. 172.  On February 23, 2022, Defendants filed a Reply to its Cross Motion.  Doc. 174.  The Court, having considered counsel's arguments, the record, and the relevant law, FINDS that Plaintiff's Motion is well taken and is **GRANTED** and Defendants' Cross Motion is not well taken and is **DENIED**.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 5, 9, 11.)

# I. FACTUAL BACKGROUND

The Village of Tijeras ("Village") hired Plaintiff as a Deputy Clerk in October of 2011. Doc. 1-1 at 2, ¶ 10.  Plaintiff successfully completed her probationary period in May of 2012.  *Id.* Plaintiff was classified as a regular, full time hourly employee.  *Id.* at ¶ 11.  From the date Plaintiff was hired until January 3, 2020, Gloria Chavez was the Mayor of the Village and was Plaintiff's direct supervisor.  *Id.* at ¶ 12.  After January 3, 2020, Defendant Jake Bruton, a former Village Council member, became the Mayor of the Village.  *Id.* at ¶ 13.

Plaintiff alleges that beginning in 2017, Defendants Bruton, Johnson, Garcia and Wilson were vocal critics and opponents of Mayor Chavez and Plaintiff and initiated a concerted effort to terminate Plaintiff's employment in retaliation for, *inter alia*, her association and affiliation with Mayor Chavez.  *Id.* at 4, ¶¶ 24-25.  Plaintiff alleges that Defendants continued their efforts until she was terminated on the recommendation of newly elected Mayor Bruton.  *Id.* at ¶ 26. On June 24, 2019, Defendants voted to change Plaintiff's Deputy Clerk position from an hourly position to a salaried position and gave Plaintiff a significant raise.  *Id.* at 10, ¶ 70.  When the Village terminated Plaintiff's employment in 2020, Defendants claimed Plaintiff's change to a salaried employee transformed her from a regular, full time, non-probationary employee who was entitled to the rights and protections afforded by the Village's Personnel Ordinance ("Ordinance") and who could only be terminated for cause, into an at-will employee who could be fired at any time, with or without cause.[2]  *Id.* at 10-11, ¶ 71.  Plaintiff disagrees.

---

[2] The termination letter identified Plaintiff as a salaried employee and stated that "as a salaried employee under the Village's personnel ordinance # 157 Section 19 [you] are entitled to all the rights and benefits of hourly employees, except that you are terminable at will, with or without cause.  It is pursuant to that section that I recommend your termination as a salaried employee."  Doc. 102-1 (Exh. 1) at 1.  The letter went on to say that "in view of your long-time employment with the Village I also performed a review of your performance to assess whether or not there is cause for terminating you.  That review indicates that if you are now protected by the Village personnel ordinance, meaning you can only be terminated for cause, there clearly is cause."  *Id.* at 2.  The lion's share of the letter then addressed Plaintiff's role in what was characterized as illegal PERA reimbursements without the Council's authorization.  *Id.* at 2-3.  The letter also noted other reimbursement issues and that documentation confirmed a

On September 21, 2020, Plaintiff filed a *Complaint for Declaratory Judgment, Breach of Implied Contract of Employment, Retaliatory Discharge in Violation of Whistleblower Protection Act, Violation of Contract Clause Rights, and Violation of First Amendment Right of Political Association* ("Complaint") against the Defendants.  Doc. 1-1.  Defendants removed the case to this Court on October 27, 2020, based on original jurisdiction pursuant to 28 U.S.C. §§ 1331.  Doc. 1 at 1-2.

## II.  LEGAL STANDARD

A motion for summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); Fed. R. Civ. P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact."  *Catrett*, 106 S. Ct. at 2552 (internal quotation marks omitted); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).  Once the movant meets this burden, the non-moving party is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986); Fed. R. Civ. P. 56(c).  "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (internal

---

"continued pattern of behavior leading to disorganization, poor record-keeping, [and] poor communications both internally and with the public."  *Id.* at 3.  The letter notified Plaintiff of her right to a hearing to determine whether the decision to terminate her was affirmed, reversed or modified.  *Id.* at 4.

citations omitted); *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016).  Only material factual disputes preclude the entry of summary judgment.  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

The trial judge is not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson,* 106 S. Ct. at 2512.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 2510.  To carry its initial burden, the moving party need not negate the nonmoving party's claim.  *See Allen v. Muskogee, Okla*., 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998).  "'Instead, the movant only bears the initial burden of 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id*. (quoting *Catrett*).  Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Catrett*, 106 S. Ct. at 2552 (quoting Fed. R. Civ. P. 56(e)).  A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim.  *See Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp*., 106 S. Ct. 1348, 1356 (1986) (citation omitted).  Upon a motion for summary judgment, a court "must view

the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g., Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

### III.  <u>MATERIAL FACTS</u>

On October 18, 2011, Plaintiff was hired by the Village as a part-time Deputy Clerk. Doc. 126 at 2, ¶ 1. On December 26, 2011, Plaintiff became a full-time Deputy Clerk. *Id.* Plaintiff served as Acting Clerk from August 25, 2012 to March 2015, from March 20, 2016 to April 17, 2018, and from November 19, 2018 to July 28, 2019. *Id.* As Acting Clerk, Plaintiff was responsible for, among other things, supervising all employees and recommending disciplinary action of employees to the Mayor under Section 3 of the Ordinance. *Id.*

On March 17, 2014, the Village adopted the Ordinance which was in effect during the period of time Plaintiff was employed by the Village. Doc. 126 at 2, ¶ 2. The Ordinance serves "as the primary Personnel Policy by which employees shall conduct Village business and personnel relations." *Id.* at ¶ 3. New, part or full-time employees of the Village serve a six (6) month probationary period, and employees on probationary status can be terminated without cause. *Id.* at 3, ¶ 4. Upon submission of a satisfactory job performance by an employee's department head after the six-month probationary period has ended, new part or full-time employees "will obtain a regular status."[3]  *Id.* at ¶ 4. Probational employees can be terminated

---

[3] Defendants dispute that salaried employees "obtain a regular status." Doc. 141 at 3, ¶ 4. Section 6 of the Ordinance, titled "Probationary Period," states in pertinent part that new and promoted employees hired for part time or full time positions will obtain "regular status" upon written submission of a satisfactory job performance evaluation from the department head.   Doc. 126-3 at 5.

without cause and are not entitled to the rights and benefits provided under the disciplinary and grievance procedures in the Ordinance.  *Id.* at ¶ 5.  "It is recommended that the supervisor utilize the performance evaluations of previous periods to review and discuss the overall progress of the employee with respect to village employment."  *Id.* at ¶ 7.  Plaintiff received satisfactory performance evaluations from her supervisors on April 26, 2012, May 7, 2013, April 23, 2014, and Marcy 6, 2016, all of which were issued more than six months after the Village hired Plaintiff and two of which were issued more than six months after Plaintiff became a full-time Deputy Clerk.  *Id.* at ¶ 6.

Section 11 of the Ordinance is titled "Termination of Employment."[4]  Doc. 126 at 3, ¶ 8; 126-3 at 6-7.  It begins by stating that "[t]ermination of employment with the Village of Tijeras may be brought about by the employee's resignation, release, layoff or dismissal."  *Id.*  Under "Dismissal," the Ordinance states that "[e]mployees may be dismissed for unsatisfactory performance, misconduct or other reasons deemed appropriate by the Village."  *Id.*

Section 15 of the Ordinance, titled "Prohibitions," sets forth a non-exhaustive list of employee actions and behaviors which "shall be grounds for disciplinary action up to and including dismissal." Doc. 126 at 3, ¶ 9; Doc. 126-3 at 8-9.

Section 16 of the Ordinance is titled "Disciplinary Action" and states *in part*

[r]easonable rules of employee conduct are necessary for the orderly and effective operation of the Village as well as to protect the rights of employees and to inform them of what behavior the Village expects from the employees.  It is the responsibility of each supervisor to keep employees informed concerning Village policies and rules of conduct.

The Village promotes a system of progressive discipline to be used with employees who violate or fail to comply with Village policies, procedures and rules or who have other performance problems.  This disciplinary procedure is designed to

---

[4] Defendants dispute that Section 11 of the Ordinance applies to salaried employees and dispute Plaintiff's interpretation of the Ordinance.  Doc. 141 at 3, ¶ 8.

correct the infraction rather than penalize employees.  Progressive discipline is used to give employees notice that:

    A.      They will not be treated in an arbitrary manner for making a mistake.
    B.      Repeated violations of rules and policies will not be tolerated.
    C.      Unacceptable performance may result in discharge.

. . .

In every situation involving any form of employee discipline, it is of the utmost importance that proper documentation be prepared.  Documentation is required to accurately record the facts of the situation while they are fresh in the minds of all concerned in case future reference becomes necessary.[5]

**A.    <u>TYPES OF DISCIPLINARY ACTION</u>**

Depending upon the nature and severity of the cause for disciplinary action, an employee may be subject to any of the following types of disciplinary action.  The employee will receive a copy of documentation, however, if no longer an employee they must pay for the copy:

    I.      Documented verbal warnings
    II.      Documented written reprimands
    III.    Probation
    IV.    Dismissal

. . .

**D.    <u>EMPLOYEE REPONSE</u>**

In the event of disciplinary action involving suspension, demotion with a decrease in pay or discharge, the employee will be given the reasons for the disciplinary action including documentation and an opportunity to respond before the action becomes effective.

Doc. 126 at 4, ¶¶ 10-12; Doc. 126-3 at 9-11

---

[5] Defendants dispute that this paragraph from Section 16 applies to salaried employees and dispute Plaintiff's interpretation of the Ordinance.  Doc. 141 at 3, ¶ 12.  (Section 19 of the Ordinance, titled "Hourly/Salary Employees," states that "[s]alaried employees are entitled to all the rights and benefits of hourly employees, except that they are terminable at will, with or without cause, [and] *have no recourse under* the disciplinary or grievance procedures outlined in the Ordinance."  Doc. 126-3 at 14 (emphasis added).  The disciplinary and grievances procedures are found in Sections 16 and 18 of the Ordinance.  Doc. 126-3 at 9-11, 13.)

