IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DIANE KLAUS,

            Plaintiff,

      vs.                                                    Civ. No. 20-1105  JFR/KK

VILLAGE OF TIJERAS, JAKE
BRUTON, DON JOHNSON, FELIX
GARCIA and MAXINE WILSON,
in their individual and official capacities,

            Defendants.


## MEMORANDUM OPINION AND ORDER[1]

      **THIS MATTER** is before the Court on Defendants' *Second Motion for Partial Summary Judgment Against Implied Contract* ("Defendants' Motion"), filed November 12, 2021.  Doc. 133.  On February 1, 2022, Plaintiff filed a Response.  Doc. 165.  On February 15, 2022, Defendants filed a Reply.  Doc. 173.  This matter is also before the Court on Plaintiff's *Motion for Partial Summary Judgment on Whether Plaintiff Is Barred From Litigating the Issues of Just Cause and Lack of Progressive Discipline by the Doctrine of Issue Preclusion* ("Plaintiff's Motion"), filed November 12, 2021.  Doc. 131.  On December 22, 2021, Defendants filed a Response.  Doc. 156.  On March 10, 2022, Plaintiff filed a Reply.  Doc. 179.  The Court, having considered counsel's arguments, the record, and the relevant law, FINDS that Defendants' Motion is not well taken and is **DENIED** and that Plaintiff's Motion is well taken and is **GRANTED**.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 5, 9, 11.)

# I.  **FACTUAL BACKGROUND**

The Village of Tijeras ("Village") hired Plaintiff as a Deputy Clerk in October of 2011.
Doc. 1-1 at 2, ¶ 10.  Plaintiff successfully completed her probationary period in May of 2012.  *Id.*
Plaintiff was classified as a regular, full time hourly employee.  *Id.* at ¶ 11.  From the date
Plaintiff was hired until January 3, 2020, Gloria Chavez was the Mayor of the Village and was
Plaintiff's direct supervisor.  *Id.* at ¶ 12.  After January 3, 2020, Defendant Jake Bruton, a former
Village Council member, became the Mayor of the Village.  *Id.* at ¶ 13.

Plaintiff alleges that beginning in 2017, Defendants Bruton, Johnson, Garcia and Wilson
were vocal critics and opponents of Mayor Chavez and Plaintiff and initiated a concerted effort
to terminate Plaintiff's employment in retaliation for, *inter alia*, her association and affiliation
with Mayor Chavez.  *Id.* at 4, ¶¶ 24-25.  Plaintiff alleges that Defendants continued their efforts
until she was terminated on April 15, 2020, on the recommendation of newly elected Mayor
Bruton.  *Id.* at ¶ 26.  On June 24, 2019, Defendants voted to change Plaintiff's Deputy Clerk
position from an hourly position to a salaried position and gave Plaintiff a significant raise.  *Id.* at
10, ¶ 70.  When the Village terminated Plaintiff's employment in 2020, Defendants claimed
Plaintiff's change to a salaried employee transformed her from a regular, full time, non-
probationary employee who was entitled to the rights and protections afforded by the Village's
Personnel Ordinance ("Ordinance") and who could only be terminated for cause, into an at-will
employee who could be fired at any time, with or without cause.[2]  *Id.* at 10-11, ¶ 71.  Plaintiff
disagrees.

---

[2] The termination letter identified Plaintiff as a salaried employee and stated that "as a salaried employee under the
Village's personnel ordinance # 157 Section 19 [you] are entitled to all the rights and benefits of hourly employees,
except that you are terminable at will, with or without cause.  It is pursuant to that section that I recommend your
termination as a salaried employee."  Doc. 102-1 (Exh. 1) at 1.  The letter went on to say that "in view of your long-
time employment with the Village I also performed a review of your performance to assess whether or not there is
cause for terminating you.  That review indicates that if you are now protected by the Village personnel ordinance,
meaning you can only be terminated for cause, there clearly is cause."  *Id.* at 2.  The lion's share of the letter then

On September 21, 2020, Plaintiff filed a *Complaint for Declaratory Judgment, Breach of Implied Contract of Employment, Retaliatory Discharge in Violation of Whistleblower Protection Act, Violation of Contract Clause Rights, and Violation of First Amendment Right of Political Association* ("Complaint") against the Defendants. Doc. 1-1. Defendants removed the case to this Court on October 27, 2020, based on original jurisdiction pursuant to 28 U.S.C. §§ 1331. Doc. 1 at 1-2.

## II.  LEGAL STANDARD

A motion for summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 106 S. Ct. at 2552 (internal quotation marks omitted); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). Once the movant meets this burden, the non-moving party is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986); Fed. R. Civ. P. 56(c). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented."

---

addressed Plaintiff's role in what was characterized as illegal PERA reimbursements without the Council's authorization. *Id.* at 2-3. The letter also noted other reimbursement issues and that documentation confirmed a "continued pattern of behavior leading to disorganization, poor record-keeping, [and] poor communications both internally and with the public." *Id.* at 3. The letter notified Plaintiff of her right to a hearing to determine whether the decision to terminate her was affirmed, reversed or modified. *Id.* at 4.

*Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (internal citations omitted); *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016).  Only material factual disputes preclude the entry of summary judgment.  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

 The trial judge is not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson,* 106 S. Ct. at 2512.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 2510.  To carry its initial burden, the moving party need not negate the nonmoving party's claim.  *See Allen v. Muskogee, Okla*., 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998).  "'Instead, the movant only bears the initial burden of 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id*. (quoting *Catrett*, 106 S. Ct. at 2552).  Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Catrett*, 106 S. Ct. at 2552 (quoting Fed. R. Civ. P. 56(e)).  A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim.  *See Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith*

*Radio Corp.*, 106 S. Ct. 1348, 1356 (1986) (citation omitted).  Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp. 1277, 1281 (D. Kan. 1997).  If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g., Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

### III.  <u>MATERIAL FACTS</u>

On October 18, 2011, Plaintiff was hired by the Village as a part-time Deputy Clerk. Doc. 126 at 2, ¶ 1.  On December 26, 2011, Plaintiff became a full-time Deputy Clerk.  *Id.* Plaintiff served as Acting Clerk from August 25, 2012 to March 2015, from March 20, 2016 to April 17, 2018, and from November 19, 2018 to July 28, 2019.  *Id.*  As Acting Clerk, Plaintiff was responsible for, among other things, supervising all employees and recommending disciplinary action of employees to the Mayor under Section 3 of the Ordinance.  *Id.*  Plaintiff's duties as Acting or Deputy Clerk also included drafting minutes for Village Council meetings.[3] Doc. 156 at 9, ¶ 1.

On March 17, 2014, the Village adopted the Ordinance which was in effect during the period of time Plaintiff was employed by the Village.  Doc. 133 at 3, ¶ 1.  The Ordinance governed Village personnel rights and procedures at the time the Village terminated Plaintiff.  *Id.* at ¶ 2.

---

[3] Plaintiff disputes this fact to the extent it implies Plaintiff was always responsible for preparing all minutes of Council hearings.  Doc. 179 at 5, ¶ 1.  Plaintiff asserts that Cheyanne Herrera was responsible for preparing Council minutes between July 31 2017 and April 17, 2018, and between November 19, 2018, and late 2019.  *Id.*

Section 16 of the Ordinance, entitled "Disciplinary Policy," provides procedures for contemplated termination of employees by the Village.[4]  *Id.* at ¶ 3.  Section 16 of the Ordinance vests the Mayor with authority to terminate an employee, with approval by the governing body if the employee requests a hearing before the governing body after notice of termination by the Mayor.[5]  *Id.* at ¶ 4.

Section 17 of the Ordinance, titled "Appeal of Probations and Dismissals," includes, *inter alia*, procedures that allow an employee to request a hearing before the Village Council if notified of termination, procedures for the termination hearing, and requirements that the Village Council issue a final decision in the form of findings and conclusions.  Doc. 133 at 3, ¶ 6. Section 17.C.6 provides that "[n]o subpoenas shall be issued to compel testimony in person." Doc. 83-2 at 27.  Section 17.G.6 provides that as part of its decision, the Governing Body may uphold, set aside or modify the recommended action.  Doc. 131 at 4, ¶ 11, Doc. 83-2.  It also provides that the Governing Body may "consider any evidence of appellant's mitigation of evidence," and "make other appropriate recommendations or orders."  *Id.*  Nothing in the Ordinance authorizes the Village Council to award damages.[6]  *Id.*  Plaintiff was not permitted to

---

[4] Plaintiff admits that Section 16 of the Ordinance contains some of the procedures for terminating employees, but states that Section 11 of the Personnel Ordinance (Termination of Employment) also governs the termination of employees and provides in part that "[e]mployees may be dismissed for unsatisfactory performance, misconduct or other reasons deemed appropriate by the Village."  Doc. 165 at 2, ¶ 2.

[5] Plaintiff disputes this material fact arguing that Sections 1 and 2 of the Ordinance expressly provide that the Mayor, and not the Council, has the authority to dismiss employees with the approval of the Council, and that the Mayor's authority is not dependent on the aggrieved employee requesting a hearing.  Doc. 165 at 2, ¶ 3.

Defendants agree that the Mayor's authority to dismiss employees does not depend on whether the employee requests a hearing.  Doc. 173 at 1.  However, if an employee requests a hearing, the Village Council has the final word on whether to terminate the employee.  *Id.*

[6] Defendants contend that the authority to make any "appropriate" orders does not exclude any order regarding damages.  Doc. 156 at 5-6, ¶ 11.

conduct discovery prior to her termination hearing or subpoena witnesses to testify at her termination hearing.[7]  Doc. 131 at 3, ¶ 7.

Upon assuming the duties of Mayor in January 2020, Defendant Bruton asked then-Clerk Mike Wismer to review all operations and personnel without specifying any review of Plaintiff. Doc. 156 at 9, ¶ 2.

By Notice dated March 10, 2020, Village Clerk/Treasurer Michael Wismer, with Defendant Bruton concurring, gave a Notice of Personnel Action to Plaintiff recommending Plaintiff's termination and providing reasons for the termination.[8]  Doc. 133 at 3, ¶ 5, Doc. 131 at 2, ¶ 1.  The Notice of Personnel Action referenced and repeatedly cited a June 2018 public report by the New Mexico State Auditor's Office ("June 2018 OSA Report").[9]  Doc. 133 at 4, ¶ 14; Doc. 156 at 9, ¶ 4.

Plaintiff, through her attorney Duff Westbrook, requested a termination hearing.  Doc. 133 at 4, ¶ 7.  The Village Council held a hearing on April 6, 2020, via ZOOM, less than thirty (30) days later, at which Plaintiff was represented by counsel and testified on her own behalf.  *Id.* at ¶ 8, Doc. 131 at 2-3 ¶¶ 2, 6; Doc. 156 at 4-5, ¶ 6.  The Council consisted of Defendants

---

[7] Defendants dispute this statement and argue that while the Ordinance provides that no subpoenas shall be issued to compel testimony in person, it does not prohibit discovery.  Doc. 156 at 5, ¶ 7.  Defendants further state that Plaintiff fails to offer any evidence that she attempted any discovery and was denied such an opportunity.  *Id.*

Plaintiff asserts Defendants have not created a disputed issue of material fact whether Plaintiff could conduct discovery prior to her termination hearing.  Doc. 179 at 4, ¶ 2.  Plaintiff asserts that section 17.C of the Ordinance dictates how termination hearings will be conducted and does not identify discovery as being available in the conduct of such hearings.  *Id.*  Plaintiff urges the Court to reject Defendants' argument that hearing participants may conduct discovery when it is not mentioned in Section 17.C.  *Id.*  Plaintiff states that she had only twenty-seven days between her receipt of the Notice of Termination and her termination hearing.  *Id.*

[8] Plaintiff does not dispute, but states that the Notice of Termination sets forth several other reasons for the Defendants' termination of the Plaintiff, including at least two reasons which Defendants knew were untrue at the time Defendant Bruton gave Plaintiff the notice.  Doc. 165 at 2, at ¶ 4.

[9] Plaintiff does not dispute, but argues the June 2018 OSA Report is only probative of Defendants' contention there was just cause to terminate the Plaintiff and is not relevant to whether the Plaintiff was afforded a full and fair opportunity to be heard before an impartial tribunal.  Doc. 165 at 3, ¶ 7.

Johnson, Wilson and Garcia, and a fourth member who was the niece of Defendant Garcia. Doc.
131 at 2, ¶ 2, 4, ¶ 12. Mayor Pro Tem Wilson, who presided over the hearing, allocated forty-
five minutes to each side to present their case.[10] Doc. 131 at 3, ¶ 8. A certified court reporter
was present and prepared a verbatim transcript of the hearing.[11] Doc. 133 at 4, ¶ 9. Plaintiff's
counsel cross-examined witnesses, presented evidence and made opening and closing arguments.
*Id.* at ¶ 10. Then-Village Clerk Mike Wismer presented the case on behalf of the Village, with
assistance from the newly elected mayor Defendant Bruton. *Id.*

Mr. Wismer emailed 460 pages of documents to Village Attorney Coppler the day of the
termination hearing, and Attorney Coppler failed to forward them to Plaintiff's counsel prior to
the hearing. Doc. 133-3 at 13; Doc. 156 at 10, ¶ 9. Plaintiff, therefore, did not know prior to the
hearing what exhibits Defendants planned to use to support Defendants' claims at the
termination hearing. Doc. 131 at 3-4, ¶ 9; Doc. 133-3 at 14. During the hearing, at
approximately 7:40 or 7:45 p.m., Plaintiff's counsel objected to Defendants' use of evidence
Plaintiff had not received. Doc. 133-3 at 25. Plaintiff's counsel received Defendants' exhibits at
8:08 p.m. *Id.* Plaintiff's counsel was not provided copies of Defendants' evidence until after all
of Defendants' witnesses had testified and, therefore, was precluded from reviewing the evidence
prior to the hearing, from asking Defendants' witnesses about the documents, or preparing a

---

[10] The hearing of the transcript reflects that Plaintiff's counsel requested "approximately one hour," and the Village
Clerk Mr. Wismer requested approximately 30 minutes. Doc. 133-3 at 3. Plaintiff argues she was "only allowed
forty-five (45) minutes." Doc. 131 at 3, ¶ 8.

Defendants contend that Plaintiff did not object to the time limits nor request additional time or make any offer of
proof as to what evidence Plaintiff would have offered if allowed additional time. Doc. 156 at 5, ¶ 8.

[11] Plaintiff does not dispute, but argues this is not relevant to the issue of whether Plaintiff was afforded a full and fair
opportunity to be heard before an impartial tribunal. Doc. 165 at 3, ¶ 5.

rebuttal to the evidence.[12]  Doc. 131 at 3-4, ¶ 9.  The evidence referred to at the hearing included

the June 2018 OSA Report, which Plaintiff testified she had access to and had read prior to the

hearing.[13]  Doc. 133 at 4, ¶ 11; Doc. 156 at 9, ¶ 3.  Plaintiff also testified that as Deputy Clerk,

she did not need to know what findings and facts were in the report.  Doc. 156 at 9, ¶ 3.

Mr. Wismer's direct testimony against Plaintiff relied extensively upon the June 2018 OSA

Report.  Doc. 156 at 10, ¶ 6.  Other than the June 2018 OSA Report, the exhibits relied upon by

Mr. Wismer at the hearing were other third-party audit reports from 2018 and 2019, which

Plaintiff already knew of by virtue of her duties as Acting Clerk/Treasurer during that time

period.  Doc. 156 at 9-10, ¶ 5.

During the hearing, Plaintiff's counsel objected when Mr. Wismer consulted with

Defendant Bruton about an answer to one of Plaintiff's questions.  Doc. 131 at 4, ¶ 10, Doc. 133-

3 at 11.  The objection was sustained and Mr. Wismer did not consult with anyone regarding his

answers after that.  *Id.*; Doc. 156 at 10, ¶ 8.  Other than this objection, Plaintiff failed to object to

any of her claimed procedural deficiencies or make any offers of proof.[14]  Doc. 156 at 10, ¶ 8.

---

[12] Defendants argue that although 460 pages of documents were sent to Plaintiff's counsel, the record is silent whether Defendants "introduced 460 pages of exhibits" at the hearing.  Doc. 156 at 5, ¶ 9.  Defendants further argue that Mr. Wismer only relied on the June 2018 OSA Report and two other audit reports, which were already known to Plaintiff by virtue of her duties as Acting Clerk/Treasurer during that time period.  *Id.*  Defendants dispute that Plaintiff could not review these reports, ask Defendants' witnesses about them or prepare a rebuttal to them.  *Id.*

Plaintiff asserts that Defendants' response does not create a disputed issue of material fact.  Doc. 179 at 4, ¶ 3.  Plaintiff asserts that the 460 pages of exhibits provided to Plaintiff's counsel in the midst of Plaintiff's termination hearing were submitted as defense exhibits, were furnished to the Court reporter who recorded Plaintiff's termination hearing, and were specifically referred to in Defendants' Findings and Conclusions.  *Id.*

[13] Plaintiff does not dispute this material fact, but argues it is only probative of Defendants' contention there was just cause to terminate the Plaintiff and is not relevant to whether the Plaintiff was afforded a full and fair opportunity to be heard before an impartial tribunal.  Doc. 165 at 3, ¶ 6.

[14] Plaintiff disputes this fact.  Doc. 179 at 6, ¶ 4.  Plaintiff asserts that early on in the termination hearing, Plaintiff's counsel objected to the use of any documents which had not been disclosed to Plaintiff or her counsel prior to the hearing.  *Id.*  Plaintiff asserts the objection was ignored by Defendant Wilson, who chaired the termination hearing.  *Id.*  Plaintiff asserts her counsel objected to the use of Defendants' Exhibit B-4, a 93-page report from Jaramillo Accounting Group.  *Id.*  While the Village attorney noted the objection, the Council never ruled on it and instead directed Defendant Bruton to continue testifying.  *Id.*  Plaintiff asserts that her counsel also objected to the Council

After the hearing and closed session deliberations that same evening, the Village Council subsequently issued unanimous findings and conclusions, signed by all four members.[15]  Doc. 133 at 4, ¶ 12; Doc. 131 at 2, ¶ 2.  The Mayor did not participate in the Council's deliberations or in any other adjudicatory capacity.[16]  Doc. 133 at 4, ¶ 12.  The Village decision did not rely upon any exhibit produced in Attorney Coppler's email other than the June 2018 OSA Report.[17]  Doc. 156 at 10, ¶ 7.

The Council found and concluded, among other things, that Plaintiff should be terminated because she allegedly:

a.    "engage[d] professional engineering services without competitive bidding required by the Procurement Code" (Finding No. 17);[18]

---

considering any evidence relating to matters that were not identified in the Plaintiff's letter of termination.  *Id.*  That objection was never ruled on.  *Id.*  Plaintiff's counsel also objected to Defendants' witnesses answering questions about the June 2018 OSA Report because that report had not been provided to Plaintiff prior to or during the hearing. *Id.*  That objection was never ruled on and Defendants' witnesses were directed to continue testifying about that report. *Id.*  Plaintiff's counsel also objected to Defendant Bruton testifying about the Plaintiff's status as an at-will employee. *Id.*  The Council noted that objection but allowed Defendant Bruton to continue testifying about that subject.  *Id.* Plaintiff's counsel's objection to an argumentative question was summarily denied.  *Id.*

[15] *Id.* at fn. 13, *supra.*

[16] *Id.* at fn. 13, *supra.*

[17] Plaintiff disputes this material fact.  Doc. 179 at 5-6, ¶ 3.  Plaintiff asserts that the Village's Findings and Conclusions relied on two different reports by Village accountants which are identified in the Findings and Conclusions as Defendants' Exhibit B-4 (a June 30, 2018 report by Village auditors Jaramillo Accounting Group), and Exhibit B-5 (a July 31, 2018 "Agreed Upon Procedures" issued by another accounting firm retained by the Village (Southwest Accounting Solutions)).  *Id.*

[18] Defendants argue that the Notice of Termination referred generally to Plaintiff's "disorganization and poor record keeping."  Doc. 156 at 4, ¶ 4.  Defendants argue that the failure to follow the Procurement Code is a specific example of this general concern.  *Id.*

Plaintiff argues that Defendants have not created a disputed issue of material fact whether the Notice of Personnel Action gave Plaintiff notice she would be terminated for reasons set for in Findings 17, 20 or 21.  Doc. 179 at 3, ¶ 1.

b.       was responsible for and failed to deduct withholding taxes from the PERA

payments made to Village employees in January of 2018 (Finding No. 20);[19] and

c.       signed her own PERA payment check in violation of the Governmental Conduct

Act (Finding No. 21).[20]

Doc. 131 at 2, ¶ 3.  The Notice of Personnel Action did not cite Findings 17, 20 or 21.  Doc. 131

at 2-3, ¶ 4.  The Notice of Personnel Action also did not mention Plaintiff's alleged failure to

attend a grant related meeting which the Village Council, at the termination hearing, claimed was

a reason Plaintiff should be terminated.  *Id.*, Doc. 133-3 at 8.

Finding No. 14 stated:

In an April 16, 2018 e-mail message from the Village attorney to the governing
body and acting Village Clerk, counsel for the Village stated that he spoke with the
acting Village Clerk via telephone and advised that the PERA reimbursement issue
was in the hands of PERA and she should follow their advice; acting Village Clerk
informed counsel for the Village that she had discussions with state officials and
had taken the matter in front of the Village Council for discussion and they voted
to approve.  In that meeting Ms. Klaus was told to cease the PERA deductions,
which she did not do, rather the improper checks continued to be issued.

---

[19] Defendants argue that the Notice of Personnel Action almost exclusively relied upon the issues of Plaintiff's
involvement with the improper employee checks, and her failure to seek Council approval for those checks. Doc. 156
at 4, ¶ 4.  They assert that the Notice generally referenced the findings of the June 2018 OSA Report with respect to
these issues.  *Id.*  Defendants contend that the failure to withhold taxes on these improper payments was specifically
detailed in the Report as Finding 2018-006.  *Id.*  Defendants further contend that Plaintiff's "appearance of conflicts
of interest" and the "lacking of adequate controls" which relate to her signing her own check was repeatedly noted in
that report.  *Id.*  In other words, Defendants argue, Plaintiff's  signing of her own check was an example of the concerns
cited in the report.  *Id.*

Plaintiff argues that Defendants have not created a disputed issue of material fact whether the Notice of Personnel
Action gave Plaintiff notice she would be terminated for reasons set for in Findings 17, 20 or 21.  Doc. 179 at 3, ¶ 1.
Plaintiff also disputes Defendants' assertion that the June 2018 OSA Report supports the allegations that Plaintiff was
responsible for "the failure to withhold taxes" on the PERA payments made to Village employees and signed her own
PERA check, because the facts discovered in this lawsuit show that Plaintiff did not sign her own check and was not
responsible for the failure to withhold taxes from the PERA checks.  Doc. 179 at 3-4, ¶ 1.

[20] *Id.* at fn. 19, *supra*.

Doc. 131 at 3, ¶ 5.  The referenced email was not presented as evidence at Plaintiff's termination hearing, the Village Attorney did not testify at the hearing, and no other witnesses provided testimony or presented evidence which supported this finding.  *Id.*

The Findings and Conclusions also included a "Conclusion of Law" which provided that "Village Clerk Wismer also recommended to Mayor Jake Bruton that Klaus be terminated for cause."[21]  Doc. 133 at 4, ¶ 13.  On May 11, 2020, the Village Council's attorney served the Findings of Fact and Conclusions of Law on Plaintiff's counsel.[22]  *Id.* at 5, ¶ 15.

The June 2018 OSA Report found that Plaintiff had improperly used Village funds to pay for personal items and had been improperly reimbursed with Village funds for repairs done to her vehicle.  Doc. 165 at 3, ¶ 1.  A subsequent annual audit performed by the Village's contract auditors, dated December 2018 ("December 2018 Audit Report"), one year and three months before Defendant Bruton gave the Plaintiff her Notice of Personnel Action, looked at the same reimbursement transactions and concluded, contrary to the findings in the June 2018 OSA Report, that Plaintiff had not used Village funds to pay for personal items and that the Village's reimbursement of the Plaintiff for car repair expenses was allowable.[23]  *Id.*  Defendant Bruton testified he was aware of the December 2018 Audit Report, but he nonetheless relied on the June 2018 OSA Report and used the findings therein to support his claim there was just cause to terminate Plaintiff.  *Id.*  Similarly, Defendant Wilson testified she too was aware of the Village's annual audit findings regarding these two transactions, claimed not to know whether the auditors

---

[21] *Id.* at fn. 13, *supra.*

[22] *Id.* at fn. 13, *supra.*

[23] The December 2018 Audit Report stated as to Plaintiff's reimbursement of personal items and car repairs that "[a]lthough most of the expenditures appear to serve the Village and its programs, there is the appearance of impropriety and we have recommended that P-card transactions be eliminated or very restricted and that a second signature on checks be required for amounts over a certain threshold."  Doc. 165-1 at 3.

had researched the transactions further, as the December 2018 Audit Report claimed, because the auditors had not presented her with any receipts regarding those transactions, yet relied on the June 2018 OSA Report's findings even though the June 2018 OSA Report had not presented her with any receipts regarding those transactions either.  *Id.*

The June 2018 OSA Report stated that Mayor Chavez told the State Auditor's Office that she made the decisions to issue the PERA reimbursements and to not bring the issue of those reimbursements to the Council's attention or to seek their approval.  Doc. 165 at 4-5, ¶¶ 2, 3, 4. Plaintiff testified at her termination hearing that she had no role in making either of those decisions, but did show Mayor Chavez a 2006 Resolution and asked her what she thought it meant.[24]  *Id.* at  ¶¶ 2, 8.  Former Mayor Chavez did not testify at Plaintiff's termination hearing, but subsequently provided deposition testimony in this lawsuit that Plaintiff had no role in making the decisions to bring the PERA reimbursement issue to the Village Council or with issuing the PERA checks.  *Id.* at ¶¶ 2, 3, 4.  Plaintiff's testimony was also corroborated by the deposition testimony of the Village's former contract accountant Teresa Grannemann.[25]  *Id.* at ¶¶ 2, 8.  Despite Mayor Chavez's statements in the June 2018 OSA Report, Defendant Johnson testified he believed the decision not to bring the issuance of the PERA checks to the Council's attention "was a group effort on both their parts, Diane Klaus and the mayor."  *Id.* at 5-6, ¶ 5. Defendant Johnson testified his belief was supported by the fact that in Council meetings the

---

[24] Plaintiff testified that while scanning documents as part of the Village's effort to computerize its documents, Plaintiff ran across a 2006 Resolution related to the Village's decision to "pick up" Village employee PERA contributions. Doc. 151 at 9, ¶ 18.  Plaintiff asked Teresa Grannemann, the Village's contract accountant, to read it and tell Plaintiff what she thought it said, and Plaintiff also took the 2006 Resolution to Mayor Chavez and similarly asked Mayor Chavez to read it and say what she thought it meant.  *Id.*

[25] Teresa Grannemann testified that the idea for the PERA reimbursements started when Plaintiff found a copy of the 2006 Resolution and brought it to her for interpretation and meaning.  Doc. 151-5 at 3.  Plaintiff did not tell Ms. Grannemann what she thought it meant.  *Id.* at 4.

Mayor would "always refer everything, questions about whatever, to Diana Klaus.  So Diane

Klaus was a part of every decision she was making, in my opinion."  *Id.*  Defendant Wilson

testified that that she believed Mayor Chavez's statements to the Office of the State Auditor

about her decisions were statements of "opinion."[26]  *Id.*  Defendant Wilson told the Office of the

State Auditor that Diane Klaus was one of the people who made the decisions to issue the checks

and to not bring the matter before the Council.[27]  *Id.* at 6, ¶ 6.  Defendants Bruton contacted the

State Auditor's Office in the first instance and Defendant Wilson talked with a representative of

the State Auditor's Office.[28]  *Id.* at ¶ 7.

Between September 2017 and Plaintiff's April 2020 termination hearing, three of the four

Village Council members who presided over the hearing - Defendants Wilson, Garcia and

Johnson - voted in favor of and took the following actions seeking to terminate Plaintiff:[29] [30]

---

[26] Defendant Wilson subsequently agreed that the Mayor's statement to the State Auditor that she (the Mayor) was the one to make the decision to reimburse the monies without taking the issue before the Village Council was not an opinion, but testified that the Mayor's reasons for not bringing the PERA reimbursement before the Council, *i.e.,* that the Council had been postponing her agenda items, was an opinion.  Doc. 165-3 at 4.

[27] Defendant Wilson testified that she did not recall the conversation with the State Auditor representative verbatim or directly, but she agreed that she implied to the State Auditor representative that Plaintiff was responsible in part for issuing the PERA reimbursement checks and deciding not to bring the issuance of the PERA checks to the Council's attention.  Doc. 165-3 at 2-3.

[28] *See* fn. 27, *supra.*

[29] In response to Plaintiff's facts in paragraph 13, Defendants do not dispute that they sued Mayor Chavez after approving a new Deputy Clerk, Michael Wismer, and not appointing Plaintiff from then-Acting Clerk to Clerk.  Doc. 156 at 6, ¶ 13.  Defendants note that in the June 2018 OSA Report, Mayor Chavez's continued employment of Plaintiff as Acting Clerk arguably violated Section 3-11-6(a) which provides that "A. Subject to the approval of a majority of all members of the governing body, the mayor shall: (1) appoint all officers and employees except those holding elective office; and (2) designate an employee to perform any service authorized by the governing body."  *Id.*

[30] Subject to Defendants' objection to Exhibit 13, *see* fn. 31, *infra*, Defendants argue that all of the facts Plaintiff offers in paragraph 13 purport to show evidence of efforts to terminate her.  Doc. 156 at 6, ¶ 13.  Except for the lawsuit, Plaintiff concedes that these efforts were "the equivalent of progressive discipline."  *Id.*  By its very nature, progressive discipline does not require termination, nor is it otherwise its equivalent.  *Id.*  Defendants thus dispute all facts on these grounds.  *Id.*  The individual Defendants testified that their efforts attempted to address their concerns in a constructive, progressive manner, not to terminate Plaintiff, and were summarily refused by Mayor Chavez.  *Id.*

a.      On September 18, 2017, each of these Defendants voted to disapprove of Plaintiff's appointment to be Village Clerk and publicly discussed complaints and criticisms about Plaintiff's job performance from residents;

b.      From fall of 2017 through early 2018, Defendants Wilson, Garcia and Johnson refused to take action on items placed on its agendas until Mayor Chavez put Plaintiff on the Council's agenda as an action item;

c.[31]     After Mayor Chavez refused to do so, Defendants Bruton and Wilson called a December 10, 2017, special workshop, open to the public, to discuss Plaintiff's employment.  At that workshop, Defendants Johnson, Wilson and Garcia made statements criticizing Plaintiff and her job performance and indicated they did not want Plaintiff to remain employed by the Village of Tijeras.  Defendant Johnson told those in attendance that the meeting was about Plaintiff's behavior; that he had received phone calls and many complaints from residents and business owners about Plaintiff; that he had requested those individuals put their complaints in writing;

---

[31] Defendants object to Plaintiff's Exhibit 13 (December 10, 2017, Council Workshop Minutes) purporting to be a "verbatim" transcript of the December 10, 2017, workshop and argue it is not admissible evidence as required by Fed. R. Civ. P. 56(c)(2) because it is an unsworn statement, and unattached to any deposition or affidavit attesting to it as verbatim.  Doc. 156 at 6, ¶ 13.  "To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016) (quoting *Argo*, 452 F.3d at 1199).  While this does not require that the evidence submitted at summary judgment be "in a form that would be admissible at trial," it does require that "the content or substance of the evidence [submitted at summary judgment] must be admissible." *Id.* (quoting *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006)); *see also generally Trevizo*, 455 F.3d at 1160 (citing *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005)) (explaining that parties may submit affidavits as evidence to establish a genuine issue of material fact even though affidavits are often inadmissible hearsay at trial on the theory that the same facts may ultimately be presented at trial in an admissible form).  Plaintiff has failed to present evidence sufficient to support a finding that Exhibit 13 is a "verbatim" transcript of the December 10, 2017, workshop.  That said, Plaintiff's Exhibit 19, to which Defendants have not objected, demonstrates that the Village Council approved the minutes from December 10, 2017, workshop.  *See* Doc. 131-16.  Plaintiff has also presented Defendant Johnson's deposition testimony in which he discusses the December 10, 2017, minutes and acknowledges the statements he made.  Doc. 179 at 4-5, ¶ 4.

that he could not condone this kind of behavior in a Deputy Clerk; and that "this has got to stop [and] yes she needs to go."[32]  Doc. 131 at 4-5, ¶ 13.

Defendant Johnson also read two written complaints about Plaintiff to those in attendance at that meeting, including a complaint by Sean Milks, whose complaint asserted Plaintiff had changed his water rights application to the State Engineer's Office to state that 1 acre foot, rather than 2/3 of an acre foot, be transferred to the Village of Tijeras.[33]  *Id.* at 5-6, ¶ 13.  Defendants Garcia and Bruton knew that Milks' complaint regarding the transfer of water rights was false because on August 10, 2017, Defendant Garcia had voted in favor of Defendant Bruton's motion to direct Mayor Chavez to make that change to Milks' application.[34]  *Id.*

Defendant Garcia told those in attendance that he had some differences with Plaintiff.  *Id.* He implied Plaintiff was responsible for bad management at the Village and that Plaintiff thought she could "run the Village as she wanted."  *Id.*  at 6.  He further said he had spoken to Plaintiff about this but that Plaintiff "wouldn't listen" and that was "why I am thinking about replacing Diane Klaus."[35]  *Id.*

Defendant Wilson stated to those in attendance that she had received complaints about Plaintiff.  Doc. 131 at 6, ¶ 13.  Defendant Wilson commented that she had asked that the

---

[32] Exhibit 13, as attached to Plaintiff's Motion, does not contain statements by Defendant Johnson.  *See* Doc. 131-11. Plaintiff, however, has presented Defendant Johnson's deposition testimony in which he discusses the December 10, 2017, workshop and acknowledges statements he made as reflected in the minutes.  Doc. 179 at 4-5, ¶ 4.

[33] *See* fn. 31, *supra*.  Mr. Milks' complaint is attached as Exhibit 14 to Plaintiff's Motion.  *See* Doc. 131-12.  It states, in pertinent part, that "[r]ecently dealing with Ms. Klaus has been in a word aggravating.  The non-responses to request, making every single item an issue and changing documents such as the transfer of water rights from 2/3 acre to 1 foot without my consent has been simply wrong."  *Id.*

[34] Exhibit 16 demonstrates that on August 10, 2018, Councilor Bruton and Garcia approved "that the Mayor sign the application with 1 acre foot versus 2/3 acre foot to be transferred to [Village of Tijeras] from Sean Milks or Pinnacle." Doc. 131-14 at 3.  The minutes also state: "[h]ave attorney write letter to Sean Milks and copy of motion from minutes."  *Id.*

[35] *See* fn. 31, *supra*.

financials be made easier to understand but that there were not always details listed in the report that had been asked for.  *Id.*, Doc. 131-11 at 2.  Defendant Wilson also commented that she had gone to a workshop with the Department of Finance and Administration where a Village report was an example of two different balances that were in error and she was embarrassed that she had never heard about it.  *Id.*  Defendant Wilson stated she did not appreciate being unaware and that if the Council could not be informed of things, "I'm not for having her in the office."[36]  *Id.*

The complaints read to the public by Defendant Johnson were solicited by Defendant Johnson and members of the Village Council.[37]  Doc. 131 at 6, ¶ 13.  Defendant Wilson directed complainants to send complaints to then Mayor Chavez.  *Id.*  One of the seven complainants emailed his complaint directly to Defendant Wilson at her personal email account; two others were emailed directly to Defendant Johnson at his personal email account; and one was addressed to Defendant Bruton.  *Id.* at 6-7, ¶ 13.

d.      On January 12, 2018, Defendants Bruton, Johnson, Wilson and Garcia held a second special council meeting, open to the public, and voted to approve a "Notice of Employee Verbal Warnings and Written Reprimand," which claimed the Council's disapproval of Plaintiff for the position of Clerk in September 2017 and was a first documented verbal warning to Plaintiff.  Doc. 131 at 7, ¶ 13.

e.      On January 31, 2018, Defendants Bruton, Johnson, Wilson and Garcia held a third Council meeting, open to the public, during which they discussed Plaintiff and her job performance; voted to approve a "Final Notice of Employee Verbal Warnings and Written

---

[36] *See* fn. 31, *supra*.

[37] *See* fn. 31, *supra*.  Defendant Johnson's deposition testimony, as cited by Plaintiff, states that "a couple of years ago" he produced statements that he had solicited from people that complained about Plaintiff's communication with members of the public.  Doc. 131-1 at 7.

Reprimand" to Plaintiff; voted to terminate her employment with the Village effective January

31, 2018; and voted to disapprove of Plaintiff as the Mayor's appointee to Deputy Clerk, Interim

Clerk, Acting Clerk or Employee Status of the Village of Tijeras.  Doc. 131 at 7, ¶ 13, Doc. 131-

19 at 4.  At this meeting, the Village Council also discussed reports which Plaintiff had brought

to the Council's attention that Defendant Garcia had taken metal belonging to the Village and his

apparent violation of the Anti-Donation Clause of the New Mexico Constitution.  *Id.*  Defendant

Garcia testified he never had a problem with Plaintiff until he was accused of taking the scrap

metal.  *Id.*

> f.      These Defendants took these actions despite having no authority to discipline an

employee under the Ordinance.  Doc. 131 at 8, ¶ 13.

At a February 12, 2018, Village Council meeting, Defendant Johnson commented that he

"was still committed to protecting citizens and businesses of Tijeras from the behavior of Diane

Klaus, so this will be rectified soon."[38]  Doc. 131 at 8, ¶ 14.

At a March 2, 2018, Village Council meeting, Defendants Bruton, Johnson, Wilson and

Garcia voted to approve of the hiring of the Robles, Rael & Anaya law firm for the purpose of

suing Mayor Chavez to force her compliance with the Village Council's termination of

Plaintiff.[39]  Doc. 131 at 8, ¶ 15.  Defendants sued Mayor Chavez for her failure to remove

---

[38] Defendants object to Plaintiff's Exhibit 23 (February 12, 2018, Village Council Meeting Minutes) and her quoting from it as if it is a "verbatim" transcript.  Doc. 156 at 6, ¶ 14.  Defendants argue it is an unsworn statement and unattached to any deposition or affidavit.  *Id.*  *See* fn. 31, *supra.*

Plaintiff asserts that Defendants' response does not create a disputed issue of material fact because Defendant Johnson, although not recalling making the statement, admitted that the February 12, 2018, minutes reflected the statement that he was "committed to protecting the citizens and businesses of Tijeras from the behavior of Diane Klaus and this will be rectified soon" and he assumed "it is somewhat correct."  Doc. 179 at 5, ¶ 5.

[39] Defendants object to Plaintiff's Exhibit 24 (Minutes of March 2, 2018, Village Council Meeting) and her quoting from it as if it is a "verbatim" transcript.  Doc. 156 at 6, ¶ 15.  Defendants argue it is an unsworn statement and unattached to any deposition or affidavit.  *Id.*  *See* fn. 31, *supra.*  Subject to this objection, Defendants do not dispute the facts in Plaintiff's Undisputed Material Fact 15 based on the other evidence offered in support.  *Id.*

Plaintiff as Village Clerk because the Village Council had approved a new Deputy Clerk and rejected the temporary appointment of Plaintiff as Village Clerk.[40]  Doc. 156 at 10, ¶ 10.

Defendants Johnson, Wilson and Garcia were not lawyers and had no legal education. Doc. 131 at 8, ¶ 16.

On March 26, 2018, the Village Council, consisting of Defendants Wilson, Bruton, Johnson and Garcia, held an organizational meeting pursuant to § 3-11-5 NMSA 1978.  Doc. 131 at 8-9, ¶ 18.  During the course of that meeting, Defendant Johnson moved to continue that meeting until March 27, 2018, and that the Mayor should, at that time, submit a complete list of names and titles of persons employed by the Village.[41]  *Id.*  Defendant Johnson stated that the organizational meeting required the Village Council to be looking at a list of all persons' names

---

[40] Plaintiff disputes this material fact.  Doc. 179 at 6, ¶ 5. Plaintiff cites the Verified Petition for Writ of Mandamus and deposition of Defendant Bruton demonstrating that the reason Defendants sued Mayor Chavez was because she failed to terminate Plaintiff's employment at the directive of the Village Council.  *Id.*  Plaintiff also disputes that the deposition testimony Defendants cited supports Defendants' contention that they sued Mayor Chavez "because they approved a new Deputy Clerk and rejected the temporary appointment of Plaintiff as Village Clerk."  *Id.* at 6-7, ¶ 6.

[41] Defendants object to Plaintiff's Exhibit 2[8] (March 26, 2018, Village Council Meeting Minutes) and restate their objection to Doc. 126-8 (same) as a "verbatim" transcript and argue that it is not admissible evidence as required by Fed. R. Civ. P. 56(c)(2) because it is an unsworn statement and unattached to any deposition or affidavit.  Doc. 156 at 7, ¶ 18; Doc. 141 at 4, ¶ 15.  *See* fn. 31, *supra*.  Here, Plaintiff has presented admissible evidence, *i.e.,* deposition testimony, regarding the Council Minutes and pertinent portions therein regarding the requested list for Village employees.  Doc. 131 at 9, ¶ 18 (citations omitted); Docs. 126-10 at 3-4, 126-11 at 3, 126-12 at 8.

Defendants also argue that Plaintiff's evidence does not support her factual assertions regarding the March 26, 2018, meeting.  Doc. 156 at 7, ¶ 18.  Defendants assert that Doc. 126-9 is the first page of the official minutes of the March 26, 2018 meeting and that Plaintiff omits the remaining pages in favor of the unofficial version.  *Id.* Subject to this objection, Defendants contest that the Council requested a list of all employees for the purpose of terminating anyone.  *Id.*  Defendants contend that in Defendant Bruton's testimony, selectively excluded in Plaintiff's Exhibit 12, he "just believed that an organizational meeting needed to occur . . . when I took over as mayor that we had an organizational meeting . . . kind of just procedural to reappoint everybody."  Doc. 156 at 7-8, ¶ 18.  Defendants contend that Plaintiff similarly misrepresents the testimony from Defendants Johnson and Wilson's depositions.  *Id.*  Councilor Johnson testified that his memory was "foggy" on this detail, but he only testified that the Council requested a complete list of names, not for any specific purpose.  *Id.*  Defendant Wilson "similarly only agreed as to the request for a list."  *Id.*  Further, after his election, Mayor Bruton asked then-Village Clerk Mike Wismer to review all operations and personnel without specifying any review of Plaintiff.  *Id.*

Plaintiff asserts that Defendants' response does not create a disputed issue of material fact with respect to any of the facts which are supported by the cited depositions testimony.  Doc. 179 at 5, ¶ 6.

and titles to review whether the Village Council approves or denies continuing employment of those on the list.[42]  *Id.*

On March 27, 2018, Plaintiff and the Village Council were provided with a memorandum from the New Mexico Municipal League that explained if a municipality such as the Village has adopted a merit personnel system in accordance with § 3-13-33 NMSA 1978, that system takes precedence over the requirements found in § 3-11-5.A NMSA 1978.[43]  Doc. 131 at 9, ¶ 18; Doc. 126 at 5-6, ¶ 16; Docs. 126-13, 126-16.  The memorandum further explained that municipality employees under a merit employment system do not have to be reappointed by the Mayor or reconfirmed by the governing body.  *Id.*  The memorandum stated, in pertinent part, that "it is probably a violation of implied contractual rights for the mayor to attempt to replace (at the Organizational Meeting) an employee who is included in a merit personnel system."  *Id.*  Defendants stopped trying to terminate Plaintiff at its organizational meeting after they were provided with this memorandum.[44]  Doc. 131 at 9, ¶ 18.

On April 20, 2018, the individual Defendants filed a Petition for Writ of Mandamus seeking to force then Mayor Chavez to terminate Plaintiff.  Doc. 131 at 8, ¶ 17.  In April 2018, Defendants Bruton, Johnson, Wilson and Garcia also voted to defund Plaintiff's position as Deputy Clerk.[45]  Doc. 131 at 9, ¶ 19.  Defendants voted to defund the position of Deputy Clerk at

---

[42]  *See* fn. 41, *supra.*

[43]  The memorandum is dated January 17, 2006.  Doc. 126-13.  Defendants dispute that the memorandum was specifically directed to them.  Doc. 141 at 4, ¶ 16.

[44]  Defendants argue that Plaintiff's reference to Defendant Bruton's deposition testimony misrepresents that Defendant Bruton "stopped trying to fire Plaintiff" after receiving a letter from the Municipal League.  Doc. 156 at 7-8, ¶ 18.  Defendants assert that Defendant Bruton's testimony only stated that he recalled receiving the letter and that contrary to Plaintiff's assertion, Defendant Bruton testified that he never discussed the letter with former Mayor Chavez, or that Mayor Chavez ever brought it to the Council's attention.  *Id.*

[45]  Defendants contest that the decision to defund the deputy clerk position reflected any intent to terminate Plaintiff.  Doc. 156 at 8, ¶ 19.

the request of both Plaintiff and Mayor Chavez, because the two of them believed that between the three positions of Clerk, Deputy Clerk and Financial Director, only two were needed.[46]  Doc. 156 at 10, ¶ 11.  The Village Council decided to eliminate the Deputy Clerk position instead of the Financial Director position.  *Id.*  In June 2018, State District Court Judge Shannon Bacon denied the Petition finding that under Sections 1, 2 and 16 of the Ordinance, the authority to discharge an employee was provided only to the Mayor and not to the Village Council, and that the Village Council had no authority to terminate Plaintiff.  Doc. 131 at 8, ¶ 17.

On June 24, 2019, Defendants Johnson and Garcia discussed changing Plaintiff's Deputy Clerk position to a salaried position and agreed with Mayor Chavez that such a change would not turn Plaintiff's position into an at-will employment position.[47]  Doc. 131 at 9-10, ¶ 20.  Under the

---

[46] Plaintiff denies she requested the position of Deputy Clerk be defunded.  Doc. 179 at 6-7, ¶ 6.  Plaintiff affirms that a previous clerk, Shannon Fresquez, who served as Village Clerk between March 3, 2015, and March 19, 2016, suggested one of the three positions be eliminated.  *Id.*

[47] Defendants object to Doc. 102-6 (June 24, 2019, Council Meeting Minutes) as unsworn hearsay and further dispute the facts in paragraph 20 as never having been said, and further state that such facts are immaterial to the decision of the Village Council on July 22, 2019, regarding the status of Plaintiff's position.  Doc. 156 at 8, ¶ 20.  The parties have presented admissible evidence, *i.e.,* deposition testimony, regarding the June 24, 2019, minutes and the content therein.  *See* fn. 31, *supra*.  The parties submitted deposition testimony of Village employee Cheyanne Herrera who testified that she attended the June 24, 2019, meeting; prepared the minutes; recalled the discussions between Mayor Chavez and council members Johnson and Bruton that the Finance Director and Deputy Clerk would not be at-will if moved to salaried positions; that the Village Council approved the minutes as drafted; and that Mayor Chavez initialed the minutes as approved by the Village Council.  Doc. 131 at 9, ¶ 20; *see also* Docs. 141-3 at 2, 158-4 at 6-7; 172 at 4, ¶ 3.  Plaintiff submitted deposition testimony of Mayor Chavez who testified that she attended the June 24, 2019, meeting; remembered stating, and having council members agree with her, that if the positions of Finance Director and Deputy Clerk were converted to salary they would not be at-will; and that she initialed the June 24, 2019, Council minutes and only did so after they were approved by the Village Council.  Doc. 131, at 9, ¶ 20; *see also* Docs. 172 at 4, ¶ 3, 172-5 at 4.  Plaintiff submitted her deposition testimony in which she testified that she attended the June 24, 2019, meeting; remembered the discussion of whether Mayor Chavez and the Village Council were going to make the Finance Director and Deputy Clerk salaried and/or at-will positions; and remembered that Mayor Chavez did not want the positions moved to at-will and that Defendants Bruton and Johnson agreed that the positions would not be at-will.  Doc. 131 at 9, ¶ 20; *see also* Docs. 172 at 4, ¶ 3, 172-1 at 4.  Defendant Bruton testified that he recalls discussing changing the positions to salaried, but does not recall the discussion about those two positions not becoming at-will positions.  Doc. 172-6.  Defendant Johnson testified that he remembered some of the discussion at the June 24, 2019, meeting about changing the Finance Director and Deputy Clerk positions to a salaried position if they would not be transformed into an at-will position, but disagrees with what the minutes reflect regarding his agreement.  Doc. 181-2 at 2-3.  Defendant Johnson testified that in his mind there was no choice per the Ordinance that if they were to become salaried positions they would be at-will.  *Id.*

Ordinance, salaried employees are at-will employees who can be fired without cause.  *Id.*
Defendants Garcia, Johnson and Wilson voted to terminate Plaintiff as an at-will employee at her
termination hearing.  *Id.*

Defendants Wilson, Garcia and Johnson knew that under the Open Meetings Act
personnel matters should be discussed in a closed session unless the affected employee decides
otherwise.[48]  Doc. 131 at 10, ¶ 21.  The Village Council never discussed personnel matters in an
open session prior to talking about Plaintiff in an open session.  *Id.*  Before they tried to
terminate Plaintiff's employment, Defendants Johnson and Wilson had never tried to fire an
employee without the Mayor having first recommended such an action be taken.  *Id.*

## IV.  <u>SUMMARY OF ARGUMENTS</u>

### A.    <u>Defendants' Motion</u>

#### 1.    <u>Motion</u>

Defendants state that pursuant to provisions in the Village's Ordinance, Mayor Bruton
issued a termination letter to Plaintiff on March 10, 2020.  Doc. 133 at 1.  In response, Plaintiff
requested and received a termination hearing where she was represented by counsel, presented
evidence, and cross-examined witnesses.  *Id.*  The Village Council deliberated and issued a final
decision containing findings of fact and conclusions of law which was served to Plaintiff's
counsel on May 11, 2020.  *Id.* at 1-2.

---

[48] Defendants dispute that the New Mexico Open Meeting Act requires closed sessions with respect to discussing
personnel matters.  Doc. 156 at 8-9, ¶ 21.  Defendants' counsel properly objected to the testimony relied upon from
Councilors Johnson and Garcia as calling for a legal conclusion.  *Id.*  Defendants argue that Plaintiff's Exhibit 10, the
deposition of Maxine Wilson, does not support Plaintiff's proffered fact.  *Id.*  That cited deposition testimony only
asked for more general knowledge that the Act requires open meetings with certain exceptions.  *Id.*  Defendants state
that "[a]s a matter of law, pursuant to Section 10-15-1(H) NMSA 1978 of the New Mexico Open Meetings Act, the
general requirement of an open meeting 'does not apply' to the exceptions listed in paragraph (H), including personnel
actions."  *Id.* (citing 10-15-1(H) NMSA 1978).  Defendants assert the statute provides discretion to a public body to
close a session to discuss matters.  *Id.*

Defendants assert that these findings and conclusions included the express determination

that the Mayor and Village Council had just cause to terminate Plaintiff.  Doc. 133 at 2.

Defendants explain that the decision almost exclusively relied upon two related acts by Plaintiff.

*Id.*  First, the decision cited Plaintiff's involvement in the improper issuance of PERA

reimbursement checks to many Village employees, most notably herself.  *Id.*  Second, the

decision cited Plaintiff's failure to seek Village Council's budgetary approval, or even inform the

Council, prior to the issuance of the reimbursement checks.  *Id.*

Citing *Salguero v. City of Clovis*, 366 F.3d 1168 (10th Cir. 2004), Defendants argue that

the material facts submitted establish that the Village's determination of "just cause" collaterally

estops Plaintiff from relitigating the issue of just cause as part of her breach of contract claim.

Doc. 133 at 2.  Defendants contend that Plaintiff, as a municipal employee, requested and

received a full hearing on the merits of her termination.  *Id.* at 6-7.  Defendants contend that the

process afforded Plaintiff complied with all applicable provisions of the Village Ordinance.  *Id.*

Defendants note that the Village did not act through a grievance or personnel board.  *Id.* at 7-8.

Instead, the Village Council directly hears appeals from the Mayor's disciplinary decisions as

allowed by § 3-13-4(A) through (C) NMSA 1978.[49]  *Id.*  Defendants assert that in the notice of

---

[49] A. Any municipality may establish by ordinance a merit system for the hiring, promotion, discharge and general regulation of municipal employees. The ordinance may contain reasonable restrictions or prohibitions on political activities which are deemed detrimental to the merit system thereby established. The ordinance may provide for a personnel board or personnel officer to:

    (1) administer the ordinance; and
    (2) establish rules and regulations pursuant to the ordinance, which may include:

        (a) rules governing classification of employees;
        (b) service rating of employees;
        (c) establishment of pay scales and ranges;
        (d) establishment of the number of hours of work per week; and
        (e) methods of employment, promotion, demotion, suspension and discharge of the municipal employees.

termination, Plaintiff had not yet been formally terminated and at the time of the hearing had suffered minimal, if any, economic damages.  *Id.*  Thus, while the Ordinance did not include any provision to award Plaintiff any damages, no damages were at stake at that time, nor would Plaintiff have required any other remedy other than reinstatement, which the Council enjoyed full authority to provide.  *Id.*  Defendants contend Plaintiff had ample motivation to provide a robust defense, but her testimony almost exclusively consisted of "yes" or "no" answers to her attorney's leading questions.  *Id.*

Based on the foregoing, Defendants argue that Plaintiff is collaterally estopped from relitigating the issue of just cause through her breach of contract claims and ask this Court to grant summary judgment as against Counts II and III of Plaintiff's Complaint.

### 2.    Response

Plaintiff initially notes that the Defendants' Motion only addresses whether Plaintiff is collaterally estopped from litigating the issue of just cause and does not address whether Plaintiff is collaterally estopped from litigating the issue of progressive discipline.  Doc. 165 at 1, fn. 1. As such, Plaintiff argues that her breach of contract claim based on the failure of Defendants to provide her with progressive discipline before firing her is not at issue in the Defendants' Motion and is unaffected by it.  *Id.*  Plaintiff states that Defendants' collateral estoppel argument is

---

B. If a personnel board is created, the method of appointment, the number of members and terms of office shall be set forth in the ordinance. The board shall serve without compensation for its service.

C. Following the adoption of a merit system, the contract of employment between the municipality and an employee in a position covered by the merit system shall be subject to the provisions of the ordinance and rules and regulations issued pursuant to the ordinance.

N.M. Stat. Ann. § 3-13-4(A) – (C).

largely addressed in Plaintiff's Motion (Doc. 131).  *Id.* at 1-2.  Plaintiff adopts and incorporates by reference the facts and argument set forth in that previously filed motion.[50]  *Id.* at 2.

Plaintiff argues that the procedural and substantive limitations of Plaintiff's termination hearing impeded her ability to fully and fairly litigate the issues of just cause and progressive discipline.  Doc. 165 at 6-9.  Citing to Plaintiff's Motion (Doc. 131), Plaintiff argues she has shown how the procedural deficiencies at her termination hearing impeded her ability to litigate.  *Id.*  For example, Plaintiff notes that she was unable to conduct pre-hearing discovery and this limited her ability to present her affirmative case and rebut Defendants' presentation.  *Id.*  Plaintiff pointed out that she was not provided with any of the exhibits Defendants used to support their case against her until after she had finished cross-examining Defendants' witnesses, and that Defendants' main witness, Mike Wismer, consulted with Defendant Bruton, during the hearing, and before he answered questions from Plaintiff's attorney.  *Id.*

Plaintiff asserts that Defendants' reliance on *Salguero* is misplaced because there was no suggestion in that case that the deciding body was biased against the plaintiff.  Doc. 165 at 8.  Here, Plaintiff asserts, she has presented considerable evidence that three of the individual Defendants, who comprised the Village Council that presided over her termination hearing, had previously engaged in a concerted, years long effort to terminate Plaintiff, had previously decided Plaintiff needed to be fired, and had a pronounced bias against Plaintiff at the time they presided over Plaintiff's termination hearing.  *Id.*  For example, Plaintiff argues that Defendants claim they relied on the June 2018 OSA Report on the issuance of PERA reimbursement checks to support their contention there was just cause to terminate Plaintiff.  *Id.*  Through discovery in the course of this litigation, however, Plaintiff learned that Defendants Bruton and Wilson

---

[50] *See* Section IV.B.1 and 3, *infra*.

instigated the preparation of that report and that Defendant Wilson provided false information to the Office of the State Auditor that Plaintiff made certain decisions that she did not. *Id.* Plaintiff did not have this information at her termination hearing. *Id.* Also in the course of this litigation, Plaintiff learned that two witnesses, Mayor Chavez and the Village's former contract accountant, Theresa Grannemann, both corroborated Plaintiff's testimony at her termination hearing that she did not make any of the decisions related to the PERA reimbursements and had no role in making them other than showing then-Mayor Chavez a 2006 Village ordinance and asking her what she thought it meant. *Id.*

Finally, during the course of this lawsuit, Plaintiff has discovered that the June 2018 OSA Report findings that Plaintiff had improperly used Village funds to buy personal items and had improperly received Village funds in reimbursement of car repair expenses had been rejected by a subsequent audit conducted by the Village's own auditors well prior to Plaintiff's termination hearing. *Id.* Despite this information, Defendants relied on findings in the June 2018 OSA Report to support their contention there was just cause to terminate Plaintiff. *Id.* Plaintiff contends she could not have presented these facts as evidence at her termination hearing because of the procedural and substantive limitations placed on her ability to present her case.

Plaintiff, therefore, asks this Court to enter an Order denying Defendants' Motion.

### 3. <u>Reply</u>

Defendants contend that Plaintiff failed to validly dispute any of its material facts and, as such, the Court must grant summary judgment. Doc. 173 at 1. Defendants contend that their Motion establishes that Plaintiff is collaterally estopped from relitigating the issues of "just cause" and progressive discipline, and that Plaintiff attempts to create a dispute by misconstruing the plain reading of the Ordinance. *Id.* Defendants contend that the facts establish that Plaintiff

had proper notice of the charges against her in the notice of termination, that she received a full

administrative hearing with the ability to call and cross-examine witnesses and present evidence,

and that the Village fairly deliberated and issued and timely served a written decision supported

by substantial evidence, *i.e.,* the evidence regarding her role in issuing and hiding improper

checks to herself, the former mayor, and other employees.  *Id.* at 2.

Defendants assert that Plaintiff's additional evidence related to the June 2018 OSA

Report is misplaced because the Mayor's notice of termination letter "focused on her improper

process and the appearance of impropriety, not the ultimate purpose of the payments."  Doc. 173

at 3.  Defendants note that the subsequent December 2018 Audit Report similarly found that

"Plaintiff's payments created, at a minimum, 'the appearance of impropriety' and referred to the

same need for a 'Financial Oversight Committee'" as recommended in the June 2018 OSA

Report.  *Id.*  As such, Defendants argue that the Village's final decision and reliance on the June

2018 OSA Report are consistent with the subsequent December 2018 Audit Report.  *Id.*  That

aside, Defendants assert that Plaintiff does not even try to dispute that she failed to inform the

Village Council prior to the issuance of the PERA reimbursements and that in doing so, along

with making various self-reimbursements, "Plaintiff apparently remains oblivious to proper

financial processes and avoiding the appearance of impropriety."  *Id.* at 4.  Defendants further

assert that Plaintiff fails to establish a genuine issue of fact that she played a large role in the

issuance of the PERA reimbursements.[51]

Defendants argue that its Motion need not resolve the extent of Plaintiff's role in that

decision. Doc. 173 at 4.  Instead, Defendants argue that the Village's decision requires the

---

[51] For a complete iteration of the improper nature of the checks and their lack of prior approval, and of Plaintiff's culpability in both, Defendants refer the Court to its *Motion for Partial Summary Judgment as Against WPA and First Amendment Claims* (Doc. 144).  Doc. 173 at 4, fn. 5.

administrative record to support its findings and not be devoid of any contradictory evidence.  *Id.*

at 4-5.  Here, the Village, therefore, need only establish that substantial evidence supported its

decision.  *Id.*  To that end, then-current Village Clerk Mike Wismer testified that Plaintiff had

"total control and authority" over Village finances, which supported his additional testimony that

Plaintiff played an instrumental role in the issuance of the illegal checks.  *Id.*  Defendants argue

they were fairly entitled to rely upon Mr. Wismer's testimony.

Finally, Defendants ask that the Court consider its legal arguments and evidence in

Defendants' *Response to Plaintiff's Motion for Partial Summary Judgment On Issue of Whether*

*Plaintiff Is Barred From Litigating the Issues of Just Cause and Lack of Progressive Discipline*

*by the Doctrine of Collateral Estoppel* (Doc. 156).[52]  Doc. 173 at 5-6.  As stated therein,

Defendants argue that Plaintiff bears the "heavy burden" of rebutting the presumption of an

impartial tribunal.  *Id.*

In sum, Defendants submit that Plaintiff received a full and fair opportunity to litigate the

issues of just cause and progressive discipline and ask this Court grant summary judgment as

against Counts II and III in Plaintiff's Complaint.  *Id.*

  **B.**  **Plaintiff's Motion**

   **1.**  **Motion**

Plaintiff begins by arguing that her claims are not barred by issue or claim preclusion

because her termination hearing before the Village Council was procedurally and substantively

unfair for a number of reasons such that she did not have a full and fair opportunity to litigate her

claims.  Doc. 131 at 11-17.  First, Plaintiff asserts that the Notice of Personnel Action was

inadequate because it did not give Plaintiff notice of all the reasons for her termination which the

---

[52] *See* Section IV.B.2, *infra.*

Village raised and presented evidence on at her termination hearing and which formed the basis

of the Village Council's Findings of Fact and Conclusions of Law. *Id.* Specifically, the Notice

of Personnel Action did not notify Plaintiff she was being terminated for allegedly (1) engaging a

professional services company without competitive bidding required by the Procurement Code;

(2) failing to withhold taxes from PERA payments the Village made to certain employees in

January of 2018; and (3) signing a Village check relating to the above-referenced PERA

payments which was payable to her. *Id.* Additionally, the Village Council's Findings of Fact

and Conclusions of Law included Finding No. 14,[53] which was unsupported by any evidence,

was also not included as a reason for termination in the Notice of Personnel Action. *Id.*

Plaintiff argues that Defendants' failure to include these reasons for her termination in the Notice

of Personnel Action prevented her from being able to fully litigate the issue of just cause at her

termination hearing and thus denied her a full and fair opportunity to litigate those claims. *Id.*

Second, Plaintiff argues she was only accorded forty-five minutes to present her case at

her termination hearing. *Id.*

Third, Plaintiff argues that her ability to present her case was limited by the fact she

could not conduct pre-hearing discovery or subpoena witnesses to testify on her behalf. *Id.*

Fourth, Plaintiff argues that the termination hearing was held less than thirty (30) days

after she received notice of the reasons she was being terminated giving Plaintiff limited time to

prepare her prosecution of the issues of just cause and progressive discipline. *Id.*

Fifth, Plaintiff argues the termination hearing was not an in-person hearing. *Id.*

---

[53] *See* Section III, Material Facts, at p. 11, *supra*.

Sixth, Plaintiff argues that the Village introduced 460 pages of exhibits into evidence at the hearing and Plaintiff was not told what exhibits would be used by the Village to support her termination in advance of her hearing.  *Id.*  Plaintiff argues she had no opportunity to review the exhibits or prepare a response to them prior to her hearing.  *Id.*  Plaintiff further argues that she was not provided with copies of any of those exhibits until after the Village's witnesses had already testified and Plaintiff had completed her examination of those witnesses.  *Id.*  Plaintiff was, therefore, precluded from being able to effectively cross examine the Village's witnesses about Defendants' exhibits at her termination hearing.  *Id.*

Seventh, Plaintiff argues that during the hearing, one of the Village's main witnesses, Acting Clerk Mike Wismer, consulted with Defendant Bruton about his answers to Plaintiff's questions before providing an answer to them.  *Id.*  Only after Plaintiff's counsel objected did Defendant Bruton stop coaching Mr. Wismer.  *Id.*

Citing *Shovelin v. Cent. N.M. Elec. Coop., Inc.,* 115 N.M. 293, 850 P.2d 996 (1993), Plaintiff argues that the procedural and substantive limitations in this case and the difference between the procedures at Plaintiff's termination hearing and those available in this lawsuit are more pronounced and significant than those which led the New Mexico Supreme Court to conclude that the application of issue or claim preclusion based on a prior administrative decision would be unfair.  Doc. 131 at 15 (citing *Shovelin*, 850 P.2d at 1002).  Because those procedural differences caused  Plaintiff to have little incentive to vigorously prosecute her breach of contract claims before the Village Council, Plaintiff contends it would be fundamentally unfair to give preclusive effect to the Council's decision to uphold Plaintiff's termination and bar her from litigating in this lawsuit the issues of just cause and progressive discipline.  *Id.* at 16-17.

Plaintiff next argues that she was not afforded a full and fair opportunity to litigate her claims because the Village Council was not an impartial tribunal and had predetermined the outcome of the hearing.  Doc. 131 at 17-22.  Plaintiff asserts that prior to the termination hearing Defendants Wilson, Johnson and Garcia made public statements which disparaged Plaintiff, her abilities and her job performance.  *Id.*  Plaintiff asserts these same Defendants also engaged in a series of concerted efforts intended to terminate Plaintiff's employment and voted to terminate Plaintiff many months prior to her termination hearing.  *Id.*  After making these statements and engaging in these efforts, these same individuals acted as fact finders at Plaintiff's termination hearing and decided once again to terminate her.  *Id.*  Plaintiff contends the undisputed facts, therefore, demonstrate that the fact finders at Plaintiff's termination hearing were not impartial, were biased against her, and that they had reached a predetermined outcome regarding Plaintiff's termination.  *Id.*  Because of that bias, Plaintiff argues that the application of the doctrine of issue preclusion to Plaintiff's breach of contract claim would be fundamentally unfair.  *Id.*

Based on the foregoing, Plaintiff asks this Court to enter an Order granting her Motion, finding Plaintiff did not have a full and fair opportunity to litigate those claims at her termination hearing, and is not barred from litigating the issues of just cause or progressive discipline at trial in this case.  *Id.*

### 2.  **Response**

As a preliminary matter, Defendants contend that the merits of its *Cross-Motion for Summary Judgment* (Doc. 141) should render Plaintiff's Motion moot.  Doc. 156 at 1-3. Defendants contend that the Village indisputably converted Plaintiff to a salaried, at-will position, without objection by Plaintiff, six months prior to her termination.  *Id.*  Defendants

argue that because Plaintiff cannot show any reasonable expectation to the contrary, issues of just cause and progressive discipline do not apply to Plaintiff as an at-will employee.  *Id.*

That aside, Defendants begin their Response by arguing that pursuant to the Ordinance, Plaintiff received all the due process governing an appeal provided therein.  Doc. 156 at 1-3. They argue that Plaintiff received a Notice of Personnel Action after which she requested and received a termination hearing before the Village Council.  *Id.*  Defendants argue that Plaintiff was represented by counsel, presented evidence, and cross-examined witnesses.  *Id.*  Defendants argue that Mr. Wismer, with the assistance of Defendant Bruton, presented evidence supporting Plaintiff's termination.  *Id.*  Defendants contend that the Village Council then deliberated and issued a final decision which was served to Plaintiff on May 11, 2020.  *Id.*  Defendants contend that the Village Council's final decision included the explicit determination that, to the extent Plaintiff was not at-will, it had just cause to terminate Plaintiff.  *Id.*  Defendants assert that the Village Council's decision relied almost exclusively on two related acts by Plaintiff, both of which were supported by the June 2018 OSA Report, *i.e.,* (1) her involvement in the PERA reimbursements and (2) Plaintiff's failure to seek Village Council's budgetary approval, or even inform the Council, prior to the issuance of the reimbursement checks.  *Id.*  Defendants assert that Plaintiff had access to, had read, and was otherwise familiar with the June 2018 OSA Report addressing these issues.  *Id.*

Defendants assert that Plaintiff does not dispute that the Village Council's decision is supported by substantial evidence.[54]  Doc. 156 at 11-16.  Defendants argue that of the 27 Findings of Fact in the Village's decision, Plaintiff concedes that all but two, Nos. 14 and 17, are

---

[54] Defendants argue that appellate review of administrative decisions pursuant to Rules 1-074 and 1-075, NMRA, require substantial evidence to support the decision and the same standard of review should apply here.  Doc. 156 at 13.

supported by the record.  *Id.*  As for Finding No. 14, Defendants argue its inclusion was

harmless.  *Id.*  As for Finding No. 17, Defendants contend that while the termination notice

included general concerns regarding Plaintiff's "disorganization and poor record keeping," no

such evidence was presented at the hearing.  *Id.*  As such, this issue was "clearly collateral to the

issues regarding her involvement with the improper checks."  *Id.*  Those findings aside,

Defendants assert that all but one the Village's substantive findings concern Plaintiff's

involvement with the improper issuance of PERA checks to herself, the former Mayor, and

others, and her failure to alert the Council or otherwise seek prior approval.  *Id.*

     Defendants argue that despite these two unsupported findings, the Village's decision

should be upheld.  Doc. 156 at 11-16.  They argue that Plaintiff's Motion fails to offer any

reported decisions as even an example of an administrative decision voided after an evidentiary

hearing because a few of the findings were not supported by the record.  *Id.*  They further argue

that Plaintiff's Motion does not provide any examples of how a few unsupported findings

establish a lack of opportunity to litigate.  *Id.*  Defendants concede that some hypothetical level

of unsupported findings in an administrative decision would surely reflect lack of such

opportunity; however, they argue this decision is not such a case.  *Id.*

    Defendants argue that Plaintiff's argument that she did not get a fair and impartial

hearing disregards Tenth Circuit case law, *Salguero*, and instead improperly relies almost

exclusively on *Shovelin,* all the while ignoring *Padilla v. Intel Corp.*, 125 N.M. 698, 964 P.2d

862, 865 (1998), which Defendants assert limited *Shovelin*.  Doc. 156 at 11-16.  Defendants

assert that Plaintiff's reliance on *Shovelin* is misplaced because she fails "to explain how the

procedural deficiencies of which [s]he complains impeded [her] ability to litigate [her] breach of

contract claim fully and fairly."  *Id.*  Defendants contend that Plaintiff's counsel did not object to

any of Plaintiff's claimed deficiencies, save for one objection to a cross-examination question that was sustained, nor did he make any offers of proof. *Id.* Defendants also contend that Plaintiff clearly knew of the June 2018 OSA Report and was familiar with its substance, and the Notice of Personnel Action referenced and cited to it. *Id.* Thus, Defendants argue that Plaintiff cannot now claim any prejudice because she did not formally receive a copy of the report from Mr. Wismer as a formal pre-hearing disclosure. *Id.* Defendants further argue that by ignoring *Padilla* and *Shovelin*, Plaintiff wrongly argues that she somehow lacked "incentive to vigorously prosecute her breach of contract claims." *Id.* Defendants assert that the decision in each case soundly rejected this "incentive" argument with similar facts. *Id.* Similarly, Defendants assert that *Salguero* rejected what Plaintiff argues here: that the Councilors "were not lawyers and had no legal training." *Id.*

Defendants argue that Plaintiff fails to point to any evidence to satisfy her heavy burden of rebutting the presumption of an impartial trial. Doc. 156 at 16-20. Defendants contend that none of the evidence of bias Plaintiff offers relates at all to the essential allegations of either the termination notice, the proceedings, or the final decision based on the improper, almost surreptitious issuance of employee checks, including $10,752,58 to herself, improper actions which none of the Individual Defendants were involved in at all. *Id.* As such, Defendants contend there is no arguable prejudgment of the issues upon which the Defendants terminated her.

Defendants argue that Plaintiff attempts to overcome her heavy burden of demonstrating she did not have a full and fair opportunity to litigate the issue of just cause by relying on Defendants' issues with her job performance to show bias. *Id.* Defendants assert that while Plaintiff agrees that Defendants' prior complaints against her were attempts at progressive

discipline, she nonetheless contends that these actions, along with the Village Council's litigation against Mayor Chavez were attempts to terminate her.  *Id.*  Defendants argue, however, that their prior complaints against Plaintiff and the Village Council's litigation against Mayor Chavez were not attempts to terminate Plaintiff and were completely unrelated to the issues involved in Plaintiff's ultimate termination.  *Id.*

Defendants argue that none of these incidents reflects or reveals either a "personal or financial stake" in any of the Individual Defendants.  *Id.*  They further argue that the fact that the Village Council sued Mayor Chavez in a mandamus action to terminate Plaintiff does not reflect personal or financial animus towards Plaintiff.  *Id.*  Rather, as the State Auditor's Office observed, Mayor Chavez's continued employment of Plaintiff as Acting Clerk likely violated § 3-11-6(A).  *Id.*  Defendants argue that their involvement in previous personnel issues and the prior litigation over a political power struggle between Mayor Chavez and the Council does not overcome the strong presumption against actual bias.  *Id.*  Defendants further argue that "involvement of tribunal members in earlier proceedings in the same case does not overcome the presumption of honesty and integrity."  *Id.* (citing *Riggins v. Goodman*, 572 F.3d 1101, 1115 (10th Cir. 2009)).  If an adjudicator's involvement in related proceedings does not overcome the presumption against bias, then certainly involvement in unrelated proceedings should similarly fail as grounds of actual bias.  *Id.*

Defendants ask this Court to deny Plaintiff's Motion.

### 3.    <u>Reply</u>

Plaintiff states that the issue of whether Defendants' attempt to transform Plaintiff into an at-will employee by passing a budget resolution in July of 2019 was effective is addressed in Plaintiff's *Motion for Partial Summary Judgment on the Issue of Whether, At the Time She was*

*Fired, the Plaintiff Was a Regular, Full Time Employment Who Could Be Fired Only For Cause and After Being Subjected to Progressive Discipline* (Doc. 143), Plaintiff's *Response in Opposition to Defendants' Motion for Partial Summary Judgment on Plaintiff's Contract Clause Claim* (Doc. 158), and Plaintiff's *Response in Opposition to Defendants' Motion for Partial Summary Judgment on Existence of Implied Employment Contract* (Doc. 172). Doc. 179 at 2. Plaintiff incorporates by reference the facts and arguments set forth in those pleadings. *Id.*

Plaintiff states that whether Defendants' decision to terminate Plaintiff was premised "almost exclusively" on Plaintiff's alleged involvement in the issuance of PERA checks without informing or obtaining Council's approval has been addressed in Plaintiff's *Response in Opposition to Defendants' Motion for Partial Summary Judgment Against WPA and First Amendment Claims* (Doc. 177) and Plaintiff's *Response in Opposition to Defendants' Second Motion for Partial Summary Judgment Against Implied Employment Contract Claims* (Doc. 165). Doc. 179 at 2-3. Plaintiff incorporates by reference the facts and arguments set forth in those pleadings. *Id.*

Plaintiff contends that evidence of Defendants' public criticisms of and years long, unsuccessful efforts to terminate Plaintiff in several different ways, and the Defendants' filing of a lawsuit seeking to force then-Mayor Gloria Chavez to fire Plaintiff, are probative of whether Defendants bore personal animosity toward Plaintiff, were actually biased against Plaintiff, had a personal interest in the outcome of Plaintiff's hearing, and had pre-determined the outcome of Plaintiff's termination hearing. *Id.*

Plaintiff argues that *Shovelin* was not limited by either *Padilla* or *Salguero*. Doc. 179 at 7-10. Plaintiff contends that the Court in *Padilla* cited *Shovelin* to support certain legal principles and that nothing in the *Padilla* decision limits *Shovelin's* discussion of collateral

estoppel standards. *Id.*   Plaintiff also argues that the court in *Salguero* did not apply

New Mexico law governing collateral estoppel and instead applied federal common law. *Id.*

Here, Plaintiff contends the Court must apply New Mexico law regarding collateral estoppel. *Id.*

Plaintiff further argues that nothing in the *Salguero* decision limits the *Shovelin* decision and that

the *Salguero* court referred to *Shovelin* on only one occasion in support of the elements needed to

establish a prima facie case as to when collateral estoppel applies. *Id.*

Plaintiff asserts that the *Salguero* court decided not to apply collateral estoppel because

the plaintiff in that case had not shown what facts he had discovered in the federal lawsuit that

had not previously been presented at his post termination hearing. *Id.*  If this Court elects to

apply this standard in analyzing the issue of collateral estoppel under New Mexico law, Plaintiff

contends that the facts of this case show Plaintiff has shown she was unable to present facts at

her termination hearing which have been discovered in discovery in this lawsuit. *Id.*  For

instance, Plaintiff discovered that two of the findings in the June 2018 OSA Report had been

refuted by the Village's own auditors well prior to the Plaintiff's termination hearing. *Id.*

Plaintiff discovered Defendants ignored the OSA's clear statements that Mayor Chavez made the

unilateral executive decisions to issue the PERA checks without telling or obtaining the approval

of the Village Council. *Id.*  Additionally, Plaintiff argues that she was unable to subpoena

witnesses to testify on her behalf, could not conduct pre-termination hearing discovery, and was

only allowed on forty-five minutes to present her case. *Id.*  As such, Plaintiff contends she was

unable to meaningfully present evidence on the pretextual nature of Defendants' stated reasons

for terminating Plaintiff. *Id.*

Plaintiff argues that the fact that some of the Council's Findings of Fact may have been

supported by substantial evidence is irrelevant to the issues before the Court.  Doc. 179 at 10-11.

Plaintiff's Motion establishes that some of the Village Council's Findings of Fact were not supported by any evidence presented at her termination and/or were not referred to in the Notice of Personnel Action.  *Id.*  Plaintiff argues that evidence the adjudicative body made findings of fact that were not supported by evidence is probative of whether Plaintiff had a full and fair opportunity to litigate, and whether the Village Council was impartial.  *Id.*  While evidence that other findings may have been supported by substantial evidence is probative of whether the standard of review under Rule 1-074 and 1-075 NMRA has been satisfied, that standard is inapplicable to the determination of whether Plaintiff was precluded from litigating the issue of just cause and progressive discipline by the doctrine of issue preclusion and whether Plaintiff had a full and fair opportunity to litigate those issues before an impartial tribunal.[55]  *Id.*

Plaintiff argues that Defendants' public criticism of Plaintiff and her job performance and their efforts to fire her before her termination hearing took place are relevant and probative of whether Defendants bore personal animosity toward and bias against Plaintiff and whether they had pre-determined the outcome of Plaintiff's termination hearing.  *Id.*  Plaintiff argues this evidence goes to the heart of whether Plaintiff was afforded a full and fair opportunity to litigate the issues of just cause and progressive discipline before an impartial tribunal.  *Id.*

Plaintiff asks this Court to enter an Order granting Plaintiff's Motion.  *Id.*

For the reasons discussed below, the Court finds that Plaintiff has demonstrated genuine issues of material fact whether she had a full and fair opportunity to litigate the issue of just cause at the termination hearing and whether the Village Council was biased.

---

[55] This lawsuit does not involve an appeal of the Council's decision to terminate Plaintiff's employment.  Doc. 179 at 10-11.

# V. <u>ANALYSIS</u>

## A.    <u>Collateral Estoppel</u>

"Applying the principles of collateral estoppel, or issue preclusion, to decisions of state administrative bodies serves to promote federalism, conserve judicial resources, and encourage parties to minimize the expense and burden of repetitive litigation." *Salguero*, 366 F.3d at 1173 (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 798 (1986)). The Supreme Court established that a state agency's decision will have the same preclusive effect that it would receive from the state court if the state agency: (i) acts in a "judicial capacity"; (ii) resolves "disputed issues of fact properly before it"; and (iii) the parties have had "an adequate opportunity to litigate" the issue. *Elliott*, 478 U.S. at 799; *accord Salguero*, 366 F.3d at 1173. If the *Elliott* factors are met, then the court looks to New Mexico law to determine whether preclusion is proper. *Salguero*, 366 F.3d at 1173.

New Mexico law provides that, "[a]dministrative adjudicative determinations may be given preclusive effect if rendered under conditions in which the parties have the opportunity to fully and fairly litigate the issue at the administrative hearing." *Shovelin*, 850 P.2d at 1001. For preclusion to apply to an administrative decision, the administrative body must be acting in a judicial capacity and resolve disputed questions of fact properly before it. *Guzman v. Laguna Dev. Corp.*, 147 N.M. 244, 248, 219 P.3d 12, 16 (Ct. App. 2009).

Under New Mexico law, "collateral estoppel, also called issue preclusion, prevents a party from re-litigating ultimate facts or issues actually and necessarily decided in a prior suit." *Ullrich v. Blanchard*, 142 N.M. 835, 839, 171 P.3d 774, 778 (Ct. App. 2007). The New Mexico test for preclusion is as follows: (1) the party against whom collateral estoppel is asserted must have been a party or a party in privity to the original action; and (2) the two cases concerned the

same ultimate issue of fact which was (a) actually litigated, and (b) necessarily determined in the first suit. *Salguero*, 366 F.3d at 1173 (quoting *DeLisle v. Avallone*, 117 N.M. 602, 605, 874 P.2d 1266, 1269 (1994)). If the party invoking the doctrine establishes a prima-facie case, then the burden shifts to the party opposing collateral estoppel to show that he or she was not afforded a fair opportunity to litigate the issue in the prior proceeding. *Padilla v. Intel Corp.,* 125 N.M. 698, 964 P.2d 862, 865 (Ct. App. 1998). Whether the doctrine of collateral estoppel should be applied is within the trial court's discretion, and the exercise of discretion is reviewed for an abuse of discretion on appeal. *Shovelin*, 850 P.2d at 1002. Even when all the elements of collateral estoppel are present, the trial court must consider whether countervailing equities militate against application of the doctrine. *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 115 N.M. 159, 164, 848 P.2d 1086, 1091 (Ct. App. 1993). Collateral estoppel should be applied only where the judge determines that its application would not be fundamentally unfair. *Reeves v. Wimberly*, 107 N.M. 231, 234, 755 P.2d 75, 78 (Ct. App. 1998).

### B.  <u>Relevant Case Law</u>

The parties cite and primarily rely on three cases – *Salguero*, *Shovelin* and *Padilla*. The Court will discuss each in turn.

#### 1.  <u>*Salguero v. City of Clovis*</u>

In *Salguero*, plaintiff's police captain recommended plaintiff's termination based on his involvement in illegally obtaining and distributing satellite access cards. 366 F.3d at 1171. Salguero appealed the recommendation to the deputy chief and chief of police without success. *Id.* Salguero brought post-termination appeals before the city personnel director and the assistant city manager, both of whom upheld the termination. *Id.* Salguero then requested and received a hearing before a five-member city grievance board. *Id.* At the hearing, Salguero was

represented by counsel and was informed of his right to call and question witnesses and to present other evidence.  *Id.*  After hearing the evidence presented, the board issued a decision containing its findings and upholding Salguero's termination.  *Id.*

Salguero filed a complaint in federal court against the City of Clovis alleging, *inter alia*, a state law claim that the Clovis Police Department breached his employment contract by wrongfully terminating him without just cause.  366 F.3d at 1172.  With respect to this claim, the district court determined that under the doctrine of collateral estoppel, a New Mexico court would give preclusive effect to findings by the grievance board that Salguero was terminated for just cause.  *Id.*  Accordingly, the district court granted summary judgment to the City.  *Id.*

On appeal to the Tenth Circuit, Salguero argued that the doctrine of collateral estoppel should not bar him from litigating his claim in federal district court.  *Id.*  Salguero raised two primary challenges on appeal: (1) that the decision of the grievance board should not be granted preclusive effect because the board was not acting in a judicial capacity; and (2) that the board did not afford him a full and fair opportunity to litigate his breach of contract claim.  366 F.3d at 1172-73.  As to the former, the Tenth Circuit concluded that because the grievance board held a hearing and made findings pursuant to state statutory authority to consider Salguero's employment contract claim, the grievance board acted in a judicial capacity.  *Id.* at 1173.

As to the latter, the Tenth Circuit explained that New Mexico law requires the City first to state a prima facie case that collateral estoppel should apply.  *Id.*  To that end, the court explained that it was undisputed that Salguero was a party in both actions and that both cases concerned the same ultimate issue of fact as to whether Salguero was terminated for just cause. 366 F.3d at 1173-74.  The court also found that the issue of just cause was actually litigated and necessarily decided by the board "in its determination that Plaintiff's termination was justified

and appropriate based on Plaintiff's violations of City policy, department policy, state law, federal law, and his oath of office." *Id.* at 1174. Because the City had established its prima facie case, the burden shifted to Salguero to proffer controverting facts showing that he did not have a fully and fair opportunity to litigate his breach of contract claim. *Id.* Salguero argued his hearing was procedurally deficient because (1) he was not afforded an opportunity to conduct discovery prior to the hearing; (2) he was unable to subpoena certain witnesses, question fully some witnesses who refused to answer all his questions, and seek appellate review of the decision; (3) hearsay evidence was admitted; and (4) members of the grievance board had no legal training. 366 F.3d at 1174.

The Tenth Circuit explained that an "inquiry into whether a party had a full and fair opportunity to litigate an issue often . . . will focus on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." *Id.* (citing *Murdock v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 975 F.2d 683, 689 (10th Cir. 1992) (quotation omitted) and *Padilla,* 964 P.2d at 865 (similarly examining a party's incentive to litigate in the administrative forum, procedural differences between the prior and current forums, and policy considerations)). Applying this standard, the Tenth Circuit found that Salguero was represented by counsel and had a strong incentive to litigate his breach of contract claim. *Id.* The court found that Salguero was also able to call witnesses, cross-examine witnesses, and present other evidence. *Id.* Lastly, the court found that Salguero had failed to explain how the procedural deficiencies of which he complained impeded his ability to litigate his breach of contract claim fully and fairly because he had not developed a record that showed what facts discovered in federal litigation, witness testimony, or documentary evidence relevant to his

breach of contract claim were not previously presented and considered by the board.  *Id.*  The Tenth Circuit concluded that in the absence of such evidence, and in light of the procedure he was afforded, Salguero was able to fully and fairly litigate his claims.  *Id.*

As to Salguero's claim of bias, the Tenth Circuit reasoned that the mere presence of internal employees on personnel boards, without evidence that they have a personal or financial stake in the decision, does not establish bias.  *Id.* (citing *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 519-20 (10th Cir. 1998)).  The court noted that Salguero had presented no evidence of actual basis or the appearance of bias.  *Id.*  The Tenth Circuit, therefore, affirmed the district court's finding that the New Mexico courts would apply the doctrine of collateral estoppel to the grievance board's determination of just cause and that Salguero could not relitigate the issue of whether there was just cause for his termination.  *Id.*

### 2.   *Shovelin v. Central New Mexico Electric Cooperative, Inc.*

In *Shovelin*, plaintiff was terminated from his employment after running for and being elected mayor of Mountainair, New Mexico.  850 P.2d at 998.  Shovelin's employer had previously warned him that he would be terminated from his employment if he were elected mayor.  *Id.*  Shovelin filed for unemployment compensation, which defendant contested.  *Id.*  After a hearing on the matter at which Shovelin was represented by counsel, the Employment Security Department ("ESD") determined that Shovelin had voluntarily left his employment without good cause and, therefore, denied him unemployment benefits.  *Id.*  Following a lengthy procedural course and jury trial, defendant appealed the trial court findings, contending that, *inter alia*, the trial court erred when it denied defendant's motion for summary judgment based on the doctrine of collateral estoppel.  850 P.2d at 999.

The New Mexico Supreme Court believed that Shovelin did not have a full and fair opportunity at the ESD hearing to litigate the issue of whether he was voluntarily or involuntarily discharged. 850 P.2d at 1002. In making this determination, the court weighed countervailing factors including, but not limited to, the incentive for vigorous prosecution or defense of the prior litigation; procedural differences between the prior and current litigation, including the presence of absence of a jury; and the possibility of inconsistent verdicts. *Id.* (citing *Silva v. State*, 106 N.M. 472, 476, 745 P.2d 380, 384 (1987)). As to the first factor, the court found that it weighed in favor of upholding the trial court's refusal to apply collateral estoppel. 850 P.2d at 1002. The court explained that at stake in the initial hearing was Shovelin's right to receive unemployment compensation which was small when compared to the amount he could possibly have been and was awarded by the jury in his breach of contract action. *Id.*

As to the second factor, the court found both similarities and differences in the two proceedings. 850 P.2d at 1002-03. As for similarities, they found that issues of fact and law were decided in the ESD proceedings, the parties received notice and had an opportunity to be heard prior to issuing a decision, the parties were provided written notice of the decision and the reasons for the decision, and the parties were able to subpoena witnesses and present evidence and argument at the hearing. 850 P.2d at 1004. As for differences, the court noted that the ESD hearing did not have to "conform to common law or statutory rules of evidence or other technical rules of procedures"; there was no way of gaining or compelling any meaningful discovery; the tribunal did not consist of lawyers; and the petitioner was not entitled to a jury trial. *Id.* The court noted that the ESD proceeding took place shortly after Shovelin's discharge providing minimal time for discovery and was conducted by phone over the course of two and one-half hours. *Id.* The court reasoned that although Shovelin was represented by counsel, the procedural

differences between the agency and court actions led the court to conclude that the ESD decision

was reached by an informal process, which militated against giving collateral estoppel effect to

that decision in subsequent litigation.[56]  *Id*.

Lastly, the court reasoned that even though the trial court's refusal to preclude relitigation

led to inconsistent verdicts,[57] a weighing of the fairness factors enumerated in *Silva* led the court

to conclude that Shovelin did not have a full and fair opportunity to litigate the issue of whether

he was voluntarily discharged at the ESD hearing.  850 P.2d at 1004.

### 3.  *Padilla v. Intel Corporation et al.*

In *Padilla*, plaintiff brought an action against defendants alleging they were negligent in

their handling of a stack of sheetrock that fell on plaintiff and caused injury.  964 P.2d at 862.

The district court granted summary judgment for defendants and plaintiff appealed.  *Id.*

By way of background, plaintiff was employed as a laborer by TDC General Contracting,

a subcontractor doing business at a construction site owned by Intel.  964 P.2d at 864.  Padilla

alleged that Intel was negligent in their handling of a stack of sheetrock that fell on him and

caused injuries to his left knee and lower back.  *Id.*  Padilla received temporary workers'

---

[56] The court also considered that the procedure for the ESD hearing was guided by the Unemployment Compensation Law which was designed to expeditiously place unemployment compensation benefits in the hands of those persons who without fault become unemployed and where the legislature intended that the procedural steps should be reduced to a minimum.  850 P.2d at 1003-04.  The court reasoned that to preclude Shovelin from relitigating the reason for his termination would be incompatible with the legislative policy underpinning the Unemployment Compensation Law. 850 P.2d at 1004.  The court explained that if a collateral estoppel effect is given to determinations of the ESD in cases such as the instant case, unemployed workers may forgo asserting their rights under the Unemployment Compensation Law to preserve their right to seek further civil redress.  *Id.*  Alternatively, if the unemployed decides to assert his or her rights under the Unemployment Compensation Law, employers and the unemployed, armed with the knowledge that the ESD determination may preclude subsequent litigation, may try to turn ESD proceedings into full blown trials, which would thwart the legislative intent that unemployment benefits quickly flow to those in need.  *Id.*

[57] Shovelin initially appealed the ESD's determination to the district court, which reversed.  850 P.2d at 998. Cooperative then appealed that decision to the New Mexico Supreme Court which held that the ESD decision was supported by substantial evidence.  *Id.*  While the appeal was pending, Shovelin filed the instant action against Cooperative in state court.  *Id.* at 999.

compensation benefits, but the insurer stopped paying benefits after learning that plaintiff's claim was being investigated based on a claim from plaintiff's ex-wife that plaintiff had intentionally pulled the sheetrock down upon himself to fake a compensable injury and defraud his employer-insurer.  *Id.*  Padilla filed a complaint with the Workers' Compensation Administration ("WCA") for additional benefits.  *Id.*

A workers' compensation judge held a formal hearing.  964 P.2d at 864.  Various written statements were admitted without objection and certain witness testimony was taken.  *Id.*  The workers' compensation judge entered an order finding that plaintiff had intentionally injured himself, was not entitled to any workers' compensation benefits, and was required to repay the employer-insurer the benefits previously received, plus costs and attorney fees.  *Id.*  Padilla appealed the decision to the New Mexico Court of Appeals which summarily affirmed the workers' compensation judge's order after Padilla failed to respond to the calendar notice.  *Id.*

After the appeals court issued its mandate in the workers' compensation case, Intel filed a motion for summary judgment in the district court case contending that prior findings of the workers' compensation judge should be given preclusive effect with respect to the proximate cause of Padilla's injuries.  964 P.2d at 864.  The district court granted summary judgment and Padilla appealed.  *Id.*

On appeal, Padilla did not challenge any of the elements of collateral estoppel that made up defendants' prima facie case.  964 P.2d at 865.  Instead, the sole issue was whether Plaintiff met his burden of showing that he was deprived of a full and fair opportunity to litigate the issue of proximate cause in the workers' compensation proceedings.  *Id.*  The court stated that the factors to be weighed in determining whether the workers' compensation proceeding provided Padilla with a full and fair opportunity to litigate included (1) his incentive to litigate in the

administrative forum; (2) procedural differences between the two forums; and (3) policy considerations. *Id.*

As to the third factor, Padilla cited *Eldridge v. Circle K Corp.*, 123 N.M. 145, 934 P.2d 1074 (Ct. App. 1997), in which the New Mexico Court of Appeals stated a preference for a district court, rather than a workers' compensation judge, to determine first whether the worker was injured by intentional conduct by the employer. *Id.* Padilla also cited *Shovelin* in which the court discussed a policy of not applying preclusion doctrines to expedited administrative proceedings if doing so would induce the parties "to dispute the administrative proceeding in anticipation of its effect in another proceeding." *Id.* The court found both precedents distinguishable – *Eldridge* because it involved determining *employer* misconduct and *Shovelin* because it was concerned about the impact on informal, expedited administrative proceedings if the parties believed that the administrative ruling would have collateral estoppel consequences in court. 964 P.2d at 866. As such, the court concluded that public policy considerations did not warrant a general prohibition on giving the workers' compensation proceeding collateral estoppel effect. *Id.*

Addressing Padilla's incentive to litigate, Padilla argued that he lacked a comparable incentive to litigate the issue of proximate cause in the workers' compensation proceeding because of the statutory limits on the amount of benefits and attorney fees that he and his attorney may be awarded in such a proceeding. *Id.* In particular, Padilla pointed to statutory provisions which limit his recovery of lost wages in the workers' compensation proceeding to that of actual wages. *Id.* Intel suggested otherwise and stated that workers' compensation benefits could not be reduced under the doctrine of comparative negligence; they are generally not subject to income tax or claims by creditors; and there are limits on attorney fees that apply

to both sides. *Id.* The court concluded that the district court did not abuse its discretion in weighing Padilla's incentive to litigate in the administrative forum. *Id.* The court noted that in addition to Padilla's claim for more benefits, there was an amount in controversy that included benefits he had already been paid, plus costs and attorney fees, an amount which could have reduced any amount he ultimately recovered against a third-party. *Id.*

As for procedural differences, the New Mexico Court of Appeals found that the WCA rules provided for a mandatory exchange of certain types of evidence, as well as various mechanisms for compelling adequate responses to discovery requests, and that several of the WCA rules expressly incorporated discovery rules that apply in the district courts. 964 P.2d at 867-68. The court also found that Padilla had ample time to conduct discovery beyond the mandatory minimum expressed in the WCA rules and that the record did not show that Padilla filed any motions to compel further discovery of matters pertaining to causation. *Id.* The court found that the WCA incorporated many of the same rules of procedure and evidence that apply in the district courts with respect to witnesses, including objecting to out-of-court statements made by witnesses if they were inadmissible under the rules of evidence that apply in the district courts. *Id.* Lastly, the court failed to see how the lack of a jury in combination with the other factors significantly influenced determination of the proximate-cause issue. *Id.*

In sum, the *Padilla* court found that it was not an abuse of discretion for the district court to conclude that the procedures available to Padilla were substantially similar to the procedures available in district court, and that Padilla's failure to take advantage of those procedures by moving to compel additional discovery response or objecting to inadmissible evidence was an insufficient basis for reversing the district court's decision. *Id.*

> **C.**     **Plaintiff Has Demonstrated Genuine Issues of Material Fact Regarding**
>          **Whether She Was Afforded A Fair Opportunity To Litigate the Issue**
>          **of Just Cause at the Village Council Termination Hearing**

Here, Defendants are invoking collateral estoppel.  As such, it is their burden to establish

a prima facie case.  Notably, Plaintiff does not challenge any of the elements of collateral

estoppel that make up Defendants' prima facie case.  Thus, the sole issue is whether Plaintiff has

met her burden of showing that she was deprived of a fully and fair opportunity to litigate the

issue of just cause at the termination hearing.  *See Padilla*, 964 P.2d at 865.  Assuming, without

deciding, that all three of the *Elliott* steps have been met, the Court finds that Plaintiff has met

her burden of creating a genuine issue of material fact as to whether she was afforded a fair

opportunity to litigate the issue of just cause at the termination hearing such that collateral

estoppel does not apply.  *See Archuleta v. City of Santa Fe*, No. 04-CV-247, 2006 WL 8444481,

at *5 (2006) (where the court assumed, without deciding, that the *Elliott* steps had been met,

because plaintiff's First Amendment issues were still in question and not collaterally estopped).

The first inquiry is whether there were significant procedural limitations in the prior

proceeding compared to the current forum.  The *Salguero* court found it sufficient that plaintiff

was represented by counsel, was able to call witnesses, cross-examine witness and present other

evidence in the underlying administrative proceeding.  366 F.3d at 1174.  In doing so, however,

the court noted that the plaintiff did not develop the record that showed what facts discovered in

federal litigation, witness testimony, or documentary evidence relevant to his breach of contract

claim were not previously presented and considered by the board.  *Id.*  The *Shovelin* court found

that although plaintiff was represented by counsel in the underlying proceeding, the decision was

reached by an informal process which militated against giving collateral estoppel effect to that

decision in subsequent litigation.  850 P.2d at 1004.  The *Padilla* court found that the procedures

available to plaintiff before the workers' compensation judge were substantially similar to the procedures available in district court and therefore sufficient.  964 P.2d at 867-68.

In this case, the Court finds that the procedural differences between the termination hearing and this forum weigh against collateral estoppel.  To begin, Section 17 of the Ordinance, which governs appeals of probations and dismissals, provides a procedural framework that lends itself to a more informal process.  Doc. 133-1 at 26-29.  It states in pertinent part

> In the event disciplinary action involving suspension, demotion with a decrease in pay or discharge has been issued to an employee, the employee has the right to appeal such action to the Governing Body within ten (10) working days following the effective date of the action.  It is the intent of the Village to provide for a fair and impartial hearing before the Governing Board to render a decision based on the available facts and applicable rules or mandates.

Doc. 133-1 at 26.  The Ordinance provides that a notice of an appeal shall be given to the Governing Body within ten (10) working days following the effective date of the disciplinary action, and that within thirty (30) days following the receipt of the notice of appeal the appeal shall be scheduled to be heard.  *Id.*  The Ordinance provides that the hearing can be conducted in either a closed or open hearing; all parties are entitled to legal representation; all parties may present written or oral evidence in support of testimony; all parties may present testimony and call witnesses to testify in support of their position; no subpoenas shall be issued to compel testimony; each party is entitled to cross examine other parties and witnesses; and any member of the Governing Body may direct questions to any of the parties and/or witnesses.  Doc. 133-1 at 27-28.

Notably, the Ordinance does not provide any procedural mechanisms for compelling meaningful discovery nor does it specify what, if any, rules of procedure or evidence will govern.  *Shovelin*, 850 P.2d 1004; *cf. Padilla*, 964 P.2d at 867-68 (WCA rules expressly incorporated discovery rules that apply in the district courts).  This lack of procedural safeguards

was apparent when Plaintiff's counsel objected to the use of evidence during the hearing that had

not been provided to Plaintiff and yet the witness testimony in reference to the evidence was

allowed to continue without a ruling.[58]  Doc. 133-3 at 8.  Additionally, the Notice of Personnel

Action to Plaintiff failed to cite the provisions of the Ordinance or provide notice of the

procedural framework for "putting on her case."  The Notice stated that

> [u]nder the Village's personnel ordinance and other applicable law, you have a right
> to a hearing before the Governing Body, the Village Council, to determine whether
> my decision to terminate you, which as you note below has been concurred with by
> Mayor Jake Bruton, will be affirmed, reversed, or modified by the Village Council.
> . . .  *You are welcome to attend the meeting with counsel of your choice (at your
> expense) to put on your case as regards to my decision to recommend termination.*

Doc. 133-2 at 4 (emphasis added).

Next, the Court finds that even though Plaintiff was represented by counsel and was able

to call witnesses, cross-examine witnesses, and present evidence, Plaintiff has established

discrepancies and inconsistencies between the grounds for termination as presented in the Notice

of Personnel Action, versus the grounds for termination as described by Mr. Wismer at the

termination hearing, and the grounds for termination in the Village Council's Findings of Fact.

For example, the Notice of Personnel Action stated the grounds for Plaintiff's termination as

(1) she participated in the issuance and signing of illegal PERA reimbursements; (2) Plaintiff

knew that expenditures may not be made unless they had been budgeted and preapproved by the

Village Council, yet she failed to fully advise the Village Council prior to issuing the

reimbursement checks and failed to advise the Village Council after the checks had been issued;

(3) Plaintiff failed and refused to repay the amount she was reimbursed; (4) Plaintiff failed in her

responsibility to demonstrate in Council Minutes or Budget Meeting minutes that the budget had

---

[58] Plaintiff's counsel has identified a number of other objections he made during the hearing that went unaddressed.
*See* fn. 14, *supra*.

been approved by the Council for the calendar years 2011 to 2017; (5) Plaintiff was improperly reimbursed for certain purchases and for damage to her personal vehicle which the state auditor noted "raised concerns about the appropriate use of public monies"; and (6) conversations with citizens, staff and others confirmed a "continued pattern of behavior leading to disorganization, poor record-keeping, [and] poor communications both internally and with the public."  Doc. 133-2 at 2-3.

At the termination hearing, Acting Clerk Michael Wismer, in his opening statement, introduced a 2018 Audit Report which he claimed contained "22 repeat findings," some dating back to 2014, demonstrating [Plaintiff's] fiscal irresponsibility associated with the use of public funds.[59]  Doc. 133-3 at 8.  Mr. Wismer discussed a $750,000 Community Development Block Grant awarded in October 2019 and that the "Village was unresponsive and [Plaintiff] failed to attend a mandatory 2019 CDBG implementation workshop and therefore on the verge of losing the entire grant."  *Id.*  Mr. Wismer stressed that the most egregious act on the part of Plaintiff was her role in the issuance of illegal PERA reimbursements.  *Id.*  Mr. Wismer raised an issue of a 2019 audit by Southwest Accounting Solutions, LLC, in which auditors were "met with hostility from the Village staff and downright refusal to provide information to the point they felt compelled to abandon the audit."  *Id.*

Mr. Wismer stated on the record that

[o]ne could really look at the 2018 audit and all of its findings, the 2018 P.E.R.A. Special Audit, and the lack of initiating or completing a state-mandated 2019 audit, and wonder if there's some sort of plausible liability on the part of Diane.  What I mean is, that from an outsider's perspective, Diane was a deputy clerk, possibly

---

[59] Plaintiff's counsel objected to the use of this document arguing it had not been identified prior to the hearing or introduced as an exhibit and was not referenced in Plaintiff's letter of termination.  Doc. 133-3 at 8.  Mr. Wismer stated he forwarded a copy of the 2018 audit to Mr. Westbrook.  *Id.*  When Mr. Westbrook asked for a point of clarification as to when the document was sent, Mayor Pro Tem Wilson stated "No," and directed Mr. Wismer to continue.  *Id.*  Later in the hearing, Mr. Wismer indicated he had not, in fact, provided the exhibit, or any exhibits, to Plaintiff's counsel prior to the hearing. Doc. 133-3 at 13.

hide behind the cloak of the previous mayor or the revolving door of the previous clerks and argue she was not in charge; therefore not responsible for significant financial problems the Village [h]as incurred since 2014.

. . .

     As I started to work with Larry (audio feed lost) the financial system in place, I found that Diane Klaus had all of the control and responsibility for finances. Getting all of the revenue stream and financial controls in to the hands of the finance director took quite an effort.

     Specifically, Diane Klaus and not the revolving door of the clerk/treasurer or previous mayor had sole control and authority over the following: Budget work and updates with BARs, if needed, the DFA quarterly reporting, quarterly federal tax, quarterly wage and contribution reports, New Mexico's workmens comp reporting, all HR duties as payables associated with insurance companies, payroll and employee files, payroll year-end W-2, W-3 and 1099 work, CRS reporting for gross receipts, New Mexico withholding reporting, New Mexico retiree health reporting, and previously mentioned the 2019 audit was not submitted or completed, most vendors for supplies ordered within the office (audio feed lost) exclusively.  These were then, oftentimes, forwarded to the finance office. Purchase order log to create inventory, and water conservation fee.

     It took quite an effort on the part of a few of us to break all this down and get control into the hands of the person hired to manage our finances.  Given the total control and authority Diane had over each of the above-mentioned financial components, I submit to you that Diane was responsible for the Village of Tijeras' financial collapse, as I just described.

Doc. 133-3 at 9.

In the Village's Findings of Fact and Conclusions of Law, the Village found that

(1) Plaintiff, along with the former mayor, "continued the practice of hiding information from the

Council by neglecting their duty to provide the Council with information regarding unbudgeted

expenditures, namely the January 5, 2018, unlawful PERA reimbursement expenditure of

$64,523.65"; (2) Plaintiff co-signed the checks as acting Village Clerk without advising the

Village Council and without its approval; (3) Plaintiff was told in a Village Council meeting to

cease the PERA deductions, which she did not do and continued to issue improper checks;

(4) Plaintiff cashed the PERA reimbursement check made payable to herself and did not repay

the money; (5) Plaintiff violated the Procurement Code repeatedly including payments to herself at the very least creating an appearance of impropriety by paying herself for damages incurred to her personal vehicle as well as questionable use of the Village purchase card; and (6) Plaintiff engaged in professional engineering services without competitive bidding.  Doc. 133-5 at 1-3. Plaintiff has presented evidence that some of these findings were without evidentiary support.

While the mishandling of the PERA reimbursements was a constant thread as grounds for Plaintiff's termination, other grounds at various moments in time included everything from Plaintiff's failure to take proper minutes at Village Council meetings to being solely responsible for the financial collapse of the Village of Tijeras beginning in 2014.  For our purposes here, however, the Village's failure to provide adequate and proper notice of the grounds for Plaintiff's termination is more evidence of a lack of procedural limitations throughout the proceedings.

Additionally, Plaintiff has developed a record demonstrating facts discovered in litigation, witness testimony and documentary evidence relevant to her breach of contract claim that were not previously presented and considered by the board.  *See Salguero*, 366 F.3d at 1174. For example, Plaintiff discovered certain findings from the June 2018 OSA Report that were refuted by a subsequent audit report which certain Village Councilors testified in this litigation they were aware of yet ignored in the termination proceedings.  Plaintiff also discovered that Defendants chose to ignore certain findings in the June 2018 OSA Report that it was Mayor Chavez who made the "executive decision" to issue the PERA reimbursement checks without taking the issue before the Council, which she confirmed in her deposition testimony obtained during this litigation.

As for the inquiry of whether Plaintiff had the incentive to litigate fully the issue before the Village Council, the procedural flaws themselves diminish a party's incentive to litigate at the administrative level.  *See Southworth v. Santa Fe Servs., Inc.*, 125 N.M. 489, 493, 963 P.2d 566, 570 (Ct. App. 1998) (explaining that the policies which favor administrative efficiency and judicial economy may give way to the need for "[f]undamental fairness" if there are procedural flaws in the administrative process which significantly diminish a party's incentive to litigate at the administrative level").  Moreover, there was and remains a dispute whether Plaintiff was subject to an implied employment contract at the time of her termination such that the Village Council even considered Plaintiff's contract claim.  *Cf. Salguero*, 366 F.3d at 1173 (citing *Zamora v. Village of Ruidoso Downs*, 120 N.M. 778, 907 P.2d 182, 184-85 (1995)) (rejecting challenge that grievance board could not hear breach of contract claim where it held a hearing and made findings pursuant to state statutory authority to consider plaintiff's employment contract claim).  Indeed, Defendants maintain that Plaintiff was a salaried, at-will employee who was terminable "with or without cause."  Thus, while Plaintiff's continued employment was at stake at the termination hearing, Plaintiff has raised disputed material facts whether the proceedings considered, much less provided for, any potential recovery related to Plaintiff's breach of contract claims.  *See Shovelin*, 850 P.2d at 1002.

### D.   Plaintiff Has Demonstrated Genuine Issues of Material Fact Regarding Whether The Village Council Was Biased

"A fair trial in a fair tribunal is the basic requirement of due process.  Fairness of course requires an absence of actual bias in the trial of cases." *Staton v. Mayes*, 552 F.2d 908, 913 (10th Cir. 1977).  The contours of administrative bias are well defined in New Mexico. As the New Mexico Supreme Court observed in *Reid v. New Mexico Board of Examiners in Optometry,* "[t]he Fourteenth Amendment guarantees every citizen the right to procedural due process in

state proceedings." 92 N.M. 414, 415, 589 P.2d 198, 199 (1979) (internal quotation marks and citation omitted).  Such proceedings must be administered by fair and impartial triers of fact who are "[a]t a minimum, ... disinterested and free from any form of bias or predisposition regarding the outcome of the case." *Id.* at 200.  Triers of fact must likewise be "impartial and unconcerned in the result" of the adjudication, and the rigidity of this requirement "applies more strictly to an administrative adjudication where many of the customary safeguards affiliated with court proceedings have, in the interest of expedition and a supposed administrative efficiency, been relaxed." *Id.*  In *Reid,* the plaintiff challenged a professional board's decision to revoke his license asserting bias.  *Id.* at 199.  A member of the board later admitted to saying, prior to the hearing, that the plaintiff "would be losing his license soon anyway[.]" *Id.*  (internal quotation marks omitted).  The court held that such a statement made prior to a hearing, especially where the declarant admitted making it, constituted bias and violated the plaintiff's due process right. *Id.* at 200.

Here, Plaintiff has presented evidence sufficient to show genuine issues of material facts related to the lack of impartiality and potential bias of the Village Council against her.  For example, Plaintiff has submitted evidence demonstrating efforts and formal actions by the Village Council to terminate Plaintiff beginning in September 2017 and continuing through 2018.  Plaintiff has submitted evidence of public statements made by certain councilors in 2017 and 2018 criticizing Plaintiff and her job performance and indicating they did not want her to remain employed by the Village.  *See Staton*, 552 F.2d at 913-15 (finding that firm public statements before hearing made by school board member for removal of superintendent and discussions by school board members revealed a tribunal not meeting demands of due process for a hearing with fairness and the appearance of fairness).  Plaintiff has submitted evidence that

the Village Council voted to terminate Plaintiff effective January 31, 2018, and then sued Mayor Chavez in an effort to force her to terminate Plaintiff.

Defendants argue that their involvement in personnel issues and prior litigation "over a political power struggle between Mayor Chavez and the Council" does not overcome the strong presumption against actual bias and that their previous actions do not reflect any personal or financial animus towards Plaintiff. The standard, however, is not a showing of actual bias. As explained in *Reid*,

> [t]he inquiry is not whether the Board members are actually biased or prejudiced, but whether, in the natural course of events, there is an indication of a possible temptation to an average man [or woman] sitting as a judge to try the case with bias for or against any issued presented to him [or her].

589 P.2d at 200.

Applying this "objective appearance of fairness" standard, *City of Albuquerque v. Chavez*, 123 N.M. 428, 434, 941 P.2d 509, 514 (Ct. App. 1997), the Court finds that Plaintiff has presented material facts showing there is a genuine issue whether the Village Council was not impartial and biased against her in the termination hearing.

## VI. <u>CONCLUSION</u>

For all of the foregoing reasons, the Court finds that Plaintiff has carried her burden of showing there are genuine issues of material fact whether she was afforded a full and fair opportunity to litigate whether she was terminated for just cause and whether Defendants were biased against her at the termination hearing. The Court, therefore, finds the issue of whether Plaintiff was fired for just cause is not barred by the doctrine of issue preclusion.

**IT IS THEREFORE ORDERED** that Defendants' *Second Motion for Partial Summary Judgment Against Implied Contract* (Doc. 133) is **DENIED**.

**IT IF FURTHER ORDERED** that Plaintiff's *Motion for Partial Summary Judgment on Whether Plaintiff Is Barred From Litigating the Issues of Just Cause and Lack of Progressive Discipline by the Doctrine of Issue Preclusion* (Doc. 131) is **GRANTED**.

**IT IS SO ORDERED.**

_____

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**