## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DIANE KLAUS,**

       **Plaintiff,**

      **vs.**                                     **Civ. No. 20-1105  JFR/KK**

**VILLAGE OF TIJERAS, JAKE
BRUTON, DON JOHNSON, FELIX
GARCIA and MAXINE WILSON,
in their individual and official capacities,**

       **Defendants.**

### MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on Individual Defendants' *Motion for Partial Summary Judgment On All Federal Claims* ("Motion"), filed November 3, 2021.  Doc. 125.   On December 6, 2021, Plaintiff filed a Response.  Doc. 151.  On January 14, 2022, Defendants filed a Reply.  Doc. 159.  The Court, having considered counsel's arguments, the record, and the relevant law, **DEFERS** ruling in part[2] and FINDS that Defendants' Motion is not well taken in part and **DENIED IN PART**.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  Docs. 5, 9, 11.

[2] Plaintiff argues that if the Court were to find that the Village Council's resolution converted Plaintiff's position from an hourly to a salaried at-will position, Defendants violated the Contracts Clause of the U.S. Constitution and, therefore, the resolution is void.  Doc. 172 at 2-3, ¶ 2.  *See* Complaint, Count V, which states in pertinent part

> [i]f this Court finds that the Defendants' passage of this resolution effectively changed Plaintiff's employment status from a regular full time hourly employee who could only be fired for cause to that of a salaried employee who could be fired at will, the Defendants' enactment of this resolution substantially impaired, and in fact completely destroyed, the Plaintiff's contractual rights to and reasonable expectation of continued employment, and her reasonable expectation that she could be terminated only for cause and only if the Village followed certain procedures in accordance with the provisions of the Defendant's Personnel Ordinance.

Doc. 1-1 at 17, ¶ 108.  In its Memorandum Opinion and Order entered on May 24, 2022, Doc. 192, the Court granted Plaintiff's *Motion for Partial Summary Judgment On Existence of Implied Employment Contract* (Doc. 126), finding that it was undisputed that an implied contract existed from the time Plaintiff completed her probationary period until she was converted to a salaried employee, and that genuine issues of material fact exist as to whether at the time

# I. <u>FACTUAL BACKGROUND</u>

The Village of Tijeras ("Village") hired Plaintiff as a Deputy Clerk in October of 2011. Doc. 1-1 at 2, ¶ 10. Plaintiff successfully completed her probationary period in May of 2012. *Id.* Plaintiff was classified as a regular, full time hourly employee. *Id.* at ¶ 11. From the date Plaintiff was hired until January 3, 2020, Gloria Chavez was the Mayor of the Village ("Mayor Chavez") and was Plaintiff's direct supervisor. *Id.* at ¶ 12. After January 3, 2020, Defendant Jake Bruton, a former Village Council member, became the Mayor of the Village. *Id.* at ¶ 13.

Plaintiff alleges that beginning in 2017, Defendants Bruton, Johnson, Garcia and Wilson were vocal critics and opponents of Mayor Chavez and Plaintiff and initiated a concerted effort to terminate Plaintiff's employment in retaliation for, *inter alia*, her association and affiliation with Mayor Chavez, and for Plaintiff's attempts to enforce Village ordinances and her reporting to third parties in good faith what she believed were violations of state law by Village Councilors, malfeasance by Council members, and gross mismanagement, waste of funds and abuse of authority by Village Councilors. *Id.* at 4, ¶¶ 24-25. Plaintiff alleges that in April of 2019, Defendant Bruton proposed to change Plaintiff's Deputy Clerk position to a salaried position with a significant pay raise, which the Village Council approved on June 24, 2019. *Id.* at 10, ¶¶ 68, 70. Plaintiff alleges that in so doing, Defendants claim her change in status resulted in her being converted from a regular, full time, non-probationary employee, who was entitled to the rights and protections afforded by the Village's Personnel Ordinance and who could only be

---

Plaintiff was converted to a salaried employee the Village entered into an implied contract to terminate Plaintiff only for cause and after following certain procedures. Doc. 192 at 22-29. The Court, therefore, is deferring ruling at this time on Plaintiff's Contracts Clause Violation, including whether the Individual Defendants are entitled to qualified immunity as to that cause of action.

terminated for cause, into an at-will employee who could be fired at any time, with or without cause.  *Id.* at 10-11, ¶ 71.

Based on the foregoing, Plaintiff's Complaint alleges, *inter alia*, Defendants violated her Contract Clause rights and violated her First Amendment right of political association.  *Id.* at 16-18, ¶¶ 105-119.

## II.  <u>LEGAL STANDARDS</u>

### A.     <u>Summary Judgment</u>

A motion for summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); Fed. R. Civ. P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact."  *Catrett*, 106 S. Ct. at 2552 (internal quotation marks omitted); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).  Once the movant meets this burden, the non-moving party is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986); Fed. R. Civ. P. 56(c).  "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (internal citations omitted); *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016).  Only material

factual disputes preclude the entry of summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

The trial judge is not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson,* 106 S. Ct. at 2512. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 2510. To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee, Okla*., 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). "'Instead, the movant only bears the initial burden of 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id*. (quoting *Catrett*). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Catrett*, 106 S. Ct. at 2552 (quoting Fed. R. Civ. P. 56(e)). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim. *See Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp*., 106 S. Ct. 1348, 1356 (1986) (citation omitted). Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all

reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp.

1277, 1281 (D. Kan. 1997).  If there is no genuine issue of material fact in dispute, then a court

must next determine whether the movant is entitled to judgment in its favor as a matter of law.

*See, e.g., Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

      **B.**    **Qualified Immunity**

      The defense of qualified immunity "protects governmental officials from liability for

civil damages insofar as their conduct does not violate 'clearly established statutory or

constitutional rights of which a reasonable person would have known.' " *Weise v. Casper*, 593

F.3d 1163, 1166 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

When a defendant asserts summary judgment based on qualified immunity, the plaintiff must

demonstrate "(1) that the official violated a statutory or constitutional right[ ] *and* (2) that the

right was "clearly established" at the time of the challenged conduct." *Quinn v. Young*, 780 F.3d

998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011)).  "[T]he

record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise,

the defendants are entitled to qualified immunity." *Felders ex rel. Smedley v. Malcom*, 755 F.3d

870, 877-78 (10th Cir. 2014). The Court may address the two prongs of the test in any order.

*Pearson*, 555 U.S. at 236.

      Determining whether the allegedly violated right was "clearly established" depends on

whether "the contours of the right [were] sufficiently clear that a reasonable official would

understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640

(1987).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme

Court or Tenth Circuit decision on point, or the clearly established weight of authority from other

courts must have found the law to be as the plaintiff maintains." *Seamons v. Snow,* 84 F.3d

1226, 1238 (10th Cir. 1996).  While the plaintiff need not locate "a case directly on point," nevertheless "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.

### III. <u>MATERIAL FACTS</u>

The record, viewed in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, shows the following.

Plaintiff was hired as a Deputy Clerk in October of 2011.  Plaintiff was always employed as Deputy Clerk with one brief exception when she was employed for one month as the Village bookkeeper.  Doc. 151 at 2, ¶ 1.  From time to time, pursuant to Section 1(Q) of the Village Personnel Ordinance, the Mayor designated Plaintiff to assume duties of the Village Clerk when the Village did not have a Village Clerk in its employ.  Doc. 151 at 2, ¶ 1; Doc. 151 at 4-5, ¶¶ 1, 2.  The Village did not have a clerk between August 25, 2012 to March 1, 2015, March 20, 2016 to April 17, 2018, and November 19, 2018 to July 28, 2019.  Doc. 151 at 5, ¶ 3.  Mayor Chavez designated Plaintiff during those periods to assume the duties of Village Clerk.[3]  Doc. 151 at 5, ¶ 3.

The official job description for Deputy Clerk details forty-nine "Major Tasks and Responsibilities" which are clerical and/or ministerial in nature.[4]  Doc. 151 at 5, ¶ 4.  It includes

---

[3] Defendants argue that Plaintiff does not validly dispute that she served as either Deputy Clerk or as Acting Clerk since her hire, and that Plaintiff's submission of an affidavit that she "was never employed as Village Clerk" does not create a fact issue and ignores her own testimony that her job duties did not change whether she served as Deputy or Acting Clerk.  Doc. 159 at 1, ¶ 1.

[4] Defendants argue that Plaintiff mischaracterizes the job description for Deputy Clerk as purely "ministerial" and ignores several of its broad duties that reflect a high level of education, training and expertise.  Doc. 159 at 3-4. Defendants assert that the Deputy Clerk required (1) an understanding of State election laws and required certification through a "Clerk Institute"; (2) knowledge of State and Federal requirements regarding legal postings; (3) expertise on State and Village procurement requirements; (4) assisting with early election; and (5) expertise to insure proper "documentation and notifications pertaining to annexations, variances, abutting property owner, and permits required."  *Id.*

such things as preparing minutes of meetings, filing and updating files, posting legal notices, preparing monthly schedules, preparing licenses and permits for the Mayor's signature, submitting and processing notary public applications for staff, retrieving documents requested by auditors, creating and issuing purchase orders, compiling quotes, verifying the accuracy of invoices, processing personnel documents, preparing correspondence to candidates for hire, placing newspaper ads, creating water user files, completing per diem requests, and ordering uniforms for Village employees.  Doc. 151 at 5, ¶ 4.  It states therein that the Deputy Clerk "[a]ssists with the administration of the Village of Tijeras Personnel Policy – Communicates Governing Body actions policies and wishes by memo or personally to other departments and employees," and "[s]chedules personnel safety training as required by the NMSIF."[5] [6]  Doc. 151 at 3, ¶ 3; Doc. 151-2 at 3.  The only non-specific "Major Task and Responsibility" set out in the Deputy Clerk's job description is that he or she "performs such other duties consistent with the office of the Mayor, Clerk/Treasurer, and/or the Governing Body."[7]  Doc. 125 at 3, ¶ 2; Doc. 151 at 5, ¶ 4.   Plaintiff testified that in addition to the specifically described tasks, she also read water meters, cleaned toilets, and cleaned the Council room and Village Hall.  Doc. 151 at 6, ¶ 5.  The Deputy Clerk is the second highest paid position in Village government.  Doc. 125 at 3, ¶ 4.

---

[5] The Deputy Clerk job description also provides that the Deputy Clerk "[a]dministers H/R documents; processes all employment paperwork and schedules interviews as needed.  Orders all investigative reports as required for a new hire, complete I-9 and New Hire Reports.  Provides orientation to new employees.  Prepares personnel folders and places all documents concerning each employee in said folder in a timely manner (*i.e.,* insurance docs. W-4, leave requests, certificates of training, key and door code paperwork, wage agreements, probation and paperwork and exit letters; notification of any increase in insurance premiums and salary increases).  Tracks and maintains records of attendance.  Keeps confidential personnel files up to date."  Doc. 151-2 at 4.

[6] Defendants stated that the Deputy Clerk serves as the Human Resources/Personnel director, and thus keeps and has access to all confidential employee personnel files.  Doc. 125 at 3, ¶ 3.  Defendants cite Exhibit B1 which is a copy of Section 19 from the Village Personnel Ordinance and does not provide any Deputy Clerk job description information.  *See* Doc. 125-3 at 1.

[7] Defendants argue that the "sworn admissions by Plaintiff as to other job duties assigned to the Deputy Clerk are relevant to the political sensitivity of the position."  Doc. 159 at 2, ¶ 2.

Mayor Chavez testified that Plaintiff's duties as Deputy Clerk or Acting Clerk included: (a) managing village staff; (b) overseeing the day-to-day operations of the Village; (c) making sure Village ordinances were enforced; (d) overseeing the billing for the Village's water utility; and (e) interacting with the public on behalf of the Village.[8]  Doc. 125 at 3, ¶ 1.

To that end, Plaintiff maintained personnel files for between 9 and 10 Village employees.[9]  Doc. 151 at 6, ¶ 7.  As Deputy Clerk, Plaintiff supervised five (5) employees. Doc. 151 at 6, ¶ 7.  When assuming the duties of Acting Clerk, Plaintiff supervised an additional five (5) employees.  Doc. 151 at 6, ¶ 7.  Plaintiff managed Village staff by ensuring there was coverage for absent employees, identifying concerns about employee performance, and recommending disciplinary actions to the Mayor.  Doc. 151 at 7, ¶ 10.  Plaintiff did not have the same level of power and authority as the Mayor, and did not control or have direct authority over Village staff.  Doc. 151 at 8, ¶ 13.  Plaintiff's authority to discipline employees was limited to her presenting documentation about an employee's performance to the Mayor.  Doc. 151 at 6, ¶ 7.  Plaintiff had no authority to decide whether an employee would be disciplined, and did not have authority to make unilateral decisions about personnel matters.  Doc. 151 at 6, ¶ 7.  The Mayor had that authority and responsibility.  Doc. 151 at 6, ¶ 7; Doc. 151 at 7, ¶ 10.  Plaintiff, as well as other employees, would bring issues to the Mayor for her decision.  Doc. 151 at 8, ¶ 14.

---

[8] Plaintiff disputes this summary as incomplete and hence misleading.  Doc. 151 at 3 ¶ 1.

[9] Defendants argue that Plaintiff does not dispute that the Deputy Clerk has access to all confidential employee personnel files.  Doc. 159 at 3, ¶ 3.  Defendants argue that whether the Deputy Clerk held an official title of Personnel Director is not material, based on the case law cited in their Motion, for purposes of determining the position's political sensitivity.  *Id.*  Defendants argue that the job description requires the Deputy Clerk to "administer H/R documents" and confers on the Deputy Clerk all responsibilities associated with an H/R Director.  *Id.*  Defendants assert that "as a matter of common knowledge, the fact that a mayor, as "management," ultimately makes the hiring and firing decisions is consistent with every H/R department, both public and private."  *Id.*

Plaintiff's duties and responsibilities relating to payroll were limited to making sure it was completed, gathering timecards from employees, calculating the number of hours each employee had worked in a given pay period, entering that information on a spreadsheet and giving the spreadsheet to the Finance Director.  Doc. 151 at 7, ¶ 9.  Plaintiff had no authority or responsibility to determine the amount of payroll tax deductions or program the payroll system, and did not make changes to that system apart from changes reflecting pay raises given to employees, and sometimes preparing reports when the Finance Directors was unable to do so. Doc. 151 at 7, ¶ 9.

Plaintiff's duties relating to overseeing the day-to-day operations of the Village were limited to making sure all complaints were addressed by staff, water meters were installed, providing copies of documents upon request, and ensuring the Village's engineering consultant got the information it needed.  Doc. 151 at 7, ¶ 11.  Handling the day-to-day functions of the Village's office is different than making policy decisions on behalf of the Village.  Doc. 151 at 7-8, ¶ 11.  Plaintiff did not have the authority to make decisions about what the Village's policies were or should be.  Doc. 151 at 8, ¶ 15.  Plaintiff was not the institutional boss at the Village, nor was she the decision maker.  Doc. 151 at 8, ¶ 15.  The Mayor and Village Council, and not Plaintiff, made and implemented Village policies.  Doc. 151 at 8, ¶ 11.

Plaintiff's duties with respect to budgets were limited to making up the template for budgets containing the budgeted amounts from the previous fiscal year and the year-to-date expenditures in each budget category.  Doc. 151 at 6, ¶ 6.  Plaintiff did not have any other input into the Village's budget, and except for one grant, Plaintiff did not decide or recommend the numbers or amounts of money that would be placed into each budget category, nor did she draft

proposed budgets.  Doc. 151 at 6, ¶ 6.  The Mayor and Village Council controlled the budget.
Doc. 151 at 6, ¶ 6.

Plaintiff's authority and responsibility for making sure Village ordinances were enforced
were limited to reading the ordinances, and when a violation was brought to her attention,
bringing the matter to the Mayor's attention who would make the decision about what action
would be taken.  Doc. 151 at 8, ¶ 12.

Plaintiff, as well as several other Village employees, were at various times responsible
for the water utility billing system.  Doc. 151 at 10, ¶ 19.  Plaintiff's duties and responsibilities
with respect to the water billing system were limited to overseeing the employees who entered
information into the Village's computerized billing system.  Doc. 151 at 10, ¶ 9.

There was a counter inside the entrance to Village of Tijeras Village Hall.  Doc. 151 at 9,
¶ 17.  Members of the public who entered the Village Hall would go to the counter and ask
questions and conduct business.  Doc. 151 at 9, ¶ 17.  Plaintiff staffed that counter very
infrequently.  Doc. 151 at 9, ¶ 17.  Instead, it was staffed by other employees who entertained
and answered questions from, and provided assistance to, members of the public.  Doc. 151 at 9,
¶ 17.  Only when staff could not answer the question would the Plaintiff get involved in
responding to questions and requests for assistance.  Doc. 151 at 9, ¶ 17.  Plaintiff would usually
tell staff who could not answer a question what the answer was and the staff would then provide
that answer to members of the public.  Doc. 151 at 9, ¶ 17.  Only when the question or request
was difficult would Plaintiff speak to members of the public.  Doc. 151 at 9, ¶ 17.

Plaintiff was not the spokesperson for Village government.[10]  Doc. 151 at 9, ¶ 16.
Plaintiff was authorized to speak on behalf of the Village on only two occasions during her term

---

[10] Defendants dispute this and argue that Mayor Chavez's affidavit attached to their Motion as Exhibit A included the
statement that Plaintiff's duties as Deputy Clerk or Acting Clerk included "interacting with the public on behalf of the

of employment.  Doc. 151 at 9, ¶ 16.  She spoke on behalf of the Village at two grant

administrator meetings.  Doc. 151 at 9, ¶ 16.  At the first meeting she spoke about what the

Village wanted to accomplish with the grant funds it had been awarded.  Doc. 151 at 9, ¶ 16.  At

the second meeting, Plaintiff gave a presentation about how the Village had applied for a grant.

Doc. 151 at 9, ¶ 16.

While Plaintiff could voice her input on what should be placed on Council meeting

agendas, the decision of what would and would not be placed on such agendas, and the authority

to make such decisions, was the Mayor's and Plaintiff did not have the authority to overrule the

Mayor's decision.  Doc. 151 at 7, ¶ 8.

At the Village Council meeting held on July 17, 2019, as part of the approval of its

annual budget, the Village converted two positions from hourly to salaried – Deputy Clerk and

Financial Director, both with commensurate increases in pay.[11]  Doc. 125 at 2, ¶ 2.  The Village

Personnel Ordinance, at Section 19, provides that salaried employees are at-will employees who

can be fired with or without cause.[12][13]  Doc. 125 at 3, ¶ 3.  When Defendants changed Plaintiff's

status to a salaried employee, Plaintiff did not receive a promotion.  Doc. 151 at 8, ¶ 13.

Plaintiff's job duties as Deputy Clerk remained the same and she was not given any additional

---

Village."  Doc. 159 at 2-3, ¶ 1.  Defendants argue that this sworn testimony supports Defendants' assertion that in her position as Deputy Clerk she served as a "spokesperson for the Village government."  *Id.*  Defendants argue that Plaintiff improperly attempts to characterize this assertion as unsupported by admissible evidence.  *Id.*  Defendants argue that it conflicts with Plaintiff's affirmative statement that "when the question or request was difficult . . . Plaintiff would speak to members of the public."  *Id.*

[11]  Plaintiff disputes that she was converted to an *at-will* employee.  Doc. 151 at 2, ¶ 2.

[12]  *See* fn. 2, *supra.*

[13]  Defendants argue that "Plaintiff cannot validly dispute that salaried employees are terminable at will by "torturing the meaning of The Village Personnel Ordinance, at Section 19," and that to argue some salaried employees are somehow not terminable at will, as Plaintiff attempts, conflicts with the plain language of the ordinance."  Doc. 159 at 2.

duties, authorities or responsibilities.  Doc. 151 at 8, ¶ 13.  Six days after Defendants changed

Plaintiff's status, the Village of Tijeras hired Raul Candelaria as Village Clerk and Plaintiff did

not perform the duties of Village Clerk after that date.  Doc. 151 at 8, ¶ 13.

Plaintiff's role in the issuance of the PERA reimbursements checks and in seeking

Council approval was limited to (1) finding Resolution 191 while scanning documents;

(2) asking the Village's contract accountant to read it; (3) taking it to Mayor Chavez to read it;

(4) speaking with the Village attorney and a PERA representative at the direction of Mayor

Chavez; and (5) reporting to Mayor Chavez the substance of those conversations.  Doc. 151 at 9-

10, ¶ 18.  Mayor Chavez made the unilateral decision to issue the PERA reimbursement checks

and made the decision not to take that matter to the Village Council for its approval.  Doc. 151 at

10, ¶ 18.  The Office of the State Auditor's report expressly stated that Mayor Chavez made the

executive decision to issue those checks and not seek Council approval.  *Id.*

## IV.  ARGUMENTS

### A.  Defendants' Motion

The Individual Defendants argue that individual municipal actors have qualified

immunity from suits brought pursuant to 42 U.S.C. § 1983 unless a plaintiff demonstrates that

the official violated a statutory or constitutional right and that the right was clearly established at

the time of the challenged conduct.  Doc. 125 at 3.  In this case, the Individual Defendants argue

that no Tenth Circuit or U.S. Supreme Court authority supports the notion that a public body's

termination of a deputy clerk in circumstances similar to that of Plaintiff violated her First

Amendment right to political association.  Doc. 125 at 7-11.  Additionally, the Individual

Defendants argue that Plaintiff was in a politically sensitive position such that (1) Plaintiff could

be terminated for her political association without violating the First Amendment, and (2) the

case law for determining which positions are politically sensitive and which are not is not clearly

established such that the Individual Defendants are entitled to qualified immunity. *Id.*

Defendants rely on and cite *Aiken v. Rio Arriba Bd. of Cty. Comm'rs*, 134 F.Supp.2d

1216, 1222-23 (D.N.M. 2000), for factors to be considered for finding an employee is a

policymaking employee. *Id.* In *Aiken,* plaintiff, a county employee, claimed he was fired in

violation of the First Amendment due in part to his political affiliation and associations. 134

F.Supp.2d at 1219. Defendants argued they had an absolute right to terminate plaintiff's

employment on the basis of his political affiliation. *Id.* In determining that plaintiff was in a

policymaking position, District Judge Bruce Black explained that

> [f]irst, the County has created a presumption that the position of Special Projects
> Director is a policymaking position, by making the position exempt rather than
> classified . . . Second, Plaintiff occupied one of the highest positions in the County
> government hierarchy, as evidenced by the fact he was the eighth-highest paid
> employee. Third, although Plaintiff's exact role as a spokesperson for the County
> is disputed, it is not disputed that he appeared at meetings and spoke as a
> representative of the County. The fact that he may have been merely parroting the
> County Commissioner's positions does not matter; in fact, that would be expected
> of a policymaking employee, who is required to demonstrate loyalty to the
> governing body's policies and politics. Fourth, Plaintiff's job description is vague
> and open ended. Finally, it is also undisputed that Plaintiff reported to the County
> Commissioners and was expected to keep them directly informed of the various
> projects he was supposed to be working on. All of the foregoing have been found
> significant factors in favor of finding that an employee is a policymaking employee.

*Id.* at 1222-23 (citations omitted).

Defendants argue that the many factors cited in *Aiken* reflect that determining whether a

position is policymaking is *sui generis*. Doc. 125 at 7-11. As a result, Defendants contend that

public officials do not have a clear standard by which to determine if a given position meets the

criteria of sufficient political sensitivity or confidentiality. *Id.* Defendants contend that at a

minimum, the foregoing law on this issue is not well-settled as to which positions are political

and which are not. Defendants also cite a New Mexico Supreme Court case that reached a

similar conclusion - *Garcia-Montoya v. State Treasurer's Off.*, 2001-NMSC-003, 130 N.M. 25, 16 P.3d 1084.  In that case, the Court concluded there were genuine issues of fact precluding summary judgment on the merits of the First Amendment claim against the public entity, but nevertheless held that the individual defendants enjoyed qualified immunity for lack of clearly established case law regarding the political sensitivity of the position.  *Id.* at ¶¶ 24, 28.

The Individual Defendants assert that applying the factors relied upon by both Tenth Circuit and persuasive New Mexico case law to the material facts before the Court establish that Plaintiff's position as Deputy Clerk was politically sensitive.   Doc. 125 at 10-11.  They assert that Plaintiff's duties as Deputy Clerk  included (a) managing village staff; (b) overseeing the day-to-day operations of the Village; (c) making sure Village ordinances were enforced; (d) overseeing the billing for the Village's water utility; and (e) interacting with the public on behalf of the Village.  *Id.*  These duties, Defendants contend, reflect that Plaintiff served as a "spokesperson" for the Village government.  *Id.*  Defendants assert that the official job description of the Deputy Clerk details four pages of specific duties and further broadly states that he or she "performs such other duties consistent with the office of the Mayor, Clerk/Treasurer, and/or the Governing Body."  *Id.*  Defendants contend this renders Plaintiff's job description as "vague and open-ended."  *Id.*  Defendants contend that the Deputy Clerk's involvement with most facets of Village government, as detailed in the job description, demonstrates that the Deputy Clerk influences and helps shape official policy.  *Id.*  Defendants contend that the Deputy Clerk serves as the Human Resources/Personnel director, and thus keeps and has access to all confidential employee personnel files, a significant factor in favor of political sensitivity.  *Id.*  Defendants contend that the Deputy Clerk is the second highest paid

position in Village government, and receives a salary, not hourly pay. *Id.* Finally, as per the Personnel Ordinance, the position is at-will, reflecting its politically sensitive nature. *Id.*

The Individual Defendants vehemently deny that they terminated Plaintiff because of her political association with Mayor Chavez. Doc. 125 at 10-11. Rather, they argue they terminated Plaintiff for the reasons stated in the Village Council's Findings and Conclusions issued after an evidentiary hearing and deliberation. *Id.* However, assuming for purposes of analyzing qualified immunity in this Motion that the Individual Defendants terminated Plaintiff for her political association with Mayor Chavez, Defendants argue that the Deputy Clerk position reflects such political sensitivity and responsibility that Plaintiff's termination would be permissible on political grounds alone. *Id.* At a minimum, for purposes of qualified immunity analysis, the Individual Defendants contend that the law as applied to these facts does not establish that Plaintiff had any clearly established right as she asserts. *Id.*

Based on the foregoing material facts, Defendants ask the Court to dismiss this claim as against the Individual Defendants on grounds of qualified immunity. Defendants assert that as a matter of law, Plaintiff cannot establish that her alleged right was clearly established by Tenth Circuit or U.S. Supreme Court case law. Rather, the best Plaintiff can argue is that the relevant law "is blurred around the edges" for Plaintiff's complex position as Deputy Clerk. Doc. 125 at 11.

**B.     Plaintiff's Response**

Plaintiff argues that where the facts of prior cases are materially similar to those at issue, or where the Individual Defendants' conduct amounts to an obvious violation of an individual's constitutional rights, qualified immunity will not attach. Doc. 151 at 12 (citing *Taylor v. Riojas*, 1412 S.Ct. 52, 53-54 (2020). Plaintiff argues that qualified immunity does not attach even when

there are factual distinctions between precedents relied on and the facts of the case before the Court "so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (quoting *U.S. v. Lanier*, 520 U.S. 259, 269 (1997)). Plaintiff argues that prior cases gave the Individual Defendants in this case reasonable warning that their conduct violated Plaintiff's constitutional rights under the First Amendment. Doc. 151 at 12. Plaintiff cites *Walton v. New Mexico State Land Office*, 49 F.Supp.3d 920 (D.N.M. 2014), in which District Judge James Browning collected and discussed cases that Plaintiff asserts demonstrate that at the time the Individual Defendants terminated Plaintiff, the law was clearly established that a public employer may not terminate a public employee because of that employee's affiliation with a past administration. Doc. 151 at 16-17.

Plaintiff contends that her position as Deputy Clerk was not a politically sensitive position and did not provide the Individual Defendants a basis to terminate her for political association. Doc. 151 at 18-24. Plaintiff further contends that, at a minimum, disputed issues of material fact exist with respect to whether the Deputy Clerk position was in fact a politically sensitive position thereby precluding a grant of summary judgment. In support, Plaintiff addresses the *Aiken* factors in turn as follows.

Plaintiff argues that throughout nearly the entirety of her employment with the Village, she was a classified employee who could only be dismissed for cause. *Id.* Plaintiff argues that the Individual Defendants converted her position to that of a salaried, at-will employee eight months prior to her termination as part of their prolonged effort to terminate her employment. *Id.* Plaintiff argues that when her position was converted, Plaintiff's job duties, responsibilities and title remained the same and she had no increase in her authority. *Id.* Plaintiff, therefore,

argues that Defendants' reliance on her exempt status as a presumption of a policymaking position should be rejected.  *Id.*

Next, Plaintiff argues that the Individual Defendants overstate Plaintiff's duties related to management, budget, enforcement of ordinances, and their assertion that the job description of Deputy Clerk was vague and open ended.  *Id.*  As for management, Plaintiff argues that the Individual Defendants' characterization of her as "Human Resources/Personnel Director" is not supported by the evidence.  *Id.*  Plaintiff's responsibilities for managing Village staff was limited to ensuring there was coverage for absent employees, identifying concerns about employee performance, and recommending disciplinary action to the Mayor.  *Id.*  Plaintiff argues she did not have the power or authority to take disciplinary action against any of the employees she supervised, or decide whom to hire or fire, and that only the Mayor had that authority.  *Id.*  Plaintiff argues her duties with respect to personnel were limited to maintaining personnel files, processing personnel documents, preparing correspondence to candidates for hire, ordering uniforms for Village employees, assisting with the administration of the personnel policies, and scheduling safety training.  *Id.*  Plaintiff argues her access to "confidential" information was limited to maintaining personnel files and supervising staff.  *Id.*  These duties, Plaintiff asserts, were administrative or clerical in nature and did not involve policymaking.  *Id.*

Plaintiff argues that her oversight of the Village's day-to-day operations entailed making sure all complaints were addressed, water meters were installed, providing copies of documents upon request, and ensuring the Village's engineering consultant got the information they needed. *Id.*  Plaintiff argues that her responsibility for "overseeing the billing for the Village's water utility" was sporadic and limited to overseeing the employees who entered information into the Village's computerized billing system.  *Id.*  Plaintiff argues her responsibilities over the Village's

budget was entirely clerical in nature and she had no meaningful involvement in budgetary matters. *Id.* Plaintiff similarly argues that her responsibilities for the Village's payroll was limited to clerical and administrative tasks. *Id.*

Plaintiff argues that her enforcement of the Village ordinances was limited to reading the ordinances and, when potential violations were brought to her attention, bringing that information to the Mayor who made the decision about what action would be taken.

Plaintiff argues that she did not have the authority to determine what would and would not be placed on Council meeting agendas and that only the Mayor had that authority. *Id.* Plaintiff argues that the Individual Defendants' assertion that she acted as a spokesperson for the Village is not supported by the facts set out in their Motion. *Id.*

Lastly, Plaintiff argues that Plaintiff's job description contains forty-nine separately enumerated, specifically described job duties, forty-eight of which are clerical, ministerial or administrative in nature. *Id.* Plaintiff argues that the only "open ended" provision in Plaintiff's job description is the final statement that the Deputy Clerk is responsible for performing "other duties consistent with the office of Mayor, Clerk/Treasurer and/or Governing." *Id.* Plaintiff asserts that the duties assigned to her under this catch-all description were menial in nature, *i.e.,* she read water meters, cleaned toilets, and cleaned the Council Room and Village Hall. *Id.*

Plaintiff contends these facts show the position of Deputy Clerk largely entailed the performance of clerical and administrative functions and was not a policymaking or confidential position. *Id.* Plaintiff further contends that these facts create at a minimum disputed issues of material fact whether Plaintiff's political affiliation was a requirement for the effective performance of her job as Deputy Clerk. *Id.*

C.     **Defendants' Reply**

Defendants argue that Plaintiff mischaracterizes the job description for Deputy Clerk as purely "ministerial" and ignores several of its broad duties that reflect a high level of education, training and expertise.  Doc. 159 at 3-4.  Defendants assert that the Deputy Clerk required (1) an understanding of State election laws and required certification through a "Clerk Institute"; (2) knowledge of State and Federal requirements regarding legal postings; (3) expertise on State and Village procurement requirements; (4) assisting with early election; (5) expertise to insure proper "documentation and notifications pertaining to annexations, variances, abutting property owner, and permits required"; (6) extensive personnel and supervisory responsibilities; (7) ability to perform open-ended job duties; and (8) speaking on behalf of the Village, at least on "difficult" public issues.  Doc. 159 at 3-4, 8.  Defendants further argue that the Deputy Clerk is the second highest paid position in the Village and was an exempt position.  Doc. 159 at 8.  Defendants concede that the job description includes many lesser, ministerial functions, but that Plaintiff's Response ignores these broader duties that require significant expertise.  Doc. 159 at 3-4.

Defendants argue that for purposes of political sensitivity job descriptions matter, and that if political sensitivity of Plaintiff's position is clear from the job description or the Village ordinance, Plaintiff's focus on her other duties is immaterial to the Motion.  Doc. 159 at 4. Defendants argue that Plaintiff's proposed material facts of her actual duties and variations of her job titles while employed by Mayor Chavez are also immaterial and an attempt to show a factual dispute as to the duties and responsibilities of the position by attesting to what she personally did as Deputy Clerk.  *Id.* at 4-5.  Defendants argue that Plaintiff's actual duties and responsibilities under the previous mayor, to the extent they differed from the written job description, do not

inform the Court as to why this administration considers the Deputy Clerk's position politically sensitive. *Id.* Defendants contend the actual job description provides an objective basis for what the position currently entails. *Id.*

Defendants assert that the case law collected and discussed by District Judge Browning in *Walton*, albeit well-informed for the general proposition that a public entity cannot terminate an employee for a political association, fails to address the extensive duties and role of the Deputy Clerk the Individual Defendants rely upon here and does not inform the Court on the *sui generis*, multifactorial nature of whether a position is politically sensitive that leads to qualified immunity. Doc. 159 at 7.

In sum, Defendants contend that the undisputed facts demonstrate that Plaintiff occupied a politically sensitive position, which undermine any claims for political association violations. Doc. 159 at 8-9. For this reason, Defendants ask this Court to dismiss the First Amendment claim against the Individual Defendants on grounds of qualified immunity.

## V. <u>ANALYSIS</u>

### A. <u>Political Patronage</u>

In *Elrod v. Burns*, 427 U.S. 347, 367 (1976), the Supreme Court held that the government has a valid interest in ensuring the loyalty of its employees. The least restrictive means of ensuring that loyalty is to limit patronage dismissals to policymakers. *Id.* The Supreme Court admitted that there is "[n]o clear line [which] can be drawn between policymaking and nonpolicymaking positions." *Id.* The Supreme Court, however, noted that the courts should examine the nature of the employee's responsibilities, not the number of responsibilities, in determining if a position is a policymaking one. *Id.* The Supreme Court indicated that a policymaker is more likely to have "responsibilities that are not well defined or are of a broad

scope . . . ." *Id.* at 368.  Moreover, the courts should consider "whether the employee acts as an adviser or formulates plans for the implementation of broad goals." *Id.*  Finally, the Supreme Court stated that the government has the burden of proof to show that an employee's right to political association should be overridden to obtain employee loyalty. *Id.*  Any doubts should be resolved in the employee's favor.  *Id.*

The Supreme Court in *Branti v. Finkel*, 445 U.S. 507, 518 (1980), refined *Elrod* by holding that a government employer can terminate an employee for his or her political affiliations if "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."  The Supreme Court effectively held that a policymaking or confidential working relationship between an employee and the government is relevant, but not dispositive, in determining whether political affiliation is an appropriate requirement for the effective performance of a job.  *See Dickeson v. Quarberg*, 844 F.2d 1435, 1440-41 (10th Cir. 1988) (discussing *Elrod* and *Branti* ).  The Tenth Circuit held in *Dickeson*, 844 F.2d at 1442, that the court must analyze the inherent powers of the position at issue as well as the actual duties performed by employees in that position to decide if a job requires political allegiance.

To defend against a First Amendment claim on this ground, a public employer has the burden of proving that political loyalty is an "appropriate requirement for the effective performance of the public office involved." *Poindexter v. Board of Cty. Comm'rs*, 548 F.3d 916, 919 (10th Cir. 2008) (citing *Barker v. City of Del City*, 215 F.3d 1134, 1138 (10th Cir. 2000)). The question is not whether any particular political superior actually takes political loyalty into account, but whether the nature of the position would appropriately permit him to do so.  *Id.*  The Tenth Circuit has held that this determination is a question of fact.  *Id.* (citing *Snyder v. City of*

*Moab*, 354 F.3d 1179 (10th Cir. 2003)).  Thus, if a factual dispute regarding the employee's job

duties exists, summary judgment is inappropriate.  *Poindexter*, 548 F.3d at 920.  If the job

description and duties performed are undisputed, then the district court may resolve the issue as a

matter of law.  *Id.*

The inquiry under *Elrod-Branti* is necessarily fact specific.  Even though the test of

appropriateness for effective performance identified in *Branti* is somewhat vague and difficult to

apply, the Tenth Circuit and this district have addressed a number of factors that are useful in

determining whether a particular position is subject to political patronage: the extent to which

duties are clearly defined and nondiscretionary as opposed to vague and broad; relative pay; the

need for technical expertise in carrying out the duties of the position; the extent of power to

control others; the authority to speak with the public, other entities, or elected officials on behalf

of policymakers; the relative influence on important programs; the preparation of budgets, and

the ability to hire and fire other employees.  *See Poindexter,* 548 F.3d at 920 (finding political

loyalty could be taken into account where county road foreman's duties included supervising

district employees, supervising inmates working within the district, addressing all safety issues

and running safety training, delegating and supervising project assignments, terminating

employees for cause, working as County Commissioner as necessary, spending County money to

purchase materials and supplies, and acting as ambassador to the community on behalf of the

Commissioner); *Snyder,* 354 F.3d at 1186 (finding city treasurer position was involved in

policymaking where she had significant authority to determine how the City deals with

municipal utility bills, including making adjustments to bills and referrals to other departments;

had authority to set City's monetary policy by determining cash requirements and how to invest

funds; had authority to set the City's employment policy, including whom to hire for treasurer's

office; and had significant discretion in making policy decisions); *Barker,* 215 F.3d at 1137-38

(explaining that the confidential character of a position can make political affiliation an

appropriate job requirement and that the confidential nature of city manager's administrative

assistant position required political allegiance); *Jantzen,* 188 F.3d at 1256 (discussing whether

employees "were such important communicators or were privy to confidential information to

such an extent that political loyalty would be an appropriate job requirement"); *Dickeson,* 844

F.2d at 1441 (explaining that any analysis must necessarily begin with the inherent powers of the

office at issue and finding that party affiliation was not an appropriate requirement for the

effective performance of a head jailer and administrative assistant ); *Aiken,* 134 F.Supp.2d at

1221-22 (identifying factors to consider); *Ortiz v. San Miguel County,* 955 F.Supp. 1338, 1344

(D.N.M. 1996) (finding persuasive an inquiry of whether the position held by the individual

authorizes, either directly or indirectly, meaningful input into government decision-making on

issues where there is room for principled disagreement on goals or their implementation);

*Salazar v. Rio Arriba County, State of NM*, 81 F.3d 173, 1996 WL 134913, at *2-3 (10th Cir.

1996) (unpublished) (finding that it can be inferred that classified positions are exempt from

political patronage dismissal).

 Plaintiff was in the position of and terminated as the Deputy Clerk for the Village of

Tijeras.  The job description for Deputy Clerk reads as follows:

  **JOB TITLE**:   Deputy Clerk

  **TYPE OF POSITION**:  Non-Exempt[14]

  **REPORTS TO**:   Mayor/Village Clerk

---

[14] The parties dispute whether converting Plaintiff's position to a salaried position in July 2019 rendered her "at-will" and exempt from the provisions of the Village's Personnel Ordinance.

**EDUCATION/EXPERIENCE**:

High School diploma or equivalent (GED).

One (1) to two (2) years' experience in city/business administration.

One (1) to two (2) years' experience of secretarial skills.

Combination of above job experience adding up to two years.

**OTHER REQUIREMENTS:**

Must type a minimum of 40 WPM with accuracy.

Must be familiar with State Election Law and Statutes pertaining to the Village Clerk's functions.

Must be willing to attend Clerk Institute and become certified within a reasonable period of time.  (Certification takes at least three years.)  Schedule must be coordinated between Clerk and Deputy Clerk so that the office is always covered and both aren't attending simultaneously.)

Must be skilled in verbal and written communications.

Must be computer literate.

Must have the ability and desire to deal with the public, as well as state and local government officials.

Must have the ability to be bonded.

Must be willing to become a Notary.

Must possess a valid New Mexico Driver's license.

Must have a good driving record.

Must have the ability to multi-task, have good organizational skills and prioritize work.

**MAJOR TASKS AND RESPONSIBILITIES**:

Must become familiar with the process of a Mayor/Council governing body meeting.  What is an agenda, rules of procedure (using "*Robert's Rules*" as the standard), when is an item an ACTION item, when to place the item under the discussion or information heading, administering an oath.  The language of local

government; such as, quorum, Mayor Pro Tem, tort claim.  Must attend all meetings of the Governing Body and Village Boards and Commissions, if Clerk unavailable.

Assists in preparation of all minutes, ordinances and resolutions approved by the Governing Body and the minutes and resolutions of all Village Boards and Commissions.  Or prepare same, if Clerk unavailable.

Files with the County Clerk any notices of liens created by Ordinance or under authority of law, if Clerk unavailable.

Records all proceedings, ordinances, and resolutions of the Governing Body and the Village's Boards of Commissions, if Clerk unavailable.

Prepares Official Records of Proceedings upon approval, submits to Mayor for signature and verifies placement in the ROP books (P & Z and Council).

Places legal postings and confirms same as required by State Statute and the Village of Tijeras Open Meetings Act Resolutions. (*note: every January, a new "Open Meetings Act" Resolution, (replacing the former year's resolution) is brought before the Council for approval and is placed in all Councilor's, Commissioner's, Fire Chief's, P & Z Chairman's and Mayor's Meeting books.)  (Previous year's resolution removed.).

Also prepares the "Monthly Meeting Schedule" and ensures its posting in six public places ten days prior to the first meeting of each month.

Upon request, furnishes copies of public records of the Municipality and charges a reasonable fee for the cost of furnishing copies.

Prepares approved licenses and permits for signature by Mayor and Clerk and then issues to requestor.  Administers notice of license and inspection renewals the middle to end of May, documents records of payment and inspection, and provides the Fire Chief with an inspection agenda.  Then keeps above doc[uments] with completed inspection and any other notices sent to licensee in each licensee file, as well as, an additional copy of the completed inspection in separate "INSPECTIONS 2011" (applicable year) file.

Notifies the Fire Chief of any additional inspections required throughout the year.

Assists with the administration of the Village of Tijeras Personnel Policy – Communicates Governing Body actions policies and wishes by memo or personally to other departments and employees.

Updates the NTTC file and issues NTTC's (non-taxable transaction certificate) as needed by accessing online.  (See favorites by accessing the internet).

Obtains & maintains a Notary Public and notarizes documents, as needed.

Prepares, submits and processes Notary Public applications for Village staff.

Schedules personnel safety training as required by the NMSIF. Gathers all data for preparation and submission of training log by deadline of May 31st. Gathers all information for preparation and submission of Safety Counseling audit due June 30th. Gathers all data for preparation and submission of NMSIF annual premium payment due July 31st.

Researches and retrieves specific documents requested by auditors contracted by the Village, usually in August or September, for a report to the New Mexico State Auditor.

Assists Clerk as "acting procurement person" for all Village locations, except the Visitor's Center. Creates and issues purchase orders, compiles necessary quotes, and ensures that minutes containing Council approval accompany the purchase order per Village's procurement resolution no. 254.

Weekly: Verifies accuracy and disbursement of invoice payments (Water, VOT, Senior Center, Visitor Center, Fire Dept. of EMS) and issues all PV's for the Village, Fire Department and Senior Center (purchase vouchers). Will contact vendors when necessary for explanation of charges or payment submission information if invoice reflects a past due amount.

Changes the format heading of VOT, P & Z, and FD letterhead and forms when there is a change in personnel. Ensures all forms are up to date with the new information. Orders VOT, P & Z and FD letterhead stationary, business cards, and return address envelopes.

Administers H/R documents; processes all employment paperwork and schedules interviews as needed. Orders all investigative reports as required for a new hire, completes I-9 and New Hire Reports. Provides orientation to new employees. Prepares personnel folders and places all documents concerning each employee in said folder in a timely manner (*i.e.,* insurance docs. W-4, leave requests, certificates of training, key and door code paperwork, wage agreements, probation and paperwork and exist letters; notification of any increase in insurance premiums and salary increases). Tracks and maintains records of attendance. Keeps confidential personnel files up to date.

Prepares letters of acknowledgement regarding interviews and applications received for job applicants. Keeps files of previous interviews, applications, and previous employee records.

Ensures that the Village is in compliance with all Federal, State and OSHA requirements for mandatory posting of all State labor laws and State and Federal notices.

Places newspaper ads for employment and legal advertisements in the time frame required by State Statute and prepares the monthly schedule of meetings (to be posted 10 days prior to the first meeting held in the following month).

Oversees the processing of an updated inventory list for the VOT, MVD, Senior Center and Fire Department.

Keeps vendor and organization files up to date for VOT, FD and EMS.

Keeps the log of key issuance and door code data to outside mail boxes and to staff up to date.

Arranges for required inspections of fire extinguisher, fire riser room and alarms.

Provides the NMSIF with updated information regarding any needed coverage of additional property.

Creates water user files consisting of meter installation fee payment, s/n of meter installed, and any other documentation required.

Keeps VOT resident information list consisting of address, mailing address, telephone number up to date.  Ensures that secretary has all information regarding resident or renter for purposes of mailings and emergency notifications.

Submits to the Mayor several catalogs from which to choose a designated Christmas card and greeting/salutation from the Village of Tijeras and then places the Christmas Card order.  Reviews mailing list for any obvious deletions and/or additions and that the Mayor is provided with the list for approval before any cards are mailed.  Coordinates the Christmas party held in early December for Village staff, FD, EMS, Council and Commissioners.  Oversees placement of Christmas decorations and XMAS Party table set up.  Organizes the disbursal of the food sign-up sheet for the party.  Purchase of supplies and clean-up.

Assists in coordinating the "Lighting of the Christmas Tree" and reception with refreshments and music at the Luis Garcia Park.

Researches and submits information regarding VOT monthly planners, compact diaries and pens for the annual VOT order and dispersal.

Updates water and sewer user files.  Keeps documentation of pending new water hook up agreements, declaration of water rights documents, etc.

Arranges for lodging accommodations for Fire Department and EMS staff as required.

Completes per diem request for Fire Department, EMS staff and other per diem requirements as needed.

Maintains file of Fleet vehicle gasoline cards issued for VOT, FD and EMS, and any updates in order to process fleet invoices for gasoline purchases.

Oversees the custodians and their cleaning/maintenance schedules.

Is responsible for completing the MVD deposit paperwork on a daily basis when bookkeeper is not available.

Is responsible daily, for verifying MVD closing cash and check amounts and assists in verifying and/or verifies deposit amounts when Bookkeeper is not available.

Responsible for creation of new and upkeep of: P & Z Resident and Business Zoning files. Enters information in the Zoning application log. Provides applicant with proper documents and explains requirements and date required for submission for an appearance before the Zoning Commission. Same as above for business registration.

Ensures that resident and/or business Zoning files include updated information regarding Council and Zoning related appearances and determinations.

Is responsible for keeping a schedule regarding rental of the Chambers, Visitor Center, Church and Park, completing documents and receiving payment and disbursing refunds. Submits information to Secretary for her coordination of the actual physical requirement for each rental (i.e., personnel availability, items needed, time in and out).

Assists in coordinating the Bernalillo County early election requirements: polling location located in the Village Council Chambers (i.e., coordinating lock changes, arranging for use of the Visitor's Center as the meeting location during the occupation by the BERNCO Early Election personnel.

Orders any uniforms and/or shirts with the Village Logo required by staff and/or Council/Commissioners and Mayor.

Assists with documentation and notifications pertaining to annexations, variances, abutting property owner, and permits required. Also ensures that required notifications are made by certified return receipt mail.

Retains Council, P & Z, Special Workshop, Budget, Closed and Emergency meeting prep files based on the record retention schedule published by the State

Records Center and Archives.  Destruction of public records shall only be done at the direction of the governing body of the municipality.  These records should be reviewed and considered for "Historical Value" and retained in a "historical documents" file upon finding they meet such criteria.  The Clerk shall then request permission to destroy those records that have served their purpose and are no longer necessary.

Performs research for historic documents and events taking place prior to current Clerk/Council/Mayor.

Performs such other duties consistent with the office of the Mayor, Clerk/Treasurer and/or the Governing Body.

**<u>PROBATIONARY PERIOD</u>**:

Six (6) months.

Doc. 151-2 at 1-6.  In addition to the Deputy's Clerk's written job description, Mayor Chavez testified that Plaintiff's duties as Acting Clerk and Deputy Clerk included (a) managing Village staff; (b) overseeing the day-to-day operating of the Village; (c) making sure Village ordinances were enforced; (d) overseeing the billing for the Village's water utility; and (e) interacting with the public on behalf of the Village.  Doc. 125 at 3, ¶ 1.

The parties do not dispute the job descriptions as set forth above.  Instead, their dispute turns on whether the Deputy Clerk position, as described above, constitutes a politically sensitive, policymaking position.  Plaintiff argues the Deputy Clerk position is primarily "ministerial."  The Individual Defendants disagree.  They argue the job descriptions squarely involve the Deputy Clerk with most facets of Village government such that the position is one of influence and who shapes policy; that the job descriptions effectively designate the Deputy Clerk as the Human Resources/Personnel Director with extensive personnel and supervisory responsibilities; that the job descriptions task the Deputy Clerk with performing broad duties related to election laws, procurements, and property-related notifications and documentation, all of which require  a "high level of education, training and experience"; and that the job

29

descriptions reflect the Deputy Clerk acts as "spokesperson" for the Village.  The Individual

Defendants further argue that the final catchall task from the written job description of

performing "such other duties" renders Plaintiff's job discretionary, vague and broad.  Last, the

Individual Defendants argue that the Deputy Clerk is an exempt position and note that it is the

second highest paid position in Village government.  The Court addresses the Individual

Defendants' arguments in turn.

To begin, the Court finds that none of the tasks as described above, though arguably quite

varied, reflect that the Deputy Clerk has the authority to formulate Village plans, nor do they

support that the Deputy Clerk meaningfully participates in government decision-making on

issues where there is room for principled disagreement on goals and their implementation.  *See*

*Elrod*, 427 U.S. at 368; *Ortiz*, 955 F.Supp. at 1345-46.  To the contrary, the tasks from the

written job description reflect many discrete responsibilities with limited and well-defined

objectives.  *See Elrod*, 427 U.S. at 368.

Moreover, even where the Deputy Clerk's job as actually performed leaves the written

page, the tasks remained well-defined.  For example, Mayor Chavez and Plaintiff testified that as

Deputy Clerk Plaintiff managed up to five employees.  However, her "management" was limited

to keeping track of attendance, ensuring coverage for absent employees, gathering timecards and

adding up employee hours at the end of pay periods, identifying concerns about employee

performance, and recommending disciplinary action to the Mayor.  Plaintiff did not have the

authority to take disciplinary action, nor she did have the authority to hire or fire employees.

Further, there is no evidence that Plaintiff was involved in any policy or decision-making with

respect to personnel matters.  *See Martinez v. Rio Arriba County*, No. 04-CV-612, 2006 WL

8443779, at *2 (D.N.M. Aug. 9, 2006) (finding that political allegiance was an appropriate job

requirement where human resource director's inherent powers and actual duties included, *inter alia*, planning, coordinating and directing personnel functions, including personnel policies and procedures, personnel records and contracts, classification and compensation studies; ensuring compliance with all personnel policies and procedures and with state and federal law that related to hiring; assisting with recruitment and selection process; assisting departments and/or screening committees on proper interviewing and screening procedures; recommending revisions to the personnel handbooks for County Commission approval; being responsible for personnel grievances, including legal consultation and writing related reports and correspondence; responsible for all complaints filed with the courts or state or federal agencies; advising the county manager and other directors on personnel matters; and reviewing with county legal counsel and the county manager all personnel and human resource matters); *see also Assaf v. Fields*, 178 F.3d 170, 179 (3rd Cir. 1999) (finding that managerial or supervisory authority, by itself, does not suffice to bring a position within the exception allowing termination of a public employee because of political affiliation).  As such, the Court does not see Plaintiff's human resource tasks as imbued with the extensive responsibility and discretionary authority the Individual Defendants assert.[15]  *See Elrod*, 427 U.S. at 368-69 (finding chief deputy who

---

[15] The Individual Defendants contend that the Deputy Clerk's maintaining of confidential personnel files renders her position politically sensitive.  The Individual Defendants' contention is misplaced.  It is the confidential character of the position to which the courts look, *i.e.,* whether the position involves working or advising on confidential and politically sensitive matters.  *See Barker v. City of Del City*, 215 F.3d 1134, 1136-38 (10th Cir. 2000) (citing cases where confidential character of position makes political affiliation an appropriate job requirement); *see also Garza v. Escobar*, 972 F.3d 721, 729 (5th Cir. 2020) (A government employee may be "confidential" "if he or she stands in a confidential relationship to the policymaking process, e.g., as an advisor to a policymaker, or if he or she has access to confidential documents or other materials that embody policymaking deliberations and determinations, e.g., as a private secretary to a policymaker."); *Carlson v. Gorecki,* 374 F.3d 461, 466 (7th Cir. 2004) ("Access to confidential information alone, however, does not mean that the job is confidential for purposes of applying the confidential employee exception to the ban on patronage dismissals."); *Jantzen v. Hawkins*, 188 F.3d 1247, 1256 (10th Cir. 1999) (discussing whether employees "were such important communicators or were privy to confidential information to such an extent that political loyalty would be an appropriate job requirement").

supervised all departments of sheriff's office was a nonpolicymaking individual); *see also Poindexter,* 548 F.3d at 920 (finding political loyalty could be taken into account where county road foreman's duties included, *inter alia,* supervising district employees, supervising inmates working within the district, and terminating employees for cause) *Snyder*, 354 F.3d at 1186 (finding city treasurer position involved policymaking where she had, *inter alia*, authority to set the City's employment policy, including whom to hire for treasurer's office); *Dickeson*, 844 F.2d at 1443-44 (finding head jailer who housed and fed prisoners, prepared work schedules for other jailers, and planned, ordered and prepared food was nonpolicymaker); *Ortiz*, 955 F. Supp. at 1345-46 (finding county maintenance supervisor who supervised four employees, prepared work schedules, ordered supplies, inspected building and conducted repairs, and prepared maintenance department budget was not properly subject to political patronage dismissal).

Similarly, the Individual Defendants have failed to show how Plaintiff's actual responsibilities with respect to the budget, which involved her making a template that contained the budgeted amounts from the previous fiscal year and inserting the year-to-date expenditures in each budget category, required that she allot resources or make budgetary decisions, as opposed to carrying out a limited and well-defined task. *Ortiz*, 955 F. Supp. at 1345 (finding that county maintenance supervisor who took figures from prior year and added ten percent in drafting department's budget was not required to make judgments about the allotment of scarce resources).

Next, the Individual Defendants argue that the Deputy Clerk's duties are broad and politically sensitive because they require a "high level of education, training and experience." This is not supported by the evidence. The job description explicitly describes the education and

experience required for the position of Deputy Clerk, *i.e.,* a high school diploma or GED and one

to two years of city/business administration or secretarial experience.  Dc. 151-2 at 1.  Further,

the tasks the Individual Defendants cite to support their argument are taken out of context and

mischaracterized.  For instance, the job description states that the Deputy Clerk "[m]ust be

familiar with the State Election Laws and Statutes *pertaining to the Village Clerk's functions*."

*Id.* (emphasis added).  The Individual Defendants assert this demonstrates the Deputy Clerk must

have a broad understanding of election laws, but a plain reading shows that the required scope of

understanding is limited.  And the only other reference in the job description related to elections

is that the Deputy Clerk will assist in coordinating the Bernalillo County early election

requirements by arranging for use of the polling location located in the Village Council

Chambers.  *Id.* at 5.  The Individual Defendants state that the Deputy Clerk must have

knowledge of State and Federal requirements regarding legal postings, but in doing so overstates

the Deputy Clerk's tasks which in large part are focused on the physical posting of certain

notifications.[16]  The Deputy Clerk's procurement responsibilities are defined as assisting the

Clerk as "acting procurement person" for all Village locations and involves creating and issuing

purchase orders, compiling necessary quotes, and ensuring that the minutes containing Council

approval accompany the purchase orders.  *Id.* at 3.  On its face, therefore, the Deputy Clerk,

when assisting the Clerk as "acting procurement person," prepares the paperwork to reflect

procurement decisions already made by the Village Council.  As such, there is no broad

decision-making or technical expertise inherent in this task.  Additionally, the Individual

---

[16] The job description requires that the Deputy Clerk "[p]laces legal postings and confirms same as required by State Statute and the Village of Tijeras Open Meetings Act Resolution" and "ensures that the Village is in compliance with all Federal, State and OSHA requirements for mandatory posting of all State labor laws and State and Federal notices." Doc. 151-2 at 2, 4.  There is nothing in the job description indicating these tasks require knowledge of the law or even an understanding of the substance of the postings themselves.

Defendants have failed to offer any evidence how the Deputy Clerk's assisting with documentation and notifications pertaining to "annexations, variances, abutting property owner and permits" is broad or open ended in the context of policy or decision-making or requires greater education and experience than stated in the job description.

The Individual Defendants next argue that the Deputy Clerk position is politically sensitive because the Deputy Clerk acts as a spokesperson for the Village by interacting with and answering questions from Village residents.  This argument is overstated.  The Individual Defendants have presented no evidence that the Deputy Clerk speaks on behalf of the Village at Village Council meetings, civic events or social functions or serves as the Village's ambassador to the community.  *See Barker,* 215 F.3d at 1136; *Poindexter*, 548 F.3d at 920; *Aiken*, 134 F.Supp.2d at 1222.  They have presented no evidence that the Deputy Clerk reports to or is required to maintain independent relationships with the Village Council members or other elected officials for the sake of conducting or promoting Village business.  *See Barker,* 215 F.2d at 1136; *Martinez*, 2006 WL 8443779, *2.  The Individual Defendants have presented no evidence that the Deputy Clerk represents the Village on boards, commissions and community organizations.  *See id.*  In sum, the Court is not persuaded that the Deputy Clerk's customer service role with Village residents who come to the Village Hall with questions rises to the level of spokesperson or someone who promotes Village policies as reflected in the relevant case law.

Last, the Individual Defendants argue that the Deputy Clerk position is politically sensitive because it is exempt from the Village Personnel Ordinance and is the second highest paid position in Village government.  It is undisputed from the job description that the Deputy Clerk position was *non-exempt* at the time Plaintiff was hired in 2011 and through July 2019.[17]

---

[17] The Village of Tijeras Personnel Ordinance identifies the following positions as exempt:  Village Clerk, Village Treasurer, Part-time employees, and all temporary and seasonal employees.  Doc. 83-2 at 32.

*See Salazar*, 1996 WL 134913, at *2-3 (finding that it can be inferred that classified positions are exempt from political patronage dismissal).  It is disputed, however, whether Plaintiff became an exempt employee when the position was converted to a salaried position in July 2019.  It is undisputed that the Deputy Clerk is the second highest paid position in Village government as of July 2019.

Based on the standard of review applicable at summary judgment, the Court must draw every reasonable inference in favor of the nonmovant.  Further, the burden of proving that political affiliation is an appropriate requirement for the effective performance of the position at issue is on the public employer and "[i]n close cases, doubt should be resolved in favor of the public employee subject to the dismissal."  *Dickeson,* 844 F.2d at 1442.  There being no dispute in this case as to the nature of the Deputy Clerk's duties, the Court finds that the Individual Defendants have failed to carry their burden of proving that "party affiliation is an appropriate requirement for the effective performance" of Deputy Clerk.  *Branti*, 445 U.S. at 518.  To the contrary, the Court finds as a matter of law that the record here demonstrates that the Deputy Clerk was not a policymaker or such an important communicator and privy to confidential information to such an extent that political loyalty would be an appropriate job requirement.  *See Barker*, 215 F.3d at 1138; *Jantzen*, 188 F.3d at 1256; *see also Ortiz*, 955 F. Supp. at 1346 (finding county maintenance supervisor was not properly subject to political patronage dismissal even though parties disputed non-exempt and exempt status of plaintiff's position); *Zold v. Township of Mantua*, 935 F.2d 633, 639 (3rd Cir. 1991) (explaining that there is no basis to

assume that an employee hired at-will who can be fired for any or no reason can be fired for a constitutionally prohibited reason).[18]

Moreover, case law from other circuits have reached the same conclusion. *See Lawson v. Union County Clerk of Court*, 828 F.3d 239, 249 (4th Cir. 2016) (holding that it could not conclude that deputy clerk of court position required party affiliation where duties included administrative and ministerial tasks, such as keeping records and managing court accounts, overseeing intake, receiving filing fees, collecting and disbursing funds, and tracking and reporting court data ); *Caudill v. Hollan*, 431 F.3d 900 (6th Cir. 2005) (finding patronage dismissal of county deputy clerks with routine duties violates the U.S. Constitution); *Zold,* 935 F.2d 633 (finding defendants had failed to carry their substantial burden of demonstrating that political affiliation is an appropriate requirement for the effective performance of the deputy township clerk).

### B.      Qualified Immunity

At the time the Individual Defendants voted to terminate Plaintiff's position, the right to not be terminated based on political affiliation with a prior administration was clearly established in both Supreme Court and Tenth Circuit case law. *See Walton,* 49 F. Supp.3d at 987 (collecting cases). The Individual Defendants argue, however, that *Walton* fails to address the extensive duties and role of the Deputy Clerk position and does not inform the Court on the *sui generis*, multifactorial nature of whether that position is politically sensitive such that it leads to qualified immunity.

---

[18] Questions of fact remain whether Defendants terminated Plaintiff for her political association. *See* the Court's Memorandum Opinion and Order filed concurrently herewith finding moot in part and denying in part *Defendants' Motion for Partial Summary Judgment Against WPA and First Amendment Claims* (Doc. 144).

The Court rejects the notion that there must be a separate patronage dismissal decision by the Supreme Court or the Tenth Circuit involving a particular position before qualified immunity can be denied in such a case.  The Sixth Circuit, in *McCloud v. Testa,* 97 F.3d 1536, 1556 (6th Cir. 1996), explains:

> The lack of specific precedent holding that a particular position is outside the *Branti* exception is a necessary condition to arguing that the First Amendment right to be free from patronage dismissal is unclear as to a particular position, but the lack of such precedent is not a sufficient condition for concluding that the law is unclear on the subject and so qualified immunity must be granted to a defendant.  As the Supreme Court has cautioned when considering its difficult qualified immunity jurisprudence, "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ." *Anderson*, 483 U.S. at 640.  . . .  It simply cannot be true that there must be a specific patronage dismissal case in the Supreme Court or Sixth Circuit before qualified immunity can be denied to any otherwise eligible defendant in such a case. If this were true, qualified immunity would be converted into a nearly absolute barrier to recovering damages against an individual governmental actor in patronage cases because the reported case law classifies new positions very slowly.

Id.

With this in mind, the Court finds that cases from the Supreme Court and the Tenth Circuit, and the clearly-established weight of authority from other courts, have made sufficiently clear that a reasonable official in 2020 would understand and be aware that terminating Plaintiff from her position as Deputy Clerk, based on her described duties and as actually performed, was a violation of her First Amendment right to political association.  To begin, the Court has cited above well-established circuit cases specific to the position at issue here where courts have held that patronage dismissal of deputy court clerks, deputy county clerks, and a deputy township clerk violates the U.S. Constitution.  *See Seamons*, 84 F.3d at 1238.  Additionally, Supreme Court and Tenth Circuit case law, and its application in cases in this district, have also held that patronage dismissal of similar types of positions violated the U.S. Constitution.  *See Elrod*, 427 U.S. at 373 (finding that chief deputy of process division was not a policymaker); *Jantzen,* 188

F.3d at 1256 (finding deputy sheriffs were not policymakers); *Dickeson,* 844 F.2d at 1443

(finding head jailer and special deputy were not policymakers); and *Ortiz,* 955 F.Supp. at 1346

(finding county maintenance supervisor was not a policymaker)

Next, Supreme Court and Tenth Circuit case law, and its application in cases in this

district, have clearly defined the inquiry for making a reasoned determination of whether party

affiliation is an appropriate requirement for the effective performance of the public office

involved.  *See Elrod*, 427 U.S. at 368 (explaining that employees with responsibilities that are

not well defined or are of broad scope more likely functions in a policymaking position and that

consideration should also be given to whether the employee acts as an advisor or formulates

plans for implementation of broad goals); *Poindexter,* 548 F.3d at 920 ("[i]n determining

whether a position appropriately requires political allegiance, we focus on the inherent powers of

the position and the actual duties performed"); *Snyder,* 354 F.3d at 1185 (determining whether

political allegiance is a proper job requirement calls for an analysis of the nature of the

employee's duties and responsibilities; the nature of the responsibilities is critical; an analysis of

the whole picture is necessary); *Barker,* 215 F.3d at 1137-38 (explaining that the ultimate inquiry

is not whether the label "policymaker" or "confidential" fits a particular position; rather, the

question is whether the hiring authority can demonstrate that party affiliation is an appropriate

requirement for the effective performance of the public office involved which requires analyzing

"the nature of the employee's duties and responsibilities"); *Jantzen,* 188 F.3d at 1253 (explaining

that to determine whether political loyalty is an appropriate requirement, we must analyze "the

nature of the employee's duties and responsibilities" and to be more precise, we must focus on

the actual duties performed); *Dickeson,* 844 F.2d at 1441 (explaining that any analysis must

necessarily begin with the inherent powers of the office at issue); *Aiken,* 134 F.Supp.2d at 1222-

23 (explaining that factors for determining whether a position involves policymaking include whether employee is exempt from civil service protection, is authorized to speak in the name of the policymakers, influences government programs, has contact with elected officials, is responsive to partisan political leaders, whether the individual has broad and vague responsibilities, and relative pay); *Ortiz*, 955 F.Supp.at 1344 (finding persuasive an inquiry of whether the position held by the individual authorizes, either directly or indirectly, meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation); *Salazar,* 1996 WL 134913, at *2-3 (finding that it can be inferred that classified positions are exempt from political patronage dismissal).

Additionally, Supreme Court and Tenth Circuit case law, and its application in cases in this district, have provided clearly-established guideposts for analyzing the various Deputy Clerk tasks relied on here by the Individual Defendants to determine whether they reflect policymaking.  For instance, in *Elrod*, the plurality referred to the importance of political affiliation with respect to advisors, and that several courts have listed involvement in personnel and budgetary matters as important factors in determining the applicability of the *Branti-Elrod* exception to political patronage.  Here, however, as previously discussed, there is no evidence that Plaintiff served in a confidential advisory position.[19]  It is also clear that Plaintiff's level of involvement in personnel and budgetary matters was well-defined and limited, that she did not have extensive supervisory or discretionary authority over employees, and that she did not make judgments regarding allotments of budgetary resources.  Further, it is clear from the case law that managerial or supervisory authority, by itself and in the absence of  discretionary authority, does

---

[19] *See* fn. 15, *supra.*

not suffice to bring a position within the exception allowing termination of a public employee because of political affiliation. *See Dickeson*, 844 F.2d at 1441; *Ortiz*, 955 F. Supp. at 1345-46.

The same holds true with respect to determining when a position is confidential in nature, is open ended and vague, or reflects the activities of a spokesperson. *See Barker*, 215 F.3d at 1136-38 (explaining that the confidential character of a position turns on whether the position involves working on confidential and politically sensitive matters); *Jantzen*, 188 F.3d at 1256 (explaining that determining confidential nature of position asks whether employees "were such important communicators or were privy to confidential information to such an extent that political loyalty would be an appropriate job requirement"); *Elrod,* 427 U.S. at 368 (explaining that "[e]mployee supervisors, for example, may have many responsibilities, but those responsibilities may have only limited and well-defined objectives"); *Aiken,* 134 F.Supp.2d at 1222 (finding plaintiff's job description was vague and open ended because it was "not as succinct as it could be"); *Barker*, 215 F.3d at 1136 (acts as spokesperson when acting on city manager's behalf at city council meetings and city, civic, and social functions); *Aiken*, 134 F.Supp.2d at 1222 (acts as spokesperson where engages in lobbying activities and communicates county commissioner positions); *Martinez*, 2006 WL 8443779, *1-2 (acts as spokesperson when representing county on boards, commissions and community organizations).

In sum, the Court finds that the Individual Defendants were on notice that Plaintiff's supervisory responsibilities of keeping attendance, maintaining timecards, arranging for coverage, and notifying the Mayor of employee performance and/or personnel ordinance violations did not render her a policymaker; that her access to confidential personnel files did not make her position confidential for purposes of applying the confidential employee exception to the ban on patronage dismissals; that the presence of a perfunctory catchall phrase "perform such

other duties" in the Deputy Clerk job description on the heels of forty-eight well-defined and limited tasks did not transform the Deputy Clerk job description into one that is vague and open-ended; and that Plaintiff's duties of answering questions from residents who walk in to the Village Hall did not rise to the level of being a spokesperson for the Village.

Finally, while Plaintiff's exempt or non-exempt status and her salary are arguably factors to consider, they are not vital to the clearly-established and central inquiry to which the Individual Defendants were on notice for determining whether political association is an appropriate requirement for the effective performance of the public office involved, *i.e.,* the nature of the employee's duties and responsibilities.

Accordingly, because a reasonable official, based on Supreme Court, Tenth Circuit, and the clearly-established weight of authority from other courts, would know that Deputy Clerk with the job description and duties as described herein is not a policymaking position and that party affiliation is not an appropriate requirement for the effective performance of the job, the Court finds that the contours of the right not to be terminated on the basis of political patronage were "sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right" at the time the Individual Defendants terminated Plaintiff. *Anderson*, 483 U.S. at 640. For this reason, the Court finds that the Individual Defendants are not entitled to qualified immunity.

## VI.  <u>CONCLUSION</u>

**IT IS THEREFORE ORDERED** that Defendants' *Motion for Partial Summary Judgment On All Federal* Claims, Doc. 125, is **DEFERRED IN PART AND DENIED IN PART**.

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**