IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DIANE KLAUS,

        **Plaintiff,**

        **vs.**                          Civ. No. 20-1105  JFR/KK

VILLAGE OF TIJERAS, JAKE
BRUTON, DON JOHNSON, FELIX
GARCIA and MAXINE WILSON,
in their individual and official capacities,

        **Defendants.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on Defendants' *Motion for Partial Summary Judgment on Plaintiff's Claim for Violations of the New Mexico Whistleblower Protection Act* ("Motion"), filed November 12, 2021.[2]  Doc. 132.   On January 20, 2022, Plaintiff filed a Response.  Doc. 160.  On January 31, 2022, Defendants filed a Reply.  Doc. 164.  The Court, having considered counsel's arguments, the record, and the relevant law, FINDS that Defendants' Motion is well taken and is **GRANTED**.

## I.  FACTUAL BACKGROUND

The Village of Tijeras ("Village") hired Plaintiff as a Deputy Clerk in October of 2011. Doc. 1-1 at 2, ¶ 10.  Plaintiff successfully completed her probationary period in May of 2012.  *Id.* Plaintiff was classified as a regular, full time hourly employee.  *Id.* at ¶ 11.  From the date Plaintiff was hired until January 3, 2020, Gloria Chavez was the Mayor of the Village and was

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. Docs. 5, 9, 11.

[2] The Motion is brought on behalf of all Defendants; however, Count IV of Plaintiff's Complaint is brought only against Defendant Village of Tijeras.  Doc. 1-1 at 15-16, ¶¶ 100-104.

Plaintiff's direct supervisor.  *Id.* at ¶ 12.  After January 3, 2020, Defendant Jake Bruton, a former Village Council member, became the Mayor of the Village.  *Id.* at ¶ 13.

Plaintiff alleges that beginning in 2017, Defendants Bruton, Johnson, Garcia and Wilson were vocal critics and opponents of Mayor Chavez and Plaintiff and initiated a concerted effort to terminate Plaintiff's employment in retaliation for, *inter alia*, her association and affiliation with Mayor Chavez, and for Plaintiff's attempts to enforce Village ordinances and her reporting to third parties in good faith what she believed were violations of state law by Village Councilors, malfeasance by Council members, and gross mismanagement, waste of funds and abuse of authority by Village Councilors.  *Id.* at 4, ¶¶ 24-25.  Plaintiff alleges that Defendants continued their efforts until she was terminated on the recommendation of newly elected Mayor Bruton.  *Id.* at ¶ 26.

## II.  <u>SUMMARY JUDGMENT STANDARD</u>

A motion for summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); Fed. R. Civ. P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact."  *Catrett*, 106 S. Ct. at 2552 (internal quotation marks omitted); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).  Once the movant meets this burden, the non-moving party is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986); Fed. R. Civ. P. 56(c).  "A fact is 'material' if, under the governing law,

it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (internal citations omitted); *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016).  Only material factual disputes preclude the entry of summary judgment.  *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

The trial judge is not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  *Anderson,* 106 S. Ct. at 2512.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Id.* at 2510.  To carry its initial burden, the moving party need not negate the nonmoving party's claim.  *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998).  "'Instead, the movant only bears the initial burden of 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'"  *Id*. (quoting *Catrett*).  Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Catrett*, 106 S. Ct. at 2552 (quoting Fed. R. Civ. P. 56(e)).  A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim.  *See Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002).  "Where

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. v. Zenith Radio Corp*., 106 S. Ct. 1348, 1356 (1986) (citation omitted).  Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence."  *Kaus v. Standard Ins. Co*., 985 F. Supp. 1277, 1281 (D. Kan. 1997).  If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g., Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

## III.  ALLEGATIONS AND MATERIAL FACTS

Plaintiff alleges in her Complaint that Defendants were critical of and/or displeased with her and retaliated against her for (1) reporting that a conflict of interest existed when Defendant Bruton attempted to file a zoning application and pay the fee on behalf of a resident; (2) reporting a violation of the Anti-Donation Clause when Defendant Garcia took discarded scrap metal belonging to the Village and used it for his own benefit; (3) advising the Village Fire Marshall to enforce a zoning violation he found during his inspection of Defendant Bruton's auto repair business of "too many vehicles"; (4) participating in the award of a service contract, previously awarded to Defendant Bruton, to an automobile repair shop based on that shop's lower estimate consistent with best practices and the provisions of the Procurement Code; (5) requiring an applicant to pay a zoning application fee pursuant to the Village zoning ordinance that Defendants wanted waived; (6) requiring a resident who was a political ally of Defendant Wilson to stop digging a trench on property in violation of Village ordinances; and (7) requiring water users to pay late fees pursuant to the Village water ordinance that Defendants

4

wanted waived.  Doc. 132 at 2, ¶ 1; Doc. 160 at 2-3, ¶ 1; Doc. 1-1 at 4-7, ¶¶ 24-42 and at 15-16, ¶¶ 100-104.

Plaintiff argues that each of the foregoing allegations constitute protected communications pursuant to the New Mexico Whistleblower Protection Act, N.M. Stat. Ann. § 10-16C-1 *et seq.* ("NMWPA").

The record, viewed in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, shows the following.

Exhibits B1 and B2 attached to Defendants' Motion are true and correct copies of the job descriptions for Village Clerk/Treasurer and Deputy Clerk.[3]  Doc. 132 at 3, ¶ 4, Doc. 160 at 3, ¶ 4.

Plaintiff's duties as Deputy Clerk or Acting Clerk included the following: (a) managing village staff; (b) overseeing the day-to-day operations of the Village; (c) making sure Village ordinances were enforced; (d) overseeing the billing for the Village's water utility; and (e) interacting with the public on behalf of the Village.  Doc. 132 at 2, ¶ 3.[4]  Plaintiff's attempts to enforce Village ordinances and deal with water utility issues "were part of her job."  Doc. 132 at 4, ¶ 9; Doc. 160 at 4, ¶ 10.

During Mayor Chavez's tenure, Plaintiff's job included reporting to the Mayor, who exclusively supervised Plaintiff, and working under the Mayor's "direction."  Doc. 132 at 3, ¶ 5, Doc. 160 at 3, ¶ 4.  During Plaintiff's employment, Mayor Chavez had "absolute authority" to

---

[3] Exhibit B1 is titled "Village of Tijeras Job Description – Village Clerk/Treasurer."  Doc. 132-2 at 4.  Exhibit B2 is titled "Village of Tijeras Job Description – Deputy Clerk."  Doc. 132-2 at 5-10.

[4] Plaintiff admits the generalized statements about her job duties, but states the details of Plaintiff's actual duties are delineated in Doc. 151, Plaintiff's Additional Material Facts Nos. 4-19.  Doc. 160 at 3, ¶ 3.

decide what would be on an agenda for a Village Council meeting, and, in Plaintiff's experience, no one else could put items on the agenda.  Doc. 132 at 4, ¶ 7; Doc. 160 at 4, ¶ 8.

After Plaintiff was hired as a Deputy Clerk in 2010, Plaintiff attended multiple trainings regarding government administration, some of which included training on the Anti-Donation Clause to the New Mexico Constitution and conflict of interest laws governing the conduct of public officials.  Doc. 160 at 5, ¶ 3.  In the course of those trainings, Plaintiff learned that the Anti-Donation Clause prohibits municipalities from directly or indirectly making any donation or aid to any person.  *Id.*

Sometime prior to September 2017, Plaintiff reported to Mayor Chavez and a Municipal League attorney what she believed to be a conflict of interest on the part of Defendant Bruton after he submitted a zoning application and paid the fee on behalf of applicant Peggy Pohl.[5] Doc. 160 at 5, ¶ 4.  Plaintiff confirmed the existence of a conflict of interest on Defendant Bruton's part and was told that Defendant Bruton could not take action on any matter related to Ms. Pohl.  *Id.*  Plaintiff communicated this information to Mayor Chavez and Defendant Bruton, after which Defendant Bruton recused himself from the matter.  *Id.*

In January 2018, Plaintiff received information from Village employee Flaviano Sanchez that Defendant Garcia had taken scrap metal belonging to the Village.  Doc. 160 at 4, ¶ 1. Plaintiff had no knowledge of the economic value of this scrap metal.  Doc. 132 at 3, ¶ 4; Doc. 160 at 3, ¶ 5.  Plaintiff reported to Mayor Chavez that she believed Defendant Garcia's actions constituted "theft" and a violation of the Anti-Donation Clause of the New Mexico Constitution. Doc. 160 at 4, ¶ 1.  Mayor Chavez then accused Defendant Garcia of theft, saying that she heard about the matter from Flaviano Sanchez.  Doc. 132 at 3-4, ¶ 6; Doc. 160 at 3, ¶ 7.  Without

---

[5] The application fee was $30.00.  Doc. 132-8 at 5.

admitting any wrongdoing, Defendant Garcia delivered a check the next day in the amount of $25.00 to Diane Klaus as Acting Village Clerk. *Id.*

At the January 31, 2018, Village Council meeting, the Council reviewed and decided on action regarding Defendant Garcia and "the scrap metal issue." Doc. 160-1 at 1, ¶ 6. The minutes reflect that Defendant Garcia explained

> [o]ne day I was talking to one of the employees and I was told they were going to get rid of it. I asked if they were going to throw it away and they said yes. So I asked if I could have it. So he opened the gate and I got them. Afterwards I was told that I had stolen them. So I told the Mayor what had happened and she told me I had stolen them because I didn't have her permission.

*Id.*; Doc. 132 at 3-4, ¶ 6; Doc. 160 at 3-4, ¶ 7, and 5, ¶ 2. The Village employee who Defendant Garcia talked to about the scrap metal was his brother, Melvin Garcia. Doc. 132 at 3-4, ¶ 6; Doc. 160 at 3-4, ¶ 7. To Defendant Garcia's knowledge, the Village never sorted its scrap metal from its other trash, or recycled or sold it. *Id.* Defendant Garcia included the metal scraps in a personal trip to a recycled metals dealer and received $54.40, out of which he reimbursed the Village $25.00.[6] Doc. 132 at 3-4, ¶ 6; Doc. 160 at 3-4, ¶ 7; Doc. 160-1 at 2, ¶ 6.

Defendant Garcia's actions resulted in an audit which found that the Village of Tijeras had violated the Anti-Donation Clause.[7] Doc. 160 at 4, ¶ 1.

---

[6] The minutes reflect that the recycled scrap metal for which Defendant Garcia received payment was partly Village scrap metal. Doc. 160-1 at 2. Defendant Garcia stated he did not know what percentage of the payment he received was for Village property. *Id.* Defendant Bruton asked the Mayor if she would be happy if Defendant Garcia reimbursed the full amount of $54.40 to the Village. *Id.* After agreeing that the amount at issue was "ridiculous," Mayor Chavez responded that "I'll talk to legal and get back to you." *Id.* Defendant Garcia stated he would not have any problem paying back the entire amount to clear it up, but would "wait and see what legal comes up with." *Id.* Defendant Bruton moved and Defendant Wilson seconded that Defendant Garcia be absolved from any "wrongdoing regarding the scrap metal that was removed from the Village per the assistance of a Village Employee providing he pays the remaining $29.40 to the Village covering the entire amount of the scrap metal sale." *Id.* The motion passed. *Id.*

[7] Plaintiff cites Mayor Chavez testimony in which she was asked, "Do you recall that Mr. Garcia's actions resulted in an audit finding against the Village of Tijeras; that *they* had violated the anti-donation clause?" Doc. 160-3 at 2 (emphasis added). Mayor Chavez answered "Yes." *Id.*

In deposition, Defendant Garcia testified about Diane Klaus and the scrap metal issue as follows:

Q.  When did you first start having problems with Diane Klaus, as an employee?

A.  I never did.

Q.  Well, didn't you vote to terminate her?

A.  Well, after the facts that were presented to the council.

Q.  Okay.  So what – you didn't have any problems with Diane Klaus, as an employee, until when?

A.  After I was accused of the scrap metal.

Q.  Who raised that issue?

A.  The mayor did and her husband.

Q.  What was Diane Klaus's role in putting that information into the meetings, council meetings?

A.  Well, it was through the mayor, both of them.

Doc. 160-4 at 2; Doc. 160 at 5, ¶ 2.

## IV.  ARGUMENTS

### A.  Defendants' Motion

Citing *Kakuska v. Roswell Indep. Sch. Dist.*, 2019 WL 2103358 (N.M. Ct. App. Apr. 16, 2019) (unpublished), Defendants argue that the NMWPA does not protect communications that fall within an employee's normal job responsibilities.[8]  Doc. 132 at 5-7.  Defendants argue there

---

[8] Defendants also cite case law from other jurisdictions, *e.g.*, *Stone v. Entergy Servs., Inc.*, 2008-0651 (La. App. 4 Cir. 2/4/09), 9 So.3d 193, 200, *writ denied*, 2009-0511 (La. 4/17/09), 6 So.3d 797 ("The Louisiana Environmental Whistleblower Statute does not afford protection to an employee who generates reports regarding environmental issues when reporting environmental issues, concerns, and potential violations is part of one's normal job responsibilities."); *Desmond v. Mahoning Cty., Prosecutor's Off.*, 2019-Ohio-4946, 138 N.E.3d 1194, 1197 (interpreting Ohio Whistleblower Act); *Kidwell v. Sybaritic, Inc.*, 749 N.W.2d 855 (Minn. Ct. App., 2008) (holding that "[a]n employee does not engage in protected conduct under the whistleblower act if the employee  makes a report in fulfillment of the

is no genuine issue of fact that the communications Plaintiff alleges caused retaliation fell within her admitted job duties, *i.e.,* making sure ordinances were enforced, overseeing billing of water utility, interacting with the public on behalf of the Village, and reporting any conduct by public officials that she believed presented conflicts of interest or violated applicable laws related to government administration. *Id.* at 8-9. Additionally, Defendants argue that when Plaintiff did report any such violations, she did so to the Mayor, which was also part of her job. *Id.* As such, Defendants argue that Plaintiff's communications do not constitute protected activity under the NMWPA. *Id.* at 8-9.

Defendants further argue that the NMWPA does not protect communications made in bad faith or that are already publicly known. Doc. 132 at 9-11. To that end, Defendants argue that Plaintiff did not have an objectively reasonable, good faith basis for characterizing Defendant Garcia's actions with respect to the scrap metal as "unlawful." *Id.* Defendants argue that the undisputed facts establish that Defendant Garcia took pieces of scrap metal only after asking if the Village was discarding them, and that when he was accused of stealing the scrap metal he immediately paid the Village the amount he received from selling it. *Id.* Defendants argue that the Village had no policy to sort through its trash for scrap metal or otherwise sell it, as such there was nothing to steal. *Id.* Defendants argue that Plaintiff was aware of Defendant Garcia's payment for the scrap metal and that Plaintiff made no attempt to confirm or deny any facts when she subsequently characterized his actions as theft. *Id.* Defendants further argue that

---

duties of his or her job . . . this approach is "in harmony" with [the] express good-faith requirement and requires courts to evaluate good faith by looking at the content of the report and the reporter's purpose for making the report.").

Defendant also argues this interpretation comports with interpretation of the Federal Whistleblower Act at 5. U.S.C. 2302 *et seq. Cf., United States ex rel. Ivanov. Exelis, Inc.,* 41 F.Supp.3d 50, 53 (D.D.C. 2015) ("performance of their normal job responsibilities [as] protected activity must 'overcome the presumption that they are merely acting in accordance with their employment obligations' to put their employers on notice.").

Mayor Chavez had already been informed about Defendant Garcia's taking of the scrap metal from Flaviano Sanchez and did not learn about it from Plaintiff.  *Id.*

   **B.**   **Plaintiff's Response**

   Plaintiff contends that the NMWPA protects public employee communications regarding matters within the scope of an employee's job duties, including communications to an employee's supervisor, and that Defendants' proffered narrow construction of the NMWPA violates fundamental rules of statutory construction.  Doc. 160 at 6-13.  For example, Plaintiff asserts that the plain language of the NMWPA does not differentiate communications made during the performance of a public employee's job duties from speech engaged in outside of their duties, and that construing the NMWPA to protect all communications between a public employee and their employer is consistent with the intent and purpose of the NMWPA.  *Id.* Plaintiff further asserts that Defendants' proffered construction of the NMWPA is inconsistent with New Mexico case law which supports that any public employee communications which further the public's interest are protected.  *Id.*

   In particular, Plaintiff argues that Defendants' reliance on *Kakuska* is misplaced because the Court of Appeals stated, *in dicta*, that a NMWPA plaintiff is required to show the protected communication was not made primarily for the benefit of the employee and was not part of the employee's normal job duties.  *Id.*  Plaintiff argues that when deciding *Kakuska*, the Court of Appeals improperly relied on *Garrity v. Overland Sheep Co*., 1996-NMSC-032, 121 N.M. 710, which, according to Plaintiff, had no direct bearing on the NMWPA because it involved a common law wrongful discharge claim and was decided fourteen years before the NMWPA was enacted.  *Id.*  Plaintiff further argues that *Wills v. Bd. of Regents of Univ. of N.M.,* 2015-NMCA-105, ¶ 20, 357 P.3d 453, also cited by the Court of Appeals in *Kakuska*, holds that a NMWPA

plaintiff need only show that the communication at issue "furthers a public interest rather than a private one" to invoke the protections afforded by the NMWPA.  Doc. 160 at 10.  Plaintiff, therefore, contends that a NMWPA plaintiff can state a claim based on communications made as part of their job duties, or to their supervisor, if those communications primarily further public rather than private interests.  *Id.*

Plaintiff also argues that subsequent case law interpreting the NMWPA, albeit without citing any case law, makes clear that the NMWPA protects all employee communications which primarily further a public rather than a private interest and that the NMWPA was intended to "restore public employee free speech rights to the status they enjoyed prior to the *Garcetti* [*v. Ceballos*] decision[9] and reject *Garcetti's* limitation on the protections afforded to public employee speech."  Doc. 160 at 11-12.

For all of these reasons, Plaintiff asserts that Defendants' argument that the Plaintiff cannot maintain a claim under the NMWPA because her communications "all fell within" her job duties or were made to her supervisor is not well taken because the NMWPA expressly includes all public employee communications to a public employer.  Doc. 160 at 12-13.

Plaintiff next contends that the NMWPA's protection of employee free speech extends to the communication of information that has been previously disclosed.  Doc. 160 at 13-14. Plaintiff similarly argues that the plain language of the NMWPA does not distinguish between communications of information that has previously been disclosed and information that has not, and that the NMWPA clearly defines protected communication as information about illegal or improper actions to "the public employer or a third party."  *Id.*  Plaintiff further contends that

---

[9] *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006) (holding that when a public employees makes statements "pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.").

case law cited by Defendants to support their position that previously disclosed information is not protected is either misplaced or unavailing.[10]  *Id.*

Last, Plaintiff contends that she had a good faith belief that Defendant Garcia committed theft when he took Village property and used it for his own benefit.  Doc. 160 at 14-17.  Plaintiff asserts that Defendant Garcia admitted his brother told him the Village was "going to get rid of the scrap metal," but that the Village had not done so at the time Defendant Garcia took it, and that Defendant Garcia chose to take it for his own benefit.  *Id.*  Plaintiff asserts that Defendant Garcia did not immediately or fully reimburse the Village for the scrap metal and only agreed to pay the balance depending on "what legal comes up with."  *Id.*  Plaintiff contends, therefore, that she had a good faith basis to believe that Defendant Garcia had stolen Village property, abused his authority as a Village Councilor, wasted Village funds, and committed malfeasance, and had therefore engaged in an "illegal or improper act" within the meaning of the NMWPA.  *Id.*

### C.    **Defendants' Reply**

Defendants argue that Plaintiff has overstated her own pleadings as to her alleged whistleblowing communications.  Doc. 164 at 1-2.  Defendants argue that Plaintiff's referenced allegations to her job performance, *i.e.,* met with the Fire Marshall, determined that a different automobile repair shop would receive a Village contract, charged an administrative fee, required

---

[10] Plaintiff argues that Defendants' reliance on *Meuwissen v. Dept. of Interior,* 234 F.3d 9 (Fed. Cir. 2000) to support that the federal whistleblower protection law does not protect communications involving information which had previously been publicly disclosed is misplaced.  Doc. 160 at 14.  Plaintiff argues that "[t]he *Meuwissen* Court's analysis and conclusion missed the mark so badly, that Congress felt compelled to amend the federal whistleblower law to overrule *Meuwissen. Id.*

Plaintiff further argues that Defendants' citation to and reliance on *Williams v. District of Columbia,* 9 A.3d 484 (D.C. Ct. App. 2010), and *Helbig v. City of Bowling Green,* 371 S.W.3d 740 (KY. Ct. App. 2011) is equally unavailing because both of those cases relied on and parroted the analysis and conclusion of the *Meuwissen* decision.  Doc. 160 at 14.  Plaintiff similarly argues that Defendants' citation to *McDonald v. McCarthy,* 1990 U.S. Dist. LEXIS 11957 (E.D. Pa. 1990) is misplaced because that court rejected the argument that communications by a public employee which involve previously disclosed information are not actionable under the Pennsylvania whistleblower law.  *Id.*

a person to pay a surcharge, and charged water users for late fees, all fail to allege she reported anything to anyone and instead allege only that Defendants were displeased by her actions.  *Id.*

Defendants next argue that Plaintiff's assertion that Defendants are relying on *dicta* from the Court of Appeals' *Kakuska* holding fails to appreciate that the Court of Appeals affirmed the district court's grant of summary judgment based solely on plaintiff's lack of communications outside his chain of command and "on the basis that Plaintiff's alleged whistleblowing activity took place in the course of his normal job responsibilities" and therefore was not protected under the WPA.  Doc. 164 at 2-5.  Defendants further argue that the New Mexico Court of Appeals' holding in *Kakuska* is more persuasive than Plaintiff's criticisms of it and that a multitude of state and federal cases have similarly found an implicit "job duties" exception to the actions protected by whistleblower laws.[11]  Doc. 164 at 2-5.  Defendants also argue that Tenth Circuit cases tend to support the *Kakuska* decision.[12]  *Id.*

---

[11] Defendants cite, *e.g.*, *Gianfrancesco v. Laborers Int'l Union of N. Am. Loc. 594*, No. Civ. 10-6553, 2013 WL 2296759, at *5 (D.N.J. May 24, 2013) (reasoning that "[a] number of courts have found a "job duty exception" to New Jersey's analogous Conscientious Employee Protection Act); *Kerrigan v. Otsuka Am. Pharm., Inc.*, No. 12-4346, 2012 WL 5380663 (E.D. Pa. Nov. 1, 2012 ) (reasoning that "a plaintiff cannot establish that he engaged in a . . . protected act when the plaintiff's actions fall within the plaintiff's job duties."); *Correa v. Mana Products, Inc.*, 550 F.Supp.2d 319, 330 (2008 E.D.N.Y.) ("in order for employees in human resources positions to claim retaliation they need to first clearly establish that they were engaged in protected activities other than the general work involved in their employment."); *Edgerly v. City of Oakland*, 211 Cal.App.4th 1191, 1207, 150 Cal.Rptr.3d 425, 437 (2012), as modified (Dec. 13, 2012) (reasoning that the plaintiff, "who was in a special position as an administrator, has not shown that a single activity fell outside her general work involvement."); *Skare v. Extendicare Health Servs., Inc.*, 515 F.3d 836, 841 (8th Cir. 2008) ("The whistleblower statute does not grant protection to an employee whose job duties require him or her to ensure legal compliance"); *Haddox v. Ohio Atty. Gen.*, 2008 WL 3918077, Ct. App. Ohio 2008-Ohio-4355, ¶ 32 (reasoning that the plaintiff was merely doing what she was expected to do as a supervisor, and cannot be said to have risked her job to "blow the whistle" for the benefit of the citizens); *Tumban v. BioMerieux, Inc.*, No. 1:06CV00442, 2007 WL 778426, at *2 (M.D.N.C. Mar. 13, 2007) (explaining that simply reporting violations to superiors is not sufficient to confer whistleblower status on an individual; in fact, this is merely part of the job description of those employed in a management position).

[12] Defendants cite, *e.g.*, *Martin v. Weyerhaeuser Co.*, 213 F. App'x 142, fn. 11 (10th Cir. 2009) ("We struggle to see how [plaintiffs'] voicing of their concerns to management can be characterized as whistleblowing when they acknowledge it was part of their job description to raise such concerns.") (interpreting Oklahoma law); *McKenzie v. Renberg's Inc.* (10th Cir. 1996), 94 F.3d 1478, 1487 (concluding that claimed whistleblowing activities consistent with duties as personnel director were not actionable) (decided in analogous context of whistleblower protections of the Fair Labor Standards Act)).

Defendants next argue that while the federal whistleblower protection laws may have been legislatively amended pursuant to certain case law, *i.e., Meuwissen,*[13] the New Mexico legislature has not amended the NMWPA.  Further, Defendants argue that the NMWPA does not provide that all employees of a public entity can claim protected status based on reporting by an initial whistleblower, which, Defendants argue, Plaintiff attempts to do here, *i.e.,* Plaintiff relies on Flaviano Sanchez's report to the Mayor that Defendant Garcia took salvage scrap metal.  Doc. 164 at 6.  That aside, Defendants argue that Plaintiff was doing her job when she reported this information to the Mayor.  *Id.*

Last, Defendants argue that Plaintiff has failed to proffer any legitimate summary judgment evidence that her alleged protected communications were not part of Plaintiff's job duties or made to anyone other than her supervisor, the Mayor.  Doc. 164 at 7-9.  Defendants further argue that the Court should disregard Plaintiff's affidavit offered to support that she reported Defendant Bruton's conflict of interest to a Municipal League attorney because it directly contradicts her prior sworn discovery answers.  *Id.*

## V. ANALYSIS

The NMWPA prohibits a public employer from taking retaliatory action against an employee for communicating to the public employer or a third party about an action or failure to act that the employee in good faith believes is an unlawful or improper act; for providing information to a public body as part of an investigation, hearing, or inquiry about an unlawful or improper act; or for objecting to or refusing to participate in an unlawful or improper act.  *See*

---

[13] "The legislature's only objection to the holding in *Meuwissen* was the idea that 'disclosures of information already known are not protected.'" *O'Donnell v Merit Systems Protection Bd.*, 561 F. App'x 926, 930 (Fed. Cir. 2014) (citing S.REP. NO. 112-155, 2012 U.S.C.C.A.N. 589 at 5).

N.M. Stat. Ann. § 10-16C-3 (1978, 2018 Cumulative Supp.).  The NMWPA defines an

"unlawful or improper act" as

> a practice, procedure, action or failure to act on the part of a public employer that:
>
> (1) violates a federal law, a federal regulation, a state law, a state administrative rule or a law of any political subdivision of the state;
>
> (2) constitutes malfeasance to public office; or
>
> (3) constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public.

*Id.* at § 10-16C-2(E).  "Gross mismanagement" includes a management action or inaction which

creates a substantial risk of significant adverse impact upon the public employer's ability to

accomplish its mission.  *Velasquez v. Regents of Northern New Mexico College*, 2021-NMCA-

007, ¶ 36, 484 P.3d 970.  The NMWPA defines a retaliatory action as "any discriminatory or

adverse employment action against a public employee in the terms and conditions of public

employment." N.M. Stat. Ann. § 10-16C-2(D).

The Tenth Circuit has interpreted the federal Whistleblower Protection Act ("WPA") to

require proof of three elements to establish a violation.  *See Wells v. Shalala*, 228 F.3d 1137,

1146-47 (10th Cir. 2000).  To state a prima facie case under the WPA, a plaintiff must establish

that (i) the employee made a protected disclosure; (ii) the employer took an adverse employment

action against the employee; and (iii) a causal connection exists between the protected disclosure

and the adverse action.  *Id.*  The NMWPA was modeled after the federal WPA, and thus, cases

interpreting the federal WPA have persuasive value.  *Wills v. Bd. of Regents of Univ. of N.M.*,

2015-NMCA-105, ¶ 19, 357 P.3d 453.  While the federal WPA does not expressly limit

whistleblower protection to communications that benefit the public or pertain to matters of

public concern, the law protects "whistleblowing," distinguishing between disclosures that

benefit "the public by exposing unlawful and improper actions by government employees from communications regarding personal personnel grievances that primarily benefit the individual employee." *Id.*, ¶ 20.  The New Mexico Legislature enacted the NMWPA "to encourage employees to report illegal practices without fear of reprisal by their employers." *Janet v. Marshall*, 2013-NMCA-037, ¶ 21, 296 P.3d 1253 (internal quotation marks and citation omitted).

The Court does not find that any of Plaintiff's alleged actions and/or communications constitute protected activity within the meaning of the NMWPA.  To begin, Plaintiff's allegations that Defendants were displeased with or criticized her for (1) advising the Village Fire Marshall to enforce a zoning violation against Defendant Bruton's auto repair business, (2) participating in the award of a new auto repair shop service contract; (3) requiring an applicant to pay a zoning application fee, (4) requiring a resident to stop digging a trench in violation of Village ordinances, and (5) requiring water users to pay late fees, without more, are insufficient to create disputed material facts that Plaintiff communicated, reported, or disclosed to her employer or a third party that Defendants were taking actions or failing to take actions that she believed in good faith constituted unlawful or improper acts.  Plaintiff has not produced any evidence of any such communications.  *See Wills*, 357 P.3d at 456 (explaining that the NMWPA exclusively protects an employee's communications); *see also* NMSA 1978, § 10-16C-3.A.  Nor has Plaintiff produced evidence that she communicated any objections to or refusals to participate in unlawful or improper acts as defined by the NMWPA.  *See DeLopez v. Bernalillo Public Schools*, 558 F.Supp.3d 1129 (D.N.M. 2021) (explaining that plaintiff did not communicate about objections or refusals to participate in an unlawful or improper act, *inter alia*, and finding that plaintiff did not meet the first element of a prima facie case under the

16

NMWPA); *see also* NMSA 1978, § 10-16C-3.C.  Moreover, whistleblower communications do not include an individual's communications regarding a supervisor's maltreatment of her personally nor do they include lawsuit communications regarding the same.  *Wills*, 357 P.3d at 457-58.  As such, Plaintiff's allegations here against the individual Defendants regarding their alleged displeasure with and/or criticisms of her related to Plaintiff's job performance that could arise in any context do not amount to protected whistleblower communications.  *Id.*

As for Plaintiff's communications to the Mayor regarding Defendant Bruton's conflict of interest and Defendant Garcia's Anti-Donation Clause violation, the Court finds *Kakuska*'s analysis persuasive and Plaintiff's objections unavailing.[14]  In *Kakuska*, plaintiff, an Assistant Superintendent for Human Resources for the Roswell Independent School District, filed a complaint for unlawful retaliation in violation of the NMWPA.  2019 WL 2103358, at *1.  He alleged he made certain verbal and written objections to the Superintendent regarding a proposed employee discipline and pay restructuring, including a communication that the proposed restructuring of the pay scale was against the law in response to a negative job performance evaluation, and that he was wrongfully terminated as a result.  *Kakuska*, 2019 WL 2103358, at

---

[14] The Court appreciates that *Garrity* addressed a wrongful discharge claim and was decided before the NMWPA was enacted and Plaintiff has offered nothing to demonstrate that the New Mexico Court of Appeals did not appreciate this as well when it entered its Memorandum Opinion in *Kakuska*.  Additionally, Plaintiff has failed to demonstrate that the required proof under either the tort of retaliatory discharge or alleged violations of the NMWPA that actions/communications at issue further a public interest rather than a private one is dissimilar such that *Garrity* would not apply.  *See Conkling v. Tri-State Careflight, LLC*, No. 1:14-CV-00234-WJ-KBM, 2017 WL 4564927, at *7 (D.N.M. Apr. 25, 2017) (citations omitted) (explaining that the claim for retaliatory discharge requires an employee to show that he was discharged because he performed an act that public policy authorizes or encourages); *Wills*, 357 P.3d at 456 (explaining that a public employer cannot take action against a public employee because the public employee communicated acts that the public employee believed in good faith constituted an unlawful or improper act).  Lastly, Plaintiff has not demonstrated why the Court of Appeals in *Kakuska* should not have followed the New Mexico Supreme Court's lead in *Garrity* by looking at the context of the communications, including the positions of those making the communications, to determine whether the communication at issue furthered a public interest rather than a private one.

*1-2.  Defendants asserted that Kakuska "was communicating about issues squarely within his written job description, about which he had little personal knowledge and which were personal to his own employment situation, and was communicating to his direct supervisor only, and to no one else" and therefore did not engage in a protected disclosure.  *Id.*  The district court concluded that Kakuska's communications were not protected under the NMWPA and granted Defendants' motion for summary judgment.  *Id.*  On appeal, the court found plaintiff's argument regarding the employee discipline communication was undeveloped and did not address it.  *Id.* at *3.  Relying on *Wills*, the Court of Appeals affirmed the district court as to Kakuska's written communication in response to his negative performance evaluation.[15]  *Id.*  The Court of Appeals then looked to *Garrity* to address Kakuska's contention that his verbal objections with the salary restructuring qualified for protection.  *Id.* at *4.  The court explained that New Mexico case law requires plaintiffs alleging "whistleblowing[ to] show that their actions furthered a public interest rather than a private one" and that "[t]o determine whether a communication furthers public interest rather than a private one, 'courts must determine on a case-by-case basis whether the employee's actions further some singularly public purpose or served primarily to benefit the private interest of the employer or employee.'"  *Kakuska*, 2019 WL 2103358, *4 (citing *Garrity*, 1996-NMSC-032, ¶¶ 15, 24).

    In its application of that standard, the Court of Appeals explained as follows:

> Plaintiff's undisputed job duties required him to advise his employer on compliance with state and federal wage laws and regulations.  These job duties explicitly contemplated Plaintiff providing RISD with the advice Plaintiff now claims is

---

[15] The court cited *Wills* for its holding that whistleblower protection laws do not protect "communications regarding personal personnel grievances that primarily benefit the individual employee."  *Kakuska*, 2019 WL 2103358, at *3 (quoting *Wills*, 2015-NMCA-105, ¶¶ 20-21).  The court explained that once the undisputed facts showed plaintiff's written communication regarding his objections to and disagreements with the employee pay restructuring were made in response to his negative performance evaluation, the burden shifted to plaintiff to prove there was a genuine issue of material fact for trial.  *Id.*  Plaintiff conceded his written communication was in response to the negative performance evaluation.  *Id.*

> protected by the WPA and is the type of communication RISD expected Plaintiff
> to make.  Therefore, it was in Plaintiff's own interest as Assistant Superintendent
> to communicate to the Superintendent his understanding of the relevant wage laws
> as they related to the proposed salary restructuring.  Plaintiff did not make these
> communications to another entity, nor did Plaintiff communicate on the subject
> matter outside of his defined job duties.  Plaintiff failed to show his verbal
> communication was anything other than the exact benefit RISD expected to receive
> by employing Plaintiff.

*Id.*  The Court concluded, therefore, that Kakuska had failed to meet his burden showing there

was a genuine issue of material fact that his verbal communication furthered a public interest and

affirmed the district court's grant of summary judgment as to this verbal communication.  *Id.*

Lastly, the Court of Appeals addressed Kakuska's public policy argument that if his

communications did not merit WPA protection, then all human resource managers *and other*

*similar positions* will always be exempted from the WPA's protections.  *Id.*  The court explained

that established case law requires that any public employee seeking the NMWPA's protection

must show evidence of a communication pertaining to a "matter of public interest and that *the*

*communication is not made primarily for the benefit of the employee, or as part of the*

*employee's normal job responsibilities.*"  *Kakuska*, 2019 WL 2103358, at *4 (citing *Garrity*,

1996-NMSC-032, ¶¶ 15, 24; *Wills*, 2015-NMCA-105, ¶¶ 20-21).  The court stated that the

NMWPA contained no provisions indicating a different standard should be applied in the context

of human resources managers *or those in similar positions*.  *Id.*

Applying the *Kakuska* court's analysis and reasoning here, it is undisputed that Plaintiff's

job description as either the Acting Village Clerk or as Deputy Clerk included her being familiar

with statutes pertaining to the Village Clerk's functions and becoming certified as a clerk within

a reasonable period of time by attending "Clerk Institute."  Doc. 132-2 at 4-5.  It is undisputed

that after Plaintiff was hired as a Deputy Clerk in 2010, Plaintiff attended multiple trainings

regarding government administration, some of which included training on the Anti-Donation

Clause to the New Mexico Constitution and conflict of interest laws governing the conduct of public officials.  Doc. 160 at 5, ¶ 3.  It is undisputed that Plaintiff's job included reporting to the Mayor, who exclusively supervised Plaintiff, and working under the Mayor's direction. Plaintiff's job duties, therefore, contemplated her familiarity with and identification of potential and/or actual violations of laws regarding government administration and reporting them to the Mayor.  Plaintiff's communications to the Mayor regarding Defendant Bruton's conflict of interest and Defendant Garcia's Anti-Donation Clause violation involved just that.  Thus, it was in Plaintiff's own interest and to the benefit of her employer to communicate what she believed to be a conflict of interest and violation of the Anti-Donation Clause.  In other words, Plaintiff was not putting her job security at risk for the benefit of the public, but instead was doing her job.  *See Wills*, 2015-NMCA-105, ¶ 20 (stating that "whistleblower laws are designed to protect employees who risk their own personal job security for the benefit of the public").  Additionally, Plaintiff did not make either of these communications to another entity,[16] nor did she communicate on a subject matter outside of her defined job duties.  In sum, the benefits of Plaintiff's communications, therefore, enured to her employer and to herself, and not the public.

---

[16] Viewing the facts in a light most favorable to Plaintiff and allowing her to benefit from all reasonable inferences, the evidence supports that even if Plaintiff did reach out to a Municipal League attorney on this issue, it is clear from her Affidavit that she did so in the course of her job and for the purpose of "confirming" whether a conflict of interest existed and eliciting instructions on how to proceed.  There is no evidence that it was the purpose of reporting to an outside entity an "unlawful or improper act" for purposes of whistleblowing.  *See generally Velasquez v. Regents of Northern New Mexico College*, 484 P.3d 970, 981 (N.M. Ct. App. 2020) (citing *Reid v. Merit Sys. Prot. Bd.*, 508 F.3d 674, 678 (Fed. Cir. 2007)) (explaining that the mere thought, suggestion, or discussion of an action that someone might consider to be a violation of a law, rule, or regulation is not necessarily a justification for a whistleblower complaint, and that discussion among employees and supervisors concerning various possible courses of action is healthy and normal in any organization and may, in fact, avoid a violation).

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff has failed to create a material factual dispute she made any communications to her employer or a third party that Defendants were taking actions or failing to take actions that she believed in good faith constituted unlawful or improper acts based on their alleged displeasure with and/or criticisms of her job performance.  Plaintiff also has failed to meet her burden of showing there is a genuine issue of material fact that her communications regarding the conflict of interest and Anti-Donation Clause violation were anything other than the exact benefit the Village of Tijeras expected to receive by employing her. Defendants, therefore, are entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Defendants' *Motion for Partial Summary Judgment on Plaintiff's Claim for Violations of the New Mexico Whistleblower Protection Act*, Doc. 132, is **GRANTED**.

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**