Section 1(H) of the Ordinance provides that the Mayor shall "[p]rovide any employee and/or appointed official within any Department of the Village of Tijeras with a list of reasons for his or her disciplinary action."[6]  Doc. 126 at 4, ¶ 12; Doc. 126-3 at 3.

Section 17 of the Ordinance, titled "Appeal of Probations and Dismissals," provides for employees to appeal their discharge to the Village Council where "[i]t is the intent of the Village to provide for a fair and impartial hearing before the Governing Body to render a decision based on the available facts and applicable rules or mandates."[7]  Doc. 126 at 5, ¶ 13; Doc. 126-3 at 12.

Section 18 of the Ordinance, titled "Grievance," provides that employees have the right to file grievances on disciplinary actions except involuntary suspensions, demotions and dismissals.[8]  Doc. 126 at 5, ¶ 13; Doc. 126-3 at 13.

Section 19 of the Ordinance, titled "Hourly/Salary Employees," provides that "[a]ll hourly Village employees are entitled to all the rights and benefits described in the Personnel Ordinance, except where specifically stated otherwise."[9]  Doc. 126 at 5, ¶ 14; Doc. 126-3 at 14. Pursuant to the Ordinance, salaried employees are at-will employees who can be fired without cause.  Doc. 126 at 7, ¶ 22; Doc. 126-3 at 14.  Temporary and seasonal employees are not entitled to the rights and benefits provided under the Ordinance and may be terminated without cause.  Doc. 126 at 7, ¶ 23; Doc. 126-3 at 14.

---

[6] Defendants dispute that Section 1(H) applies to salaried employees and dispute Plaintiff's interpretation of the Ordinance.  Doc. 141 at 3, ¶ 12.

[7] Defendants dispute that Section 17 applies to salaried employees and dispute Plaintiff's interpretation of the Ordinance.  Doc. 141 at 4, ¶ 13.

[8] Defendants dispute that Section 18 applies to salaried employees and dispute Plaintiff's interpretation of the Ordinance.  Doc. 141 at 4, ¶ 13.

[9] Defendants dispute that Plaintiff has quoted the entirety of Section 19 and dispute Plaintiff's interpretation of the Ordinance.  Doc. 141 at 4, ¶ 15.

During the course of Plaintiff's employment, every non-probationary, non-salaried employee who was disciplined was subject to progressive discipline, and every employee who was terminated or whose termination was proposed by Plaintiff and/or the Mayor was told there was cause for their termination.  Doc. 126 at 7, ¶ 20.

In December 2017 and January 2018, the Village Council held various meetings and workshops at which they discussed Plaintiff's job performance, issued verbal warnings, written reprimands, and issued a final Notice of Verbal Warning and Written Reprimand prior to issuing a letter purporting to terminate Plaintiff.[10] [11] [12]  Doc. 126 at 6-7, ¶¶ 18, 19; Docs. 126-10 at 2, 126-11 at 2, 126-12 at 4-7 and 126-17.

On March 26, 2018, the Village Council, consisting of Defendants Wilson, Bruton, Johnson and Garcia, held a Council Meeting.  Doc. 126 at 5, ¶ 15.  During the course of that meeting, Councilor Johnson moved "that the reorganizational meeting required by the state statute of 1978 section 3-11-5 be continued until 6 PM Tuesday, March 27, 2018 at the Village Hall."[13]  Doc. 126-8 at 2.  Councilor Bruton commented that per statute

---

[10] Plaintiff asserts this was the equivalent of progressive discipline.  Doc. 126 at 6-7, ¶ 19.  Defendants "admit that, assuming Plaintiff somehow remained hourly after she was promoted in July, 2019, to a salaried position (which Defendants categorically deny), their warnings and reprimands "were the equivalent of progressive discipline[.]"  Doc. 141 at 5, ¶ 9.

[11] Defendants dispute that the intent of the meetings and workshop was "to discipline and terminate" plaintiff and argue that deposition testimony supports that the purpose of the meetings and workshops was to have a discussion regarding Plaintiff and take action if necessary.  Doc. 141 at 4, ¶ 18.

[12] On June 29, 2018, District Court Judge Shannon Bacon issued an *Order Quashing Alternative Writ of Mandamus* in which she stated, *inter alia*, that "[t]he authority to discharge an employee is provided only to the mayor and not to the council under sections 1, 2, and 16 of the Ordinance No. 157, the village's personnel ordinance."  Doc. 126-17.  Defendants state that "[t]he fact that Defendants initiated an action for declaratory relief as to the right to terminate Plaintiff on the grounds that she was not approved as Village Clerk and a different person was approved as Deputy Clerk, leaving Plaintiff without a position, does not tend to prove that Defendants tried to discipline and terminate Plaintiff.  Doc. 141 at 4, ¶ 18.

[13] Defendants object to Plaintiff's Exhibit 8 (transcribed March 26, 2018, Council meeting minutes) and argue that it is not admissible evidence as required by Fed. R. Civ. P. 56(c)(2) because it is an unsworn statement and unattached to any deposition or affidavit.  Doc. 141 at 4, ¶ 15.  "To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Brown v.*

> any organizational meeting of the governing body which shall be scheduled pursuant to section 3-8-22 NM state statute of the municipal election code the Mayor shall submit a confirmation by governing body the names of the persons that shall fill the appointee positions of the municipality, and the names of the persons that shall be employed by the municipality.  If the governing body fails to confirm any person as an appointee of the municipality, the Mayor at the next regular meeting of the governing body shall submit the name of any person or another person to fill the appointed office where to be employed by the municipality.

*Id.*  Councilor Bruton said that the Mayor must submit "all the names tomorrow" or the Village would not have any employees.  *Id.* at 2-3.

On March 27, 2018, Plaintiff and the Village Council were provided with a memorandum to explain that if a municipality such as the Village has adopted a merit personnel system in accordance with § 3-13-33 NMSA 1978, that system takes precedence over the requirements found in § 3-11-5.A NMSA 1978.[14]  Doc. 126 at 5-6, ¶ 16; Docs. 126-13, 126-16.  The memorandum further explained that municipality employees under a merit employment system do not have to be reappointed by the Mayor or reconfirmed by the governing body.  *Id.*  The memorandum stated, in pertinent part, that "it is probably a violation of implied contractual rights for the mayor to attempt to replace (at the Organizational Meeting) an employee who is included in a merit personnel system."  *Id.*

---

*Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016) (quoting *Argo*, 452 F.3d at 1199).  While this does not require that the evidence submitted at summary judgment be "in a form that would be admissible at trial," it does require that "the content or substance of the evidence [submitted at summary judgment] must be admissible." *Id.* (quoting *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006)); *see also generally Trevizo*, 455 F.3d at 1160 (citing *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005)) (explaining that parties may submit affidavits as evidence to establish a genuine issue of material fact even though affidavits are often inadmissible hearsay at trial on the theory that the same facts may ultimately be presented at trial in an admissible form).  Here, Plaintiff has presented admissible evidence, *i.e.,* deposition testimony, regarding the Council Minutes and pertinent portions therein regarding the requested list for Village employees.  Docs. 126-10 at 3-4, 126-11 at 3, 126-12 at 8; *see* Fed. R. Evid. 901(a) and (b)(1) (explaining that to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is; evidence such as, *inter alia*, testimony of a witness with knowledge).

[14] The memorandum is dated January 17, 2006.  Doc. 126-13.  Defendants dispute that the memorandum was specifically directed to them.  Doc. 141 at 4, ¶ 16.

Around the same time Plaintiff was provided with the memorandum, Plaintiff was also privy to an opinion from the head of the New Mexico Municipal League which stated that only the names of at-will employees needed to be submitted to the Village Council at its organizational meeting for approval or disapproval of continued employment.  Doc. 126 at 6, ¶ 17; Docs. 126-14, 126-16.  Plaintiff's name was not submitted to the Village Council at the organizational meeting held in March of 2018.  *Id.*

On June 24, 2019, the Village Council held a meeting at which Defendants Bruton, Johnson, Garcia, Mayor Chavez, Village employee Charlene Herrera, and Plaintiff were present. Doc. 172 at 4, ¶ 3.  In reviewing and discussing the 2019-2020 budget, Mayor Chavez and the Village Council discussed whether converting the Finance Director and Deputy Clerk positions to salaried positions would make them at-will.  *Id.*; Doc. 102-6.[15]  The minutes reflect that Mayor

---

[15] Doc. 102-6 is a "Record of Proceedings" from the June 24, 2019, Village Council meeting.  Doc. 102-6.  On August 16, 2021, Defendants objected to this exhibit in their Reply to Defendants' *Motion for Partial Summary Judgment Against Implied Contract Claims and Declaratory Relief* based on Plaintiff's failure to exhaust her administrative remedies.  Doc. 112 at 2, ¶ C.  Defendants argued there that the June 24, 2019, minutes were not submitted in a form admissible as evidence because they were neither attached to an affidavit nor to a deposition, and are not self-authenticating.  *Id.*  Defendants further argued that the statements attributed to various persons attending the meeting are hearsay and that Plaintiff has no evidence that these minutes were submitted for approval, much less approved, by the Village Council.  *Id.*  It was not necessary for the Court to address Defendants' objection in its Memorandum Opinion and Order denying Defendants' motion (Doc. 128).

Here, Defendants argue that material facts related to the discussion at the June 24, 2019, Village Council meeting about whether converting Plaintiff's position to salary would render her at-will contradicts Plaintiff's own admissions, as argued in the alternative, that the Village Council's adoption of the 2019-2020 budget changed her status from a classified employment who could only be fired for cause, to that of a salaried employee who could be fired at will. Doc. 174 at 1-4, 6.  Defendants also argue that the Court should otherwise disregard these facts as contrary to the objective actions of the Village Council taken at its July 22, 2019, meeting and the reasonable expectations of Plaintiff. *Id.* at 6.  Lastly, in a footnote as part of Defendants' Reply to its Cross-Motion, Defendants cite to their response to Plaintiff's undisputed material facts set forth in Plaintiff's *Motion for Partial Summary Judgment on Issue of Whether, At The Time She Was Fired, Plaintiff Was A Regular Full-Time, Hourly Employee Who Could Only Be Fired For Cause After being Subjected to Progressive Discipline* (Doc. 143).  There, Defendants argue that in Plaintiff's Answer to Interrogatory No. 26, Plaintiff admitted the June 24, 2019, minutes were never approved by the Village Council, and testified that any backup audio files were missing.  Doc. 152 at 3, ¶ 3.  Defendants also cite Defendants Bruton's and Johnson's deposition testimony that they did not recall any discussion at the June 24, 2019, wherein they agreed to keep Plaintiff as a classified employee.  *Id.*

To begin, Plaintiff is not prohibited from pleading in the alternative and such pleading shall not work against her.  *See Vanwinkle v. Cappelli*, 1998 WL 36030643, at *3 (D.N.M. June 11, 1998 (citing Fed. R. Civ. P. 8(e)(2); *Molsenbergen v. United States,* 757 F.2d 1016, 1019 (9th Cir.1985) ("in light of the liberal pleading policy embodied in Rule 8(e)(2)

Chavez and the Village Council agreed to convert the two positions to salary if they would not be at-will and that Councilors Bruton and Johnson agreed the positions would not be at-will.[16] Docs. 172 at 3-5, ¶¶ 2-5; 102-6 at 2.  According to the drafted minutes, the only formal action taken on the 2019-2020 budget at the June 24, 2019, council meeting was to postpone its approval.  Docs. 141 at 6, ¶ 4; 102-6 at 2.

On July 22, 2019, the Village Council voted to pass a budget resolution for fiscal year 2019-2020 which Defendants contend changed the positions of Deputy Clerk and Financial Director from hourly to salaried positions.[17]  Docs. 126 at 7, ¶ 21; 141 at 6, ¶ 2, 172 at 5, ¶ 6,

---

... a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case")).  Additionally, in Plaintiff's Answer to Interrogatory No. 26, Plaintiff states she was unable to identify the meeting at which the June 24, 2019, council meeting minutes were approved and not that they were never approved.  Doc. 152-1 at 1.  Plaintiff's deposition testimony as to the audio files was that council minutes were usually kept until the minutes were approved; that sometimes they were kept after the minutes were approved if the minutes addressed a controversial issue; and that Cheyanne Herrera was in charge in keeping the audio files in a desk drawer.  Doc. 152-2 at 6.)

As for Defendants' general objection to the June 24, 2019, Council Meeting minutes, the parties have presented admissible evidence, *i.e.,* deposition testimony, regarding the minutes and the content therein.  *See* fn. 13, *supra.*  The parties submitted deposition testimony of Village employee Cheyanne Herrera who testified that she attended the June 24, 2019, meeting; prepared the minutes; recalled the discussions between Mayor Chavez and council members Johnson and Bruton that the Finance Director and Deputy Clerk would not be at-will if moved to salaried positions; that the Village Council approved the minutes as drafted; and that Mayor Chavez initialed the minutes as approved by the Village Council.  Docs. 141-3 at 2, 158-4 at 6-7; 172 at 4, ¶ 3.  Plaintiff submitted deposition testimony of Mayor Chavez who testified that she attended the June 24, 2019, meeting; remembered stating, and having council members agree with her, that if the positions of Finance Director and Deputy Clerk were converted to salary they would not be at-will; and that she initialed the June 24, 2019, Council minutes and only did so after they were approved by the Village Council.  Docs. 172 at 4, ¶ 3, 172-5 at 4.  Plaintiff submitted her deposition testimony in which she testified that she attended the June 24, 2019, meeting; remembered the discussion of whether Mayor Chavez and the Village Council were going to make the Finance Director and Deputy Clerk salaried and/or at-will positions; and remembered that Mayor Chavez did not want the positions moved to at-will and that Defendants Bruton and Johnson agreed that the positions would not be at-will.  Docs. 172 at 4, ¶ 3, 172-1 at 4. Defendant Bruton testified that he recalls discussing changing the positions to salary, but does not recall the discussion about those two positions not becoming at-will positions.  Doc. 172-6.  Defendant Johnson testified that he remembered some of the discussion at the June 24, 2019, meeting about changing the Finance Director and Deputy Clerk positions to a salaried position if they would not be transformed into an at-will position, but disagrees with what the minutes reflect regarding his agreement.  Doc. 181-2 at 2-3.  Defendant Johnson testified that in his mind there was no choice per the Ordinance that if they were to become salaried positions they would be at-will.  *Id.*

[16] *Id.*

[17] Plaintiff disputes that the 2019-2020 budget resolution altered Plaintiff's classified status.  Plaintiff argues that if the Court were to find that the Village Council's resolution converted Plaintiff's position from an hourly to a salaried

Doc. 172-6 at 3.  The Village Council significantly increased the wages and retirement benefits

for three positions, namely, the Clerk, Deputy Clerk and Finance Director.[18]  Doc. 141 at 5-6,

¶¶ 1, 2.  Plaintiff received a fifty-five percent (55%) pay raise with her monthly income

increasing from $3,500 to $5,400 as a result of the Village's budget resolution.[19]  *Id.* at 6, ¶ 6.  At

the July 22, 2019, meeting, when the Councilors and Mayor Chavez openly discussed the subject

of Plaintiff's conversion to a salaried status, Plaintiff made no comment or mentioned that she

would remain subject to the just cause and progressive discipline provisions of the Ordinance

because she believed her protected status had been discussed at a prior Village Council meeting

on June 24, 2019.  *Id.* at 6, ¶ 3; Docs. 172 at 5, ¶ 7, 172-1 at 6.  In March of 2020, Defendant

Bruton recommended Plaintiff be terminated as an at-will employee.  Doc. 172 at 6, ¶ 11.

---

at-will position, Defendants violated the Contracts Clause of the U.S. Constitution and, therefore, the resolution is void.  Doc. 172 at 2-3, ¶ 2.  *See* Complaint, Count V, which states in pertinent part

> [i]f this Court finds that the Defendants' passage of this resolution effectively changed Plaintiff's employment status from a regular full time hourly employee who could only be fired for cause to that of a salaried employee who could be fired at will, the Defendants' enactment of this resolution substantially impaired, and in fact completely destroyed, the Plaintiff's contractual rights to and reasonable expectation of continued employment, and her reasonable expectation that she could be terminated only for cause and only if the Village followed certain procedures in accordance with the provisions of the Defendant's Personnel Ordinance.

Doc. 1-1 at 17, ¶ 108.

[18] Darlene Coleman occupied the Finance Director position between June 19, 2012 and November 18, 2019.  Doc. 172 at 3, ¶ 1.  Ms. Coleman testified that her position remained hourly until her departure in November 2019 even though the Village Council had passed the budget resolution on July 22, 2019, converting her position to a salaried position.  Doc. 172-4 at 2.  She further testified that she did not recall any conversations with the Village Councilors or Mayor Chavez about her position becoming an at-will position prior to her departure.  *Id.*  The Village Council hired a new Finance Director in November 2019 as an at-will employee.  Doc. 141 at 6, ¶ 7.  Plaintiff does not dispute this fact, but states it is irrelevant to whether the Deputy Clerk position become an at-will position as a result of the Defendants' July 22, 2019, acts.  Doc. 172 at 3, ¶ 7.

[19] Plaintiff disputes that Plaintiff's raise was part of a recruitment effort and states there are issues of material fact whether Defendants' contention they changed Plaintiff's position to a salaried at-will position as part of a recruitment effort is a pretext.  Doc. 172 at 3, ¶ 6.  Plaintiff cites testimony of Defendant Bruton in which he testified that he had the idea to change certain positions to salaried positions to attract quality people, eliminate large overtime bills and preserve the salary structure of the three affected positions.  *Id.* (citing Doc. 158-1 at 3, ).  Plaintiff argues, however, that the salary Plaintiff received far exceeded the amount she had been paid in wages and overtime in the past and that Defendant Bruton only identified the need to preserve a salary structure after he was asked a leading question by defense counsel.  Doc. 158 at 6, ¶¶ 9, 10.

Plaintiff did not know Defendants considered her an at-will employee until she received the March 20, 2020, Notice of Termination letter from Defendant Bruton in which she was informed she was being fired as an at-will employee.[20]  *Id.* at ¶ 10.  Defendants Johnson, Garcia and Wilson voted in April of 2020 to terminate Plaintiff as an at-will employee.[21]  *Id.* at ¶ 11.

The Village Council passed the 2019-2020 budget resolution in the middle of Defendant Bruton's campaign to defeat incumbent Mayor Gloria Chavez.[22]  Doc. 172 at 6, ¶ 8.  Mayor Chavez told the local newspaper that despite her being there for twenty years and bringing in "millions of dollars," Defendants wanted to make her administration look bad, which included making Plaintiff look bad, and that Defendant Bruton made the issuance of the PERA checks a campaign issue.[23]  *Id.* at ¶ 9.

## IV.  <u>SUMMARY OF ARGUMENTS</u>

### A.    <u>Plaintiff's Motion</u>

Plaintiff's Complaint brings claims for breach of implied employment contract to discharge only for cause and covenant of good faith and fair dealing (Count II) and breach of implied employment contract to follow certain procedures and covenant of good faith and fair dealing (Count III).  Doc. 1-1 at 13-15, ¶¶ 86-99.  Plaintiff's Complaint also claims that the

---

[20] Defendants argue that Plaintiff's subjective opinion and/or willful ignorance that she remained classified after accepting the benefits of a salary for eight months does not create any issue of fact.  Doc. 174 at 7.

[21] Defendants argue that "Plaintiff misrepresents the findings, which found, in the alternative to her at-will status, that if Plaintiff somehow remained classified, the evidence before the Council constituted good cause for her termination." Doc. 174 at 8.

[22] Defendants argue that Plaintiff is attempting to politicize the Village's approval of the budget at the July 22, 2109, meeting, and that the "mere fact that the Village passed the budget while a political campaign was underway did not render the budget political in any way" because the Village needs to approve a budget for every fiscal year beginning July 1.  Doc. 174 at 7.

[23] *See* fn. 2, *supra*.  Defendants argue that Plaintiff is attempting to politicize the issuance of improper employee checks which was an objectively valid reason for Plaintiff's termination.  Doc. 174 at 7-8.

Village Council violated the Contracts Clause of the United States Constitution (Count V) when they passed the 2019-2020 budget resolution which Defendants contend changed Plaintiff's hourly, classified status to a salaried, at-will employee who no longer had disciplinary and termination protections pursuant to the Ordinance.  *Id.* at 16-18, ¶¶ 105 - 111.  In Count V Plaintiff states that

> [i]f this Court finds that the Defendants' passage of this resolution effectively changed Plaintiff's employment status from a regular full time hourly employee who could only be fired for cause to that of a salaried employee who could be fired at will, the Defendants' enactment of this resolution substantially impaired, and in fact completely destroyed, the Plaintiff's contractual rights to and reasonable expectation of continued employment, and her reasonable expectation that she could be terminated only for cause and only if the Village followed certain procedures in accordance with the provisions of the Defendant's Personnel Ordinance.

Doc. 1-1 at 17, ¶ 108.

In her Motion, Plaintiff asserts that in order to maintain her breach of contract claims, she must first establish that she had an implied contract prior to the Defendants' purported change in her position in July 2019.  *Id.*  To that end, Plaintiff argues that the Village's Ordinance controlled "nearly every aspect of the employee/employer relationship," including that she could only be fired for cause and only after being subject to progressive discipline.  *Id.* at  8-13.  Citing various sections of the Ordinance and Defendants' course of conduct while Plaintiff was employed by the Village, Plaintiff asserts that the undisputed facts establish that, *prior to July 1, 2019,* she had an objectively reasonable expectation that she would only be terminated for cause and only after being subjected to progressive discipline.  *Id.* at 13-14.

For these reasons, Plaintiff moves this Court to enter summary judgment in her favor and find that she had an implied contract of employment with the Village.  *Id.* at 15.

B.  <u>**Defendants' Response to Motion and Cross-Motion**</u>

Defendants do not dispute the existence of an implied employment contract as of the date of Plaintiff's termination, or at any time during her employment with the Village.  Doc. 141 at 1. As such, Defendants contend that Plaintiff's arguments on this point do little to advance this litigation.  *Id.*  Defendants argue that Plaintiff's Motion offers no evidence and only cursory argument regarding Plaintiff's change in status in July 2019 to a salaried employee and its effect on her rights to be terminated only for cause and after being subjected to progressive discipline. *Id.* at 2.

Defendants argue that the undisputed evidence establishes that pursuant to the terms of the Ordinance, Plaintiff, as a salaried employee, was at-will.  *Id.* at 8-9.  Defendants further argue that Plaintiff's reliance on the June 24, 2019, Village Council meeting discussions regarding her at-will status is misplaced because the only relevant council action taken at the June 24, 2019, meeting was to postpone the approval or disapproval of the 2019-2020 budget.  *Id.* at 8-9.  As such, Defendants contend that the Council never took any formal action sufficient to support Plaintiff's claims regarding her continued classified, as opposed to salaried, employee status.  *Id.*

Defendants further contend that *after* the Council's formal action on July 22, 2019, when Plaintiff was converted to a salaried employee, Plaintiff had no reasonable expectation that she would only be terminated for cause and only after progressive discipline.  *Id.*  Defendants assert that "Plaintiff thus apparently maintained a silent, unarticulated 'expectation' that the Village did not convert her to an at-will, salaried employee," and that she maintained this expectation in the absence of any Village action and contrary to the Village's Ordinance that required all salaried employees to be at-will.  *Id.*   Defendants assert that Plaintiff's expectation was doubly

inexplicable in the face of the Village's similar conversion of the Financial Director's position to a salaried position. *Id.*

In sum, Defendants contend that Plaintiff has failed to offer any basis upon which a factfinder could reasonably believe that her status was not converted to salaried, at-will in July 2019. Doc. 141 at 9. Defendants, therefore, ask the Court to deny Plaintiff's Motion. *Id.* In addition, Defendants move this Court to enter summary judgment finding that Plaintiff was converted to a salaried employee on July 1, 2019, which pursuant to the Ordinance converted Plaintiff to an at-will employee at the time of her termination. Doc. 141 at 2, 7-9.

### C.      **Plaintiff's Reply to Motion**

Plaintiff asserts that in her Motion she is seeking summary judgment on the issue of whether she had an implied contract of employment *prior to July 1, 2019*, because July 1, 2019, is a pivotal date in this case when the 2019-2020 budget purported to convert the Plaintiff's Deputy Clerk position from that of a classified employee who could only be fired for cause and after being progressively disciplined into a salaried employee who could be terminated at-will. Doc. 167 at 1-2. Plaintiff states that she has challenged the constitutionality and effectiveness of the Village Council's passage of the budget resolution on the basis that that action violated the Plaintiff's Contracts Clause rights. *Id.* Plaintiff incorporates by reference her *Motion for Partial Summary Judgment on the Issue of Whether, At the Time She Was Fired, Plaintiff Was a Full Time Hourly Employee Who Could Be Fired for Cause and After Being Subject to Progressive Discipline* (Doc. 143).[24] *Id.* at 2.

---

[24] In this Motion, Plaintiff seeks summary judgment pursuant to the New Mexico Declaratory Judgment Act that (1) the Village's action in changing the Plaintiff's position of employment in this matter violated the Contracts Clause of the United States Constitution; (2) was therefore null and void *ab initio* and of no effect and did not change the Plaintiff's status as a non-at-will employee or destroy the Plaintiff's implied contract of employment; and (3) Plaintiff was a non-at-will employee entitled to progressive discipline who could be fired only for cause and had an implied contract of employment at the time she was terminated in March of 2020. Doc. 143.

Plaintiff argues that given the Defendants' acknowledgement that an implied contract existed prior to July 1, 2019, the Court must grant Plaintiff's Motion.  *Id.*

### D.      <u>Plaintiff's Response to Defendants' Cross-Motion</u>

Plaintiff restates that the issue of whether the Defendants' passage of the Village Council's budget resolution in July 2019 was effective in converting her into an at-will employee is addressed in her *Motion for Partial Summary Judgment on the Issue of Whether, At the Time She Was Fired, Plaintiff Was a Full Time Hourly Employee Who Could Be Fired for Cause and After Being Subject to Progressive Discipline* (Doc. 143).[25]  Doc. 172 at 2.

Plaintiff additionally argues that Defendants are equitably estopped from claiming Plaintiff was transformed into an at-will employee as a result of Defendants' passage of the 2019-2020 budget.  Doc. 172 at 7-12.  In support, Plaintiff asserts that the undisputed material facts satisfy the elements to establish estoppel against the government.  *Id.*  To begin, Plaintiff contends that Defendants Johnson and Bruton expressly agreed with Mayor Chavez, at a public Village Council meeting at which Plaintiff was present, that the passage of the 2019-2020 budget would not convert Plaintiff or Darlene Coleman, the Village's Financial Director, into at-will employees.  *Id.*  Plaintiff argues Defendants knew their agreement applied to Plaintiff's employment status and intended their conduct to be acted upon such that they intended for Mayor Chavez and Plaintiff to rely on their promises.  *Id.*  Plaintiff argues she took Defendants at their word and did not know Defendants actually considered her an at-will employee until she received her Notice of Termination in March of 2020.  *Id.*  Plaintiff argues that she relied on Defendants' agreement and did so to her detriment given she was fired as an at-will employee. *Id.*  Finally, Plaintiff argues that the facts support that Defendants engaged in affirmative

---

[25] *Id.*

misconduct when they agreed with Mayor Chavez that passage of the 2019-2020 budget would not convert Plaintiff into an at-will employee while their agreement was part of Defendants' years long efforts to terminate Plaintiff's employment.[26]

Plaintiff asks this Court to deny Defendants' Cross-Motion; grant her *Motion for Partial Summary Judgment on the Issue of Whether, At the Time She Was Fired, Plaintiff Was a Full Time Hourly Employee Who Could Be Fired for Cause and After Being Subject to Progressive Discipline* (Doc. 143); find that Defendants' passage of the 2019-2020 budget resolution was unconstitutional; find that Defendants are estopped from asserting Plaintiff was an at-will employee at the time she was terminated; and find that Plaintiff had an implied contract of employment at the time she was terminated which provided that Plaintiff could only be fired for cause and after being progressively disciplined. Doc. 172 at 12.

### E.   <u>Defendants' Reply to Cross-Motion</u>

Defendants first argue that the Court should grant its Cross-Motion based on Plaintiff's repeated judicial admissions that she was at-will as of the date of her termination. Doc. 174 at 1. In support, Defendants cite Plaintiff's undisputed material facts found in her Response (Doc. 158) to Defendants' *Motion for Partial Summary Judgment on Plaintiff's Contract Clause Claim* (Doc. 135) in which Plaintiff posits that the 2019-2020 budget resolution changed her position from a classified employee who could only be fired for cause to that of a salaried employee who could be fired at-will. Doc. 174 at 2-3. Defendants acknowledge that Plaintiff asserts these facts in support of her legal theory that the Contracts Clause operates to "void *ab initio*" her conversion to at-will status. *Id.* However, Defendants contend that Plaintiff asserts these facts

---

[26] Plaintiff cites arguments in her *Motion for Partial Summary Judgment on Whether Plaintiff Is Barred From Litigating the Issue of Just Cause and Lack of Progressive Discipline by the Doctrine of Issue Preclusion* (Doc. 131).

apart from any legal theory and specifically cites to the record in support of these facts such that

any factual debate as to what happened at the June 24, 2019, and July 22, 2019, Village Council

meetings, and the legal import of what happened, are resolved by this admission. *Id.* Defendants

incorporate their *Motion for Partial Summary Judgment on Plaintiff's Contracts Clause Claim*

(Doc. 135) and *Reply* (Doc. 161) in support of its argument. *Id.* at 4.

That aside, Defendants argue that Plaintiff's reliance on the June 24, 2019, Village

Council minutes fails to create a genuine issue of material fact. Doc. 174 at 4. Defendants argue

that any "discussions" at that meeting have no legal effect on Plaintiff's promotion and

conversion to at-will, salaried status. *Id.* Defendants incorporate their arguments as to Plaintiff's

misplaced reliance on her willful ignorance of the July 22, 2019, decision, as stated in their *Reply*

*in Support of Motion for Partial Summary Judgment on Plaintiff's Contract Clause Claim* (Doc.

161).[27]

For the foregoing reasons, Defendants ask this Court to grant summary judgment for the

Defendants on all of the dispositive motions addressing the declaratory judgment and breach of

contract claims (Counts I, II and III).[28]  Doc. 174 at 4.

Second, Defendants argue that Plaintiff has conflated the existence of an implied

employment contract with one that additionally and specifically requires termination only for just

---

[27] There Defendants argue that Plaintiff's self-serving affidavit attesting to her willful ignorance of the Village's public decision on July 22, 2019, does not create a fact issue on the issue of equitable estoppel.  Doc. 161 at 4-7.

[28] Four summary judgment motions have been filed as to these claims: (1) Plaintiff's Motion for Partial Summary Judgment on Existence of Implied Contract (Doc. 126) and Defendants' Cross Motion for Summary Judgment on Existence of Implied Contract (Doc. 141); (2) Plaintiff's Motion for Partial Summary Judgment on Whether Plaintiff Is Barred From Litigating the Issue of Just Cause and Lack of Progressive Discipline by the Doctrine of Issue Preclusion (Doc. 131); (3) Defendants' Second Motion for Partial Summary Judgment Against Implied Contract (Doc. 133); and (4) Plaintiff's Motion for Partial Summary Judgment on the Issue of Whether, At The Time She Was Fired, Plaintiff Was a Regular, Full Time Hourly Employee Who Could Be Fired Only For Cause and After Being Subject to Progressive Discipline (Doc. 143).

cause and after progressive discipline.  Doc. 174 at 4-5.  Defendants explain that the Ordinance was in effect both before and after Plaintiff's conversion to a salaried employee.  *Id.*  Thus, to the extent any of the terms of that Ordinance applied to Plaintiff as an at-will, salaried employee, it constituted an implied employment contract.  *Id.*

Third, Defendants argue that Plaintiff has failed to dispute any of the seven material facts set forth in its Cross-Motion.[29]  Doc. 174 at 5-6.  Defendants argue that Plaintiff does not dispute that she was converted from an hourly to a salaried employee, but instead relies on the Contracts Clause "as requiring the Village to violate its own ordinance by keeping a salaried employee 'at-will.'"  *Id.*  Defendants also argue that Plaintiff does not dispute she accepted significant financial benefits following the 2019-2020 budget resolution, but disputes whether the benefits were part of a recruitment effort.  *Id.*  Defendants contend that their Cross-Motion does not rely on whether Plaintiff's salaried raise was part of a recruitment, only that she had no reasonable expectations of being at-will after accepting the salaried raise based on the Village Council's formal action on July 22, 2019, and Plaintiff's knowledge of Section 19 of the Ordinance.

Fourth, Defendants argue that Plaintiff's additional facts fail to raise any genuine material issues of fact.[30]  Doc. 174 at 6-8.  *See* Section III, Material Facts at pp. 15-19, *supra*.

---

[29] Defendants' seven undisputed material facts set forth in its Cross-Motion include that the July 22, 2019, budget resolution significantly increased wages and retirement benefits for the Clerk, Deputy Clerk, and Financial Director positions; that the Deputy Clerk and Financial Director positions were converted from hourly to salaried positions; that Plaintiff did not comment at the July 22, 2019, meeting about her position being converted; that the only action taken at the July 24, 2019, meeting was to postpone consideration of the budget; that Plaintiff received a 55% pay raise; that Plaintiff accepted the financial benefits; and that the Village's new Financial Director was hired as an at-will employee.  Doc. 141 at 5-6.

[30] Plaintiff's Additional Material Facts include that Darlene Coleman was the Finance Director until November 2019 when Larry Seebinger was hired; information regarding the June 24, 2019, Council meeting; information regarding the July 22, 2019, Council meeting; Plaintiff's understanding regarding the effect of the 2019-2020 budget resolution on her employment status; and information about the timing of the budget resolution.  Doc. 172 at 3-6.

## V.  ANALYSIS

Despite the parties' requests that the Court address multiple motions in its ruling here,[31]

the Court limits its analysis to the arguments specifically addressed in Plaintiff's Motion and

Defendants' Cross Motion, *i.e.,* (1) the existence and terms of an implied contract, if any; and

(2) whether Defendants are equitably estopped from claiming Plaintiff was an at-will employee

at the time of her termination.

### A.      Implied Contracts

In New Mexico, an employment relationship is presumed to be terminable at the will by

either party.  *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668, 857 P.2d 776, 779 (1993).

However, the presumption is rebuttable by an implied contract term that restricts the employer's

---

[31] Plaintiff asks the Court to incorporate and to grant her *Motion for Partial Summary Judgment on the Issue of Whether, At the Time She was Fired, Plaintiff Was a Full Time Hourly Employee Who Could Be Fired for Cause and After Being Subject to Progressive Discipline* (Doc. 143) (based on Contracts Clause) Docs. 167 at 2, 172 at 12. Plaintiff also seeks to incorporate arguments from her *Motion for Partial Summary Judgment on Whether Plaintiff Is Bared From Litigating the Issue of Just Cause and Lack of Progressive Discipline by the Doctrine of Issue Preclusion* (Doc. 131).  Doc. 172 at 10.  Defendants ask the Court to incorporate arguments from its *Motion for Partial Summary Judgment on Plaintiff's Contracts Clause Claim* (Doc. 135) and *Reply* (Doc. 161).  Doc. 174 at 4.  Defendants also ask the Court to grant summary judgment on all of the dispositive motions addressing the declaratory judgment and breach of contract claims (Counts I, II and III).  Doc. 174 at 4, fn. 25.

The Court admonishes the parties for engaging in this practice.  Had they wished the Court to address multiple issues in one order, they should have filed an omnibus motion that complies with local rules including page limitations. Instead, they have chosen to file multiple motions on several discrete issues.  The Court, therefore, refuses to be burdened by the parties' referring to and shuffling between motions and their incorporated/augmented arguments, except as necessary for the Court's clarification in addressing the present motion.  The Court is certainly not prepared to rule on issues not before it in this Motion, *i.e.,* ruling on a Contracts Clause issue pled in the alternative in other motions when addressing the breach of implied contract at issue here.  For now, the Court will proceed in turn to address the discrete issues as raised by the parties in their separate motions.  However, to the extent there appears to be extensive overlap as the Court proceeds, the Court reserves the right to administer its docket, as it has the inherent authority to do, "in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases."  *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002). That includes denying certain motions without prejudice with a directive that each party refile a single dispositive motion.  *See Cash v. Lockheed Martin Training Solutions, Inc.*, USDC NM Civ. 09-901, Doc. 81 (D.N.M. Sept. 3, 2010) (Black, J.) (denying the defendants' multiple motions for summary judgment without prejudice and ordering the defendants to file a single dispositive motion); *see also Cold v. Convergys Customer Mgt. Group, Inc.*, 2013 WL 1446556, at *1 (D. Kan. Apr. 9, 2013) (stating that "filing summary judgment motions seriatim on one's own initiative not only makes the court's task of shuffling paperwork more complex, but also permits any number of permutations of the page-limitation rule, all of which would be sure to be exploited by creative counsel more frequently than desired by the court or warranted by the circumstances") (internal quotation marks and citation omitted)).

power to discharge. *Id.* "For example, an employer's representations which give rise to a reasonable expectation that employees will be terminated only for good cause, may create an implied contract." *Kiedrowski v. Citizens Bank*, 119 N.M. 572, 575, 893 P.2d 468, 471 (Ct. App. 1995*)*; *see also Sullivan v. Am. Online, Inc.,* 219 F. App'x 720, 721 (10th Cir. 2007) (unpublished) (quoting *Hartbarger*, 857 P.2d at 785) ("An employer creates an implied contract where the employer's action 'was intended, or reasonably could be interpreted by [the employee] to be confirmation of an implied contract or modification of the employment relationship.'").

Whether an at-will employer-employee relationship has been modified constitutes a factual issue. *See Hartbarger,* 857 P.2d at 780; *see also Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1108-1109 (D.N.M. 2011) (citing *Mealand v. E.N.M. Med. Ctr.*, 131 N.M. 65, 69, 33 P.3d 285, 289 (2011)) ("The question is whether a reasonable jury could find that the words and conduct support an objectively reasonable expectation that the employee would be dismissed only in accordance with specified procedures and for specified reasons."); *Garcia v. Middle Rio Grande Conservancy Dist.,* 121 N.M. 728, 732, 918 P.2d 7, 11 (1996) (citing *Hartbarger*, 857 P.2d at 779) (Whether an implied employment contract exists is a question of fact, and it may be "found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct.").

In order to support a finding that the employer has made a promise that modifies an employee's employment contract, the fact finder must examine the totality of the circumstances surrounding the employment relationship. *Newberry v. Allied Stores, Inc.,* 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989); *Kestenbaum v. Pennzoil Co.,* 108 N.M. 20, 26, 766 P.2d 280, 286 (1988). Where a plaintiff presents evidence of a promise sufficient to support an implied contract, consideration for the implied contract will be implied as a matter of law by the court.

*See Hartbarger,* 857 P.2d at 781. The terms of the implied contract must be sufficiently explicit. *See Garrity v. Overland Sheepskin Co. of Taos,* 121 N.M. 710, 714, 917 P.2d 1382, 1385 (1996). "[B[ecause an employee's expectation based on an employer's words or conduct must meet a certain threshold of objectivity, an employer may be entitled to judgment as a matter of law if the employee's expectations are not objectively reasonable." *West v. Wash. Tru Solutions, LLC*, 147 N.M. 424, 426, 224 P.3d 651, 653. (Ct. App. 2009).  An explicit disclaimer in an employee handbook stating that employees can be discharged at any time and for any reason will ordinarily be upheld, unless the employer engaged in some form of conduct or made oral representations which reasonably would lead employees to believe that they would not be terminated without just cause or a fair procedure.  *Kiedrowski*, 893 P.2d at 471.

Here, the parties do not dispute that the Ordinance contains provisions relating to most every aspect of the Village's employment relationship with Village employees, including, *inter alia*, Probationary Period, Performance Evaluation, Compensation, Work Hours, Employee Benefits, Termination of Employment, Disciplinary Action, Appeal of Probations and Dismissals, Grievance, and Hourly/Salary Employees.  Doc. 83-2.  Further, the parties do not dispute that the Ordinance was in effect as of March 17, 2014, and remained so at the time of Plaintiff's notice of termination in March of 2020.[32]

Pursuant to Section 19 of the Ordinance, "[a]ll hourly Village employees are entitled to all the rights and benefits described in the Personnel Ordinance, except where specifically stated otherwise."  Doc. 83-2 at 32.  There being no stated exceptions with respect to the following sections, the provisions found in Section 11 (Termination of Employment), Section 16

---

[32] On March 17, 2014, Personnel Ordinance No. 157, at issue here, replaced Personnel Ordinance No. 123.  Doc. 83-2 at 2.

(Disciplinary Action), Section 17 (Appeal of Probations and Dismissals) , and Section 18

(Grievance) apply to hourly employees.  Here it is undisputed that the Village hired Plaintiff in

October of 2011 and that she completed her probationary period in May of 2012, at which time

she became classified as a regular, full time hourly employee.  It is also undisputed that the terms

of the Ordinance provide that hourly employees could only be dismissed in accordance with

specified procedures and for specified reasons.  Thus, the undisputed material facts support a

finding that the Village made sufficiently explicit promises in its Ordinance restricting its ability

to discharge its hourly employees thereby establishing an implied contract.  *See Hartbarger*, 857

P.2d at 779 (explaining that an implied contract may be "found in written representations such as

an employee handbook . . . ."); *see also Lukoski v. Sandia Indian Mgmt. Co.,* 106 N.M. 664,

666–67, 748 P.2d 507, 509–10 (1988) (holding that an employer is certainly free to issue no

personnel manual at all but that when an employer chooses to issue a policy statement that

encourages reliance thereon, the employer cannot be free only to abide selectively by it).  The

undisputed material facts, therefore, support that an implied contract governing Plaintiff's

employment with the Village as an hourly employee existed.

Also pursuant to Section 19 of the Ordinance, "[s]alaried employees are entitled to all the

rights and benefits of hourly employees, except that they are terminable at will, with or without

cause, have no recourse under the disciplinary or grievance procedures outlined in this

Ordinance."  *Id.*  It is undisputed, therefore, that pursuant to Section 19 of the Ordinance the

provisions found in Sections 16 (Disciplinary Action) and Section 18 (Grievance) of the

Ordinance do not apply to salaried employees.[33]  The employment relationship between salaried

---

[33] Defendants argue that Sections 1(H), 6, 11, 17 and 18 also do not apply to salaried employees.  *See* fns. 3, 4, 6, 7,
and 8.

employees and the Village, therefore, absent modification, is presumed to be terminable at the

will by either party.  *Hartbarger*, 857 P.2d at 779.  Here it is undisputed that on July 22, 2019,

the Village Council voted to pass a budget resolution for fiscal year 2019-2020 in which the

Deputy Clerk and Financial Director positions were converted from hourly to salaried positions

and that Plaintiff, as Deputy Clerk, began receiving a salary as of July 2019.[34]  Pursuant to the

terms of the Ordinance, therefore, and absent modification, at-will employees have no implied

contract with the Village.  *Id.* at 786 (explaining that because there was no representation

sufficiently explicit to constitute an offer not to terminate except for just cause, there could be no

implied contract).

Defendants argue that even though salaried employees are at-will, an implied contract

nonetheless exists because other provisions within the Ordinance still apply to them.  The Court

disagrees.  An implied contract in the context of employment is one that rebuts the presumption

that an employment relationship is presumed to be terminable at the will by either party.

*Hartbarger*, 857 P.2d at 779.  As such, non-promissory declarations and general policy

statements in employee handbooks are insufficient to create an implied contract.  *Id.; see also*

*Stieber v. Journal Publ'g Co.,* 120 N.M. 270, 274, 901 P.2d 201, 205 (Ct. App. 1995) ("General

policy statements of a non-promissory nature contained in an employee handbook are

insufficient to create an implied contract."); *Sanchez v. The New Mexican,* 1987–NMSC–059,

106 N.M. 76, 79, 738 P.2d 1321, 1324 (affirming the dismissal of an implied contract claim on

grounds that "the handbook lacked specific contractual terms which might evidence the intent to

form a contract ... [insofar as the] language is of a non-promissory nature and merely a

declaration of defendant's general approach").  Because the provisions of the Ordinance that

---

[34] *See* fn. 17, *supra.*

apply to salaried employees do not give rise to a reasonable expectation that the Village is restricted in its ability to discharge them, the Court concludes that no implied contract exists as to salaried employees.

That said, the question remains whether the oral representations made to Plaintiff by Mayor Chavez and Village Council members at the June 24, 2019, Village Council meeting were sufficient to create an implied contract restricting the Village's ability to discharge Plaintiff even as a salaried employee.  Here, Plaintiff has presented evidence that Mayor Chavez and the Village Council made specific oral representations as reflected in the June 24, 2019, Village Council meeting that Plaintiff, as a salaried employee, would not be at-will.[35]  Moreover, at the July 22, 2019, Village Council meeting, Council members referred to Plaintiff's conversion as "salaried" and, there being no contrary evidence before the Court, never used the term "at-will."[36]  Thus, an implied contract could have been created restricting the Village's ability to discharge Plaintiff after her conversion to a salaried employee.  *See Garcia*, 918 P.2d  at 11 (quoting *Hartbarger*, 857 P.2d at 779) (explaining that whether an implied employment contract exists is a question of fact, and it may be "found in written representations such as an employee handbook, in oral representations, in the conduct of the parties, or in a combination of representations and conduct"); *see also Kiedrowski*, 893 P.2d at 471 (an explicit disclaimer in an

---

[35] Although Defendants dispute the admissibility and content of the June 24, 2019, Village Council minutes, Plaintiff has presented admissible evidence sufficient to create a factual dispute.  *See* fn. 15, *supra*.  As the nonmovant, the Court accepts all of Plaintiff's evidence as true and construes all justifiable inferences in her favor. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545 (1999) ("[I]n ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." (internal quotations and alterations omitted)).

[36] When asked at her deposition about the audio recording of the July 22, 2019, meeting, counsel asked Plaintiff, "Am I hearing it – am I describing it inaccurately if I say that Councilor Bruton asked you about whether the budget included switching the financial director and deputy clerk positions to *salaried*, and you said yes, they are?"  Doc. 141-2 at 2 (emphasis added).  Plaintiff answered "Correct."  *Id.*

employee handbook stating that employees can be discharged at any time and for any reason will ordinarily be upheld, unless the employer engaged in some form of conduct or made oral representations which reasonably would lead employees to believe that they would not be terminated without just cause or a fair procedure).

When a court is called upon to determine if an implied contract for employment has been created, the court should "consider the totality of the parties' relationship, circumstances, and objectives," to assess whether an employee's belief that an implied contract existed was objectively reasonable under the circumstances. *Hartbarger,* 857 P.2d at 785–786. "[B]ecause an employee's expectation based on an employer's words or conduct must meet a certain threshold of objectivity, an employer may be entitled to judgment as a matter of law if the employee's expectations are not objectively reasonable." *West v. Wash. Tru Solutions, LLC,* 147 N.M. 424, 426, 224 P.3d 651, 653 (Ct. App. 2009).  Plaintiff did not squarely address this legal standard, but instead argues that the Defendants are equitably estopped from claiming that Plaintiff was an at-will employee at the time of her discharge.  The Court nonetheless, based on its analysis here and below, finds that the evidence, when viewed in the light most favorable to Plaintiff, indicates that a reasonable jury could find that Mayor Chavez's and the Village Council's oral representations and conduct support an objectively reasonable expectation that Plaintiff was a salaried employee, but not at-will, and would be dismissed in accordance with specified procedures and for specified reasons.  *See Kestenbaum,* 766 P.2d at 284 (explaining that in New Mexico, an employer's oral promise not to terminate an at-will employee except for cause "may be sufficient to create an implied contract.").

In sum, the Court finds that it is undisputed that an implied contract existed from the time Plaintiff completed her probationary period until she was converted to a salary employee.  The

Court further finds that a genuine issue of material fact exists as to whether at the time Plaintiff was converted to a salaried employee the Village entered into an implied contract to terminate Plaintiff only for cause and after following certain procedures.

**B.      Equitable Estoppel**

It is undisputed that pursuant to the Ordinance salaried employees are terminable "at will, with or without cause," and have "no recourse under the disciplinary or grievance procedure outlined in this Ordinance." Doc. 83-2 at 32. Despite the Ordinance's disclaimer, however, Plaintiff argues that Defendants are estopped from claiming she was an at-will employee at any time during her employment. In support, Plaintiff presents evidence that the June 24, 2019, Village Council minutes demonstrate that Mayor Chavez and the Village Council agreed that the passage of the 2019-2020 budget would not convert Plaintiff, or the Financial Director, into at-will employees.[37] Plaintiff contends that Defendants intended their conduct to be acted upon; that she took Defendants at their word; and that she relied and acted upon the Defendants' agreement to her detriment given she was fired as an at-will employee. Plaintiff further contends that Defendants engaged in affirmative misconduct when they agreed to not convert her into an at-will employee at the June 24, 2019, Village Council meeting, but then set about to terminate her as an at-will employee shortly after Defendant Bruton was elected mayor. Plaintiff asserts that the facts support a reasonable inference that the Defendants' passage of the 2019-2020 resolution converting Plaintiff to a salaried employee was part of Defendants' continuing and improper efforts to get rid of Plaintiff.

In their Reply, Defendants fail to address Plaintiff's equitable estoppel argument. Instead, Defendants incorporate their arguments as to Plaintiff's misplaced reliance on her

---

[37] *See* fns. 15 and 35, *supra*.

willful ignorance of the July 22, 2019, decision, as stated in their *Reply in Support of Motion for Partial Summary Judgment on Plaintiff's Contract Clause Claim* (Doc. 161).[38]  Defendants also contend that Plaintiff's repeated "judicial admissions" that she was an at-will employee at the date of her termination, as stated in briefing in support of her Contracts Clause argument made in the alternative argument, settle the matter of Plaintiff's status.[39]  Defendants further contend that Plaintiff fails to validly dispute that she was converted to a salaried employee, that she accepted the benefits of increased pay by virtue of her conversion to a salaried employee, and that Plaintiff's unreasonable expectation that she remained classified was in contravention of the Ordinance and amounts to willful ignorance.

There are six basic elements of equitable estoppel that the Court uses to determine whether the doctrine will bar claims of a state agency.  *Westerman v. City of Carlsbad,* 55 N.M. 550, 555–56, 237 P.2d 356, 359 (1951).  The essential elements that apply to the state agency to be estopped are (1) the agency's conduct amounting to a false representation or concealment of material facts or, at least, that is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the agency's intention, or at least expectation, that the other party will act upon such conduct; and (3) the agency's knowledge, actual or constructive, of the real facts.  *See Gallegos v. Pueblo of Tesuque,* 132 N.M. 207, 216, n. 5, 46 P.3d 668, 677 (2002); *Westerman,* 237 P.2d at 358–59. The essential elements that apply to the party raising equitable estoppel as a defense are "(1) [l]ack of knowledge and of the means of knowledge of the truth as to the facts in question;

---

[38] *See* fn. 27, *supra.*

[39] *See* fn. 15, *supra* (Plaintiff is not prohibited from pleading in the alternative and such pleading shall not work against her).

(2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially." *Westerman,* 237 P.2d at 359 (internal quotation marks and citation omitted); *see Gallegos,* 46 P.3d at 677, n. 5; *Mayfield Smithson Enters. v. Com–Quip, Inc.,* 120 N.M. 9, 12, 896 P.2d 1156, 1159 (1995). To apply the doctrine against a state agency, we must find each of these basic elements.

Additionally, because "New Mexico courts have been reluctant to apply estoppel against the state and its agencies," *Lopez v. State of New Mexico, et al.,* 122 N.M. 611, 617, 930 P.2d 146, 152 (1996), the court will apply estoppel against the state only when the agency has engaged in a "shocking degree of aggravated and overreaching conduct," or when "right and justice demand" it.  *See Nat'l Adver. Co. v. States ex rel. New Mexico Highway Comm'n,* 91 N.M. 191, 194, 571 P.2d 1194, 1197 (1977); *State ex rel. State Highway Dep't v. Yurcic,* 85 N.M. 220, 223, 511 P.2d 546, 549 (1973).  Despite this reluctance, however, "estoppel against the State is a well-grounded doctrine in New Mexico."  *Am. Legion Post No. 49 v. Hughes,* 120 N.M. 255, 260, 901 P.2d 186, 191 (Ct. App. 1994); *see also Green v. N.M. Human Servs. Dep't, Income Support Div.,* 107 N.M. 628, 629, 762 P.2d 915, 916 (Ct. App. 1988) ("However, equitable estoppel will be applied against the state where right and justice demand it.").

With respect to New Mexico state agencies in particular, the doctrine is available to bar only those rights or actions over which an agency has discretionary authority. "Estoppel cannot lie against the state when the act sought would be contrary to the requirements expressed by statute," *Kilmer v. Goodwin,* 2004–NMCA–122, ¶ 26, 136 N.M. 440, 99 P.3d 690, and therefore, we will not entertain an equitable estoppel defense that would prevent an agency from discharging its statutory duties, *see, e.g., Rainaldi v. Pub. Employees Ret. Bd.,* 115 N.M. 650, 658–59, 857 P.2d 761, 769–70 (1993); *see also Del Gallo v. Sec. of Commonwealth.,* 442 Mass.

1032, 816 N.E.2d 108, 111 (2004) ("Generally, the doctrine of estoppel is not applied against the government in the exercise of its public duties, or against the enforcement of a statute." (internal quotation marks and citations omitted)); *Senior Citizens Coalition of Ne. Minn. v. Minn. Pub. Utils. Comm'n,* 355 N.W.2d 295, 304 (Minn.1984) ("Where an agency has no authority to act, agency action cannot be made effective by estoppel."); *Schorr v. N.Y. City Dep't of Hous. Pres. and Dev.,* 10 N.Y.3d 776, 857 N.Y.S.2d 1, 886 N.E.2d 762, 764 (2008) ("It is well settled that estoppel cannot be invoked against a governmental agency to prevent it from discharging its statutory duties." (internal quotation marks and citations omitted)).  Therefore, the Court must determine the degree to which an agency is acting under its own discretionary authority to determine whether the doctrine can bar the agency's action.  *See, e.g., People v. Gustafson,* 53 Cal.App.2d 230, 127 P.2d 627, 634 (1942) ("A state, as well as an individual, ... may be estopped by the acts of its public officials done in the exercise of powers expressly conferred by law, and by their acts or omissions when acting within the scope of their authority."); *Kimberly–Clark Corp. v. Dubno,* 204 Conn. 137, 527 A.2d 679, 684 (1987) (holding that estoppel may be invoked only when the action in question has been induced by an agent having authority in such matters).

"Equitable estoppel does not lie against the government in the same manner as it does against private litigants." *Kowalczyk v. INS.*, 245 F.3d 1143, 1149 (10th Cir. 2001) (citing *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 419 (1990)). "In the course of rejecting estoppel arguments asserted against the government, the Supreme Court has indicated that estoppel may lie against the government if some type of 'affirmative misconduct' can be shown." *Id.* (quoting *INS v. Hibi*, 414 U.S. 5, 8 (1973)).  "Affirmative misconduct means an affirmative act of misrepresentation or concealment of a material fact."  *Board of County Com'rs of County of*

*Adams v. Isaac*, 18 F.3d 1492, 1499 (10th Cir. 1994) (citing *United States v. Ruby Co.*, 588 F.2d 697, 703-704 (9th Cir. 1978) ); *see also Shafmaster v. United States*, 707 F.3d 130, 136 (1st Cir. 2013) ("Although there is no settled test for what constitutes affirmative misconduct, it must at least include an affirmative misrepresentation or affirmative concealment of a material fact by the government.") (Internal quotation marks and citation omitted). "Mere negligence, delay, inaction, or failure to follow agency guidelines does not constitute affirmative misconduct." *Isaac*, 18 F.3d at 1499 (citing *Fano v. O'Neill*, 806 F.2d 1262, 1265 (5th Cir. 1987)).

The Court finds that, viewing the facts in the light most favorable to the nonmovant, Plaintiff has demonstrated genuine issues of fact concerning the applicability of the doctrine of equitable estoppel precluding Defendants' request for summary judgment on the issue of whether Plaintiff was an at-will employee at the time of her termination. Conduct may amount to a false representation or concealment of material facts where it makes "representations that are contrary to the essential facts to be relied on, even when made innocently or by mistake." *Green*, 762 P.2d at 916. Here, it is undisputed that pursuant to the Ordinance salaried employees are at-will. Despite this provision in the Ordinance and contrary to this essential fact, Plaintiff has presented admissible evidence that the "Mayor and Council both agreed to move finance director and deputy clerk position to salary if they would not be at will. Councilor Bruton and Councilor Johnson both agreed they would not be at will." Doc. 102-6 at 2. While Defendants Bruton and Johnson dispute that the June 24, 2019, Village Council minutes reflect the substance and/or truthfulness of their statements at that meeting, three other witnesses have offered contradictory testimony.[40] Moreover, there is no evidence that the Village Council was acting outside their

---

[40] *See* fn. 15, *supra.*

discretionary authority to modify the Ordinance had they chosen to do so.[41]  Thus, a rational jury could find that the Councilors' representations as reflected in the written and approved minutes from June 24, 2019, were contrary to an essential fact to be relied on given their subsequent actions.  In other words, Defendants knew the provisions of the Ordinance with respect to salaried employees; *i.e.,* that salaried employees were at-will, and relied on those provisions to terminate Plaintiff, yet they engaged in "discussions" at a Village Council meeting regarding whether Plaintiff's conversion to a salaried position would not change her classified status, and did so without invoking or clarifying what they now claim would have been a clear violation of the Ordinance.  Thus, Defendants' conduct could be viewed as either giving the false representation that the proposed modification to Plaintiff's implied contract was in fact possible or knowing that it was not possible but nonetheless choosing to remain silent.  Further, when Defendants had a second bite at the apple on July 22, 2019, to avert any misunderstanding regarding Plaintiff's status when converted to a salaried employee, they never used the term "at-will."[42]

As for Plaintiff's part, *i.e.,* the requisite lack of knowledge necessary to support equitable estoppel, Defendants argue that Plaintiff was willfully ignorant as to her status and that her self-serving affidavit in which she testifies that she first learned of her at-will status in the March 10, 2020, notifying her of her termination fails to create a genuine issue of fact.  Doc. 161 at 4-6 (citing Doc. 158-2).  The Court disagrees.  The facts demonstrate that pursuant to the

---

[41] The Ordinance provides that "Personnel Ordinance No. 157 may be amended from time to time by Ordinance *of the Governing Body*."  Doc. 83-2 at 2 (emphasis added).  Section 1 of the Ordinance provides, *inter alia*, that the Mayor is the "Chief Administrative Officer of all employees," shall "[e]xecute the Personnel Ordinance," and can "[r]ecommend changes to this Ordinance as may become advisable."  Doc. 83-2 at 7.  Section 2 of the Ordinance provides, *inter alia*, that the Village Council shall "[a]pprove job classifications, descriptions and pay scales."  Doc. 83-2 at 8.

[42] *See* fn. 36, *supra.*

Ordinance the mayor was the only person with the authority to discharge Plaintiff.  Doc. 126-17 at 2.  The facts also demonstrate that it was Mayor Chavez who initiated the discussions at the Village Council meeting regarding Plaintiff's status after conversion to a salaried position and who advocated that Plaintiff remain classified with respect to the Village's ability to discharge her.  Doc. 172-5 at 4.  Further, it was Mayor Chavez who had authority over Plaintiff's position for the first six months of Plaintiff's employment after her conversion to a salaried employee during which time it was Mayor Chavez's understanding that Plaintiff was not at-will.[43]  *Id.* Thus, a rational jury could conclude that Plaintiff's reliance on the representations made at the July 24, 2019, Village Council meeting that she would not be at-will - initiated, advocated and understood by Mayor Chavez, Plaintiff's then boss and the only person who could recommend her dismissal at the time of and for six months after she became a salaried employee - was not unreasonable.[44]

Additionally, New Mexico case law addressing the issue of equitable estoppel in public employment settings is distinguishable from the facts here.  In *Silva v. Town of Springer*, 121 N.M. 428, 912 P.2d 304 (1996), plaintiff Baca argued that prior to accepting a promotion from her previous position to that of the town's clerk-treasurer, she asked the town administrator whether she would continue to be treated as a classified employee and was informed that she would be protected from arbitrary termination.  912 P.2d at 307.  Baca argued that she accepted the promotion to clerk-treasurer in reliance upon this representation from the former town

---

[43] Plaintiff has also presented evidence that Darlene Coleman, who occupied the Finance Director position between June 19, 2012, and November 18, 2019, remained hourly after the Village Council's 2019-2020 budget resolution, and that the Finance Director position was converted to at-will only when a new Finance Director was hired in November 2019.  *See* fn. 18, *supra.*

[44] *See* fn. 41, *supra.*

administrator, and that the Town of Springer was estopped from discharging her, except for cause pursuant to the provisions of the personnel ordinance.  *Id.*

The Town of Springer argued that its ordinance could not suffice as a written contract to satisfy the requirements of Section 37-1-23,[45] and that even if it could, the undisputed facts demonstrated that Baca, as the clerk treasurer, was exempted from the provisions of the ordinance.  *Id.*  The court concluded that unless the position held by Baca was specifically exempted from the provision of the ordinance or the ordinance was determined as a matter of law not to apply to the positions held by her, the rights contained in the ordinance became a part of the Baca's contract of employment.  912 P.2d at 307.  The court concluded that the town ordinance expressly exempted Baca's clerk-treasurer position from its provisions.  912 P.2d at 307-08.

Baca responded that even if her position was exempted, the Town was estopped from raising this defense because she was told the ordinance would be extended to apply to her and that she relied upon these representations.  912 P.2d at 308.  Relying on *Trujillo v. Gonzales*, 1987-NMSC-119, 747 P.2d 915, the court held that the town administrator did have the authority to make the offer made to Baca and the offer, therefore, was not a valid act capable of binding the county.  *Silva*, 912 P.2d at 308 (citing *Trujillo*, 747 P.2d at 916-17 and *Bigler v. Graham County*, 128 Ariz. 474, 477, 626 P.2d 1106, 1109 (Ct. App. 1981) ("Persons dealing with public officers are bound . . . to know the extent and limits of their power and no right can be acquired except that predicated upon authorized acts of such officers.")).

---

[45] Section 37-1-23 states that "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."  N.M.S.A. 1978, § 37-1-23A.

In *Trujillo,* the plaintiff was employed by the state when two Taos County commissioners offered him a job as the Taos County Road Superintendent.  747 P.2d at 915.  Trujillo conditioned his acceptance of the job upon receiving a two-year guarantee since he was within two years of retirement with the state.  747 P.2d at 916.  The two commissioners agreed and Trujillo accepted the job and voluntarily terminated his employment with the state.  *Id.* Trujillo's employment was ratified at a Board of County Commissioner meeting and the minutes indicated he was appointed as an exempt at-will employee.  *Id.*  The minutes do not acknowledge the oral promise made by the two commissioners.  *Id.*  One a half years later, Trujillo was informed he was being terminated.  *Id.*

Trujillo brought suit for, *inter alia*, breach of contract.  *Id.*  The district court dismissed Trujillo's claim finding that he had failed to allege a valid written employment contract with the county in order to be excepted from the provisions of NMSA 1978, Section 37-1-23 which states that "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."  *Id.*  Trujillo maintained that the written minutes from the board meeting constituted a valid employment contract and argued that because the written ratification of his employment as an exempt employee was ambiguous based on the two commissioners' oral representations, that the court should not have dismissed his case and should have allowed evidence of the oral promise.  *Id.*

The New Mexico Supreme Court disagreed and held that the minutes were not ambiguous.  *Id.*  Instead, the court stated that the terms of the employment as stated in the minutes and as orally promised were inconsistent.  *Id.*  The court found, however, that because the oral representations contradicted the written contract, they were legally insignificant.  *Id.* (citing *Baum v. Great Western Cities, Inc. of New Mexico*, 703 F.2d 1197, 1206 (10th Cir. 1983)

(explaining that while parties may leave portions of written contracts to oral expression, under such circumstances oral expressions are legally significant only if they are not contradictory and have some effect upon interpretation, application and legal option of the written portion)).  *Id.*

The court further held that the action of the two commissioners extending the two-year employment offer to Trujillo was without statutory authority because NMSA 1978, Section 10-15-3, provides that no action of any commission or other policy-making body shall be valid unless it is taken or made at a meeting held in accordance with the Open Meetings Act.  747 P.2d at 916-17.  The court found that ratification of Trujillo's employment as an exempt employee was the final action exercised by the Board of County Commissioners, and that the oral promise made by two commissioners was not made at a duly constituted meeting of the Board and, therefore, did not bind the county.  747 P.2d at 917.

*Silva* and *Trujillo* are distinguishable from the facts present in this case.  In both *Silva* and *Trujillo*, the representations made to the respective plaintiffs were oral and without statutory authority, *i.e.,* the oral promises were not made at a duly constituted meeting of the respective governing boards or reflected in meeting minutes.  Here, Plaintiff has presented evidence that the discussions and agreement that she would not become at-will when converted to a salaried employee are from a Village Council *public meeting* and reflected in Village Council minutes that were approved by the Village Council and subsequently initialed by Mayor Chavez.[46] *Trujillo*, 747 P.2d at 916 (finding board minutes were written ratification of employment terms); *see also generally Kilmer v. Goodwin*, 2004-NMCA-122, ¶ 28. 99 P.3d 690, 697 (explaining that the court has been willing to grant estoppel when a party relied on written assertions but not when the party relied on oral representations); *Beggs v. City of Portales*, 2013-NMCA-068, ¶ 30,

---

[46] *See* fn. 15, *supra*.

305 P.3d 75, 83 (considering city council minutes to determine whether representations were misleading or induced reliance).  Additionally, the Village Council minutes from the July 22, 2019, Village Council meeting, at which the Council voted to pass the 2019-2020 budget resolution, do not reflect any specific language that Plaintiff was appointed as an "exempt at-will" employee as was the case in *Trujillo*.  Doc. 126-15 at 2.  Instead, the minutes refer to Plaintiff becoming a salaried employee.[47]  Doc. 141-2 at 2.

Lastly, neither of the parties addressed whether the Village Council engaged in a "shocking degree of aggravated and overreaching conduct," or whether "right and justice" demand the application of the doctrine in this case.  Plaintiff, however, does assert that Defendants' engaged in affirmative misconduct that is necessary for equitable estoppel to lie against a governmental agency.  Because the Court has already concluded that Defendants' conduct at the June 24, 2019, Village Council meeting could be viewed as either giving the false representation that the proposed modification to Plaintiff's implied contract was in fact possible or knowing that it was not but nonetheless choosing to remain silent, the Court finds that Plaintiff has presented questions of material fact regarding whether Defendants engaged in affirmative misconduct.[48]

In sum, the Court concludes that issues of fact regarding whether Defendants are equitably estopped from claiming Plaintiff was an at-will employee at the time of her termination precludes summary judgment in Defendants' favor on Plaintiff's breach of contract claim.

---

[47] *See* fn. 36, *supra*.

[48] Plaintiff has also presented evidence raising questions of material fact regarding whether various meetings and workshops held by the Village Council in late 2017 and early 2018 were attempts to discipline and terminate Plaintiff despite their authority to do so.  *See* Material Facts, Section III, *supra*.

## VI.  **CONCLUSION**

For all of the foregoing reasons, the Court finds that Plaintiff's Motion for Partial

Summary Judgment on the Existence of Implied Employment Contract (Doc. 126) is well taken

and is **GRANTED**.  The Court further finds that Defendants' Cross Motion for Partial Summary

Judgment (Doc. 141) is not well taken and is **DENIED**.

**IT IS SO ORDERED.**

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**