# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DIANE KLAUS,**

   **Plaintiff,**

  **vs.**           **Civ. No. 20-1105  JFR/KK**

**VILLAGE OF TIJERAS, JAKE
BRUTON, DON JOHNSON, FELIX
GARCIA and MAXINE WILSON,
in their individual and official capacities,**

   **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER[1]</u>

  **THIS MATTER** is before the Court on Defendants' *Motion for Partial Summary*

*Judgment Against WPA and First Amendment Claims* ("Motion"), filed November 18, 2021.[2]

Doc. 144.  On March 1, 2022, Plaintiff filed a Response.  Doc. 177.  On April 1, 2022,

Defendants filed a Reply.  Doc. 184.  The Court, having considered counsel's arguments, the

record, and the relevant law, FINDS that Defendants' Motion is deemed **MOOT IN PART**[3] and

is not well taken and **DENIED IN PART.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  Docs. 5, 9, 11.

[2] The Motion is brought on behalf of all Defendants; however, Count IV of Plaintiff's Complaint is brought only against Defendant Village of Tijeras.  Doc. 1-1 at 15-16, ¶¶ 100-104.

[3] Filed concurrently with this Memorandum Opinion and Order is the Court's Memorandum Opinion and Order granting Defendants' Motion for Partial Summary Judgment on Plaintiff's Claim for Violations of the New Mexico Whistleblower Protection Act (Doc. 132).  Therein, the Court found that Plaintiff had failed to create a material factual dispute that she made any communications to her employer or a third party that Defendants were taking actions or failing to take actions that she believed in good faith constituted unlawful or improper acts based on their alleged displeasure with and/or criticisms of her job performance.  The Court also found that Plaintiff had failed to meet her burden of showing there is a genuine issue of material fact that her communications regarding the conflict of interest and Anti-Donation Clause violation were anything other than the exact benefit the Village of Tijeras expected to receive by employing her.  Because Plaintiff failed to create a factual dispute regarding any protected communications pursuant to the Whistleblower Protection Act, the Court need not address whether there was a causal connection between the alleged protected disclosures and an adverse employment action.  *DeLopez v. Bernalillo Public Schools*, 558 F. Supp.3d 1129, 1151 (D.N.M. 2021) (citations omitted).

## I. <u>FACTUAL BACKGROUND</u>

The Village of Tijeras ("Village") hired Plaintiff as a Deputy Clerk in October of 2011. Doc. 1-1 at 2, ¶ 10.  Plaintiff successfully completed her probationary period in May of 2012.  *Id.* Plaintiff was classified as a regular, full time hourly employee.  *Id.* at ¶ 11.  From the date Plaintiff was hired until January 3, 2020, Gloria Chavez was the Mayor of the Village and was Plaintiff's direct supervisor ("Mayor Chavez").  *Id.* at ¶ 12.  After January 3, 2020, Defendant Jake Bruton, a former Village Council member, became the Mayor of the Village.  *Id.* at ¶ 13.

Plaintiff alleges that beginning in 2017, Defendants Bruton, Johnson, Garcia and Wilson ("Individual Defendants") were vocal critics and opponents of Mayor Chavez and Plaintiff and initiated a concerted effort to terminate Plaintiff's employment in retaliation for, *inter alia*, her association and affiliation with Mayor Chavez, and for Plaintiff's attempts to enforce Village ordinances and her reporting to third parties in good faith what she believed were violations of state law by Village Councilors, malfeasance by Council members, and gross mismanagement, waste of funds and abuse of authority by Village Councilors.  *Id.* at 4, ¶¶ 24-25.  Plaintiff alleges that Defendants continued their efforts until she was terminated on the recommendation of newly elected Mayor Bruton.  *Id.* at ¶ 26.

## II. <u>SUMMARY JUDGMENT STANDARD</u>

A motion for summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552 (1986); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999); Fed. R. Civ. P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] ... which it believes

demonstrate the absence of a genuine issue of material fact." *Catrett*, 106 S. Ct. at 2552 (internal quotation marks omitted); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). Once the movant meets this burden, the non-moving party is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986); Fed. R. Civ. P. 56(c). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (internal citations omitted); *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016). Only material factual disputes preclude the entry of summary judgment. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

The trial judge is not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson,* 106 S. Ct. at 2512. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 2510. To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 840 (10th Cir. 1997), *cert. denied sub nom. Smith v. Allen*, 522 U.S. 1148 (1998). "'Instead, the movant only bears the initial burden of 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Catrett*). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'" *Catrett*, 106 S. Ct. at 2552 (quoting Fed. R. Civ.

P. 56(e)).  A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat

summary judgment but rather must produce some specific factual support of its claim.  *See*

*Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988);

*Fritzcshe v. Albuquerque Mun. Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002).  "Where

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 106 S. Ct.

1348, 1356 (1986) (citation omitted).  Upon a motion for summary judgment, a court "must view

the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all

reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp.

1277, 1281 (D. Kan. 1997).  If there is no genuine issue of material fact in dispute, then a court

must next determine whether the movant is entitled to judgment in its favor as a matter of law.

*See, e.g., Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

### III.  <u>MATERIAL FACTS</u>

**A.     <u>Acting Clerk</u>**

Plaintiff served as Acting Clerk for the Village of Tijeras from March 2016 through April

2018, when the Village employed no other clerk.  Doc. 144 at 4, ¶ 1; Doc. 177 at 3, ¶ 1.  The job

description for Village Clerk identifies twelve (12) "Major Tasks and Responsibilities," all of

which are clerical and administerial in nature.  Doc. 177 at 7, ¶ 4.  The job description for

Village Clerk does not impose a duty or a requirement on the Village Clerk to report the Mayor's

actions and decisions to the Council.  *Id.*  The Village Clerk's job description provides that the

Village Clerk must report the Village Council's "actions, policies and wishes" to the departments

within the Village administration, which is overseen and controlled by the Mayor.  *Id.*

Mayor Chavez testified that the Village Clerk has an obligation to the Village Council "in an employment way, respect and – yeah in that way," and that she expected her employees to tell her when something was wrong.  Doc. 177 at 6, ¶ 3.  Mayor Chavez testified that she would be the person who would tell the Council if something was wrong and that if she did not do so, the Acting Clerk would not necessarily have an obligation to do so.  *Id.*  Mayor Chavez testified that her staff did not have a duty to respond to the Council, unless specifically asked questions or to get documents, and that Plaintiff worked for her and only indirectly for the Village Council.  *Id.*

As Acting Clerk, Plaintiff was in charge of payroll.[4]  Doc. 144 at 7, ¶ 5g.  Plaintiff's responsibilities with respect to payroll were limited.  Doc. 177 at 11, ¶ 18.  Plaintiff did not have the authority or responsibility to determine payroll deductions.  *Id.*

**B.      Deputy Clerk**

The job description for the Deputy Clerk listed forty-nine (49) responsibilities, all of which are clerical in nature.  Doc. 177 at 7, ¶ 5.  None of those responsibilities create or impose an obligation on the Deputy Clerk to inform the Council about the Mayor's decisions or actions.  Doc. 177 at 7, ¶ 5.

A catchall clause contained in both the Clerk and Deputy Clerk job descriptions states it is the Clerk's responsibility to perform "such other duties consistent with the office of the Clerk and Treasurer as are assigned by the Mayor and/or Governing Body."  Doc. 177 at 7, ¶ 5.

---

[4] Plaintiff admits her cited testimony is paraphrased accurately, but states Defendants' selection of her testimony on her responsibility for payroll matters is "woefully incomplete and misleading."  Doc. 177 at 4, ¶ 4g.

### C.  **Financial Director**

Darlene Coleman was the Financial Director for the Village of Tijeras from June 2017 through November 2019.[5]  Doc. 144 at 4, ¶ 2; Doc. 177 at 3, ¶ 1.  Ms. Coleman's supervisor was Mayor Chavez and Ms. Coleman was subject to the provisions of the Village's Personnel Ordinance governing performance, evaluation and discipline.  Doc. 177 at 10-11, ¶ 14.  During the time the PERA reimbursement checks were issued, Ms. Coleman was responsible for preparing the Village's budget and monthly financial statements and keeping and reconciling Village accounts.  *Id.*  Ms. Coleman testified that she did not understand a lot of the duties of her position and that she struggled with the financial reports.  Doc. 144 at 4-5, ¶ 3; Doc. 177 at 10, ¶ 14.  Ms. Coleman also testified that Plaintiff was "involved a lot in the finance part," would assist her with questions when she needed help, and would prepare quarterly and PERA reports when she was overwhelmed.[6]  Doc. 144 at 4-5, ¶ 3.  Plaintiff provided the Village Council with year-to-date expenditure information that was contained in the financial statements as part of the budget process.  Doc. 144 at 4-5, ¶ 3; Doc. 177 at 3, ¶ 2.  Ms. Coleman testified that in July 2018, Plaintiff directed and assisted her in making payroll adjustments in QuickBooks to reflect the PERA contribution percentage rates determined by Resolution 314.[7]  Doc. 144 at 4-5, ¶ 3.

### D.  **Resolution 191**

Plaintiff did not locate any error in payroll calculations that allegedly led to the issuance of the PERA reimbursement checks.  Doc. 177 at 8, ¶ 8.  Instead, while scanning documents as a

---

[5] Ms. Coleman testified that she had no education and no training for this position and that it was first announced as more of a bookkeeper position.  Doc. 144-10 at 3.

[6] Plaintiff disputes Ms. Coleman's testimony, although she states that she occasionally prepared reports when Ms. Coleman was unable to complete them.  Doc. 177 at 3, ¶ 2; Doc. 177 at 11, ¶ 18.

[7] Plaintiff disputes Ms. Coleman's testimony.  Doc. 177 at 3, ¶ 2.

part of the Village's efforts to computerize its documents, Plaintiff came across a 2006 resolution ("Resolution 191") relating to the Village's decision to "pick up" Village employee PERA contributions.  Doc. 144 at 5, ¶ 5a; Doc. 177 at 3, ¶ 4a; Doc. 177 at 5, ¶ 2.  Plaintiff read Resolution 191 and thought it said the Village would "pick up," and thus pay, all employee PERA contributions on behalf of Village employees.  Doc. 177 at 5-6, ¶ 2.  Plaintiff then asked the Village contract accountant, Theresa Grannemann, to read Resolution 191 and tell her what she thought it said.  Doc. 144 at 6, ¶ 5c; Doc. 177 at 3, ¶ 4c; Doc. 177 at 6, ¶ 2.  Plaintiff then took Resolution 191 to Mayor Chavez and asked her to read it and tell her what she thought it said.  Doc. 177 at 6, ¶ 2.  Plaintiff did not tell either Mayor Chavez or Theresa Grannemann what she thought Resolution 191 said.  *Id.*  Both Mayor Chavez and Theresa Grannemann read Resolution 191 to mean the Village should have been paying all employee PERA contributions on behalf of Village employees.  *Id.*

Then, at the direction of Mayor, Plaintiff spoke and exchanged several emails with the Village attorney, Frank Coppler, about whether reimbursements could be made to employees.  Doc. 144 at 6, ¶ 5d; Doc. 177 at 4, ¶ 4d; Doc. 177 at 6, ¶ 2.  Mr. Coppler advised Plaintiff to "lay it all out" for PERA to decide.  *Id.*  Mr. Coppler also advised Plaintiff that the PERA reimbursement matter should be brought to the Council for its approval.  Doc. 177 at 8, ¶ 7.  Plaintiff agreed this was good advice.  Doc. 144 at 7, ¶ 3; Doc. 177 at 4, ¶ 1.

Plaintiff spoke with a representative from PERA about Resolution 191 and whether reimbursements could be made to employees.  Doc. 144 at 6, ¶ 5d; Doc. 177 at 4, ¶ 4d; Doc. 177 at 6, ¶ 2.  Plaintiff testified she laid out all the facts and discussed with the PERA representative

what percentage of employee contributions the Village could pay on behalf of an employee.[8]
Doc. 144 at 6, ¶ 5d; Doc. 177 at 4, ¶ 4d; Doc. 177 at 8, ¶ 8.  Plaintiff testified the PERA
representative informed Plaintiff that it did not care how the Village did it or made the
allocations in-house and that all it cared about was getting what they required.  Doc. 177 at 8,
¶ 8.  Plaintiff generally could not recall the substance of her telephone calls with PERA.  Doc.
144 at 6, ¶ 5d; Doc. 177 at 4, ¶ 4d.

       Plaintiff testified that neither Mr. Coppler nor the PERA representative voiced any
objections to reimbursing employees for the PERA contributions.  Doc. 177 at 7, ¶ 6.

       **E.      PERA Reimbursement Checks**

       Plaintiff reported to Mayor Chavez what she had been told, including Mr. Coppler's
advice that whether to make the PERA reimbursements should be brought to the Council's
attention.  Doc. 177 at 8, ¶ 7.  The Mayor did not follow Plaintiff's relayed advice from
Mr. Coppler and made the unilateral decisions to issue PERA reimbursement checks and to not
take the matter to the Council for its approval.  Doc. 177 at 6, ¶ 2.  Plaintiff disagreed with
Mayor Chavez but did not voice her concerns.  Doc. 144 at 8, ¶ 1; Doc. 177 at 4, ¶ 1.

       Plaintiff did not have a role in making the decisions whether to issue the PERA
reimbursements checks or whether to take the issue to the Village Council for its approval.  Doc.
177 at 6, ¶ 2; Doc. 177 at 13, ¶ 20.  Plaintiff agrees that if she did have a role in issuing the
PERA reimbursement checks that it would be an improper public act to personally benefit
herself.  Doc. 144 at 8, ¶ 2; Doc. 177 at 4, ¶ 1.  Mayor Chavez understood the basis of the
issuance of the PERA checks.  Doc. 177 at 8, ¶ 8.

---

[8] Defendants assert that all Plaintiff did was confirm that Resolution 191 "was on file," discuss whether the maximum
percentage of employer contribution was either 75% or 100%, and ask if PERA had any opinion on "reallocating
current employee contributions in our system."  Doc. 144 at 6, ¶ 5d.

The PERA reimbursements checks were issued in January 2018 to reimburse Village employees for employee PERA contributions which Mayor Chavez believed the Village had promised to pay on behalf of Village employees pursuant to Resolution 191, but which the Village had not in fact paid.  Doc. 177 at 5, ¶ 1.  At the beginning of 2018, a change was made to the payroll system to address what Mayor Chavez believed was the Village's obligation to pay all employee PERA contributions on behalf of employees.  *Id.*  Ms. Grannemann's role was to help determine what amount should have been paid by the Village on the employees' behalf and to calculate the payroll taxes for the PERA reimbursement checks.  Doc. 144 at 7, ¶ 6; Doc. 177 at 3, ¶ 4h; Doc. 177 at 5, ¶ 1; Doc. 177 at 12, ¶ 20.  Ms. Grannemann never talked with anyone at PERA.  Doc. 144 at 7, ¶ 6; Doc. 177 at 3, ¶ 4h.  Plaintiff did not give anyone directions relating to the issuance of the PERA checks other than telling Ms. Coleman to create the PERA checks.  Doc. 177 at 8, ¶ 8.  Ms. Coleman wrote the checks and also signed them.  Doc. 144 at 6, ¶ 5f; Doc. 177 at 4, ¶ 4f; Doc. 177 at 11, ¶ 17.  Plaintiff and the Mayor signed each other's PERA reimbursement checks.  Doc. 144 at 6, ¶ 5f; Doc. 177 at 4, ¶ 4f, Doc. 177 at 11, ¶ 17.

Ms. Coleman did not tell the Village Council about the issuance of the PERA reimbursement checks.  Doc. 177 at 11, ¶ 14.  No disciplinary action was taken against Ms. Coleman for preparing and signing the checks, or for not bringing the PERA reimbursement checks to the Village Council for its approval.  *Id.*

Plaintiff was aware that Mayor Chavez delayed giving Defendant Bruton his check for over three months after all of the other checks were issued and delivered.  Doc. 144 at 8, ¶ 3; Doc. 177 at 4, ¶ 1.  Mayor Chavez testified the delay was because Defendant Bruton had been "cancelling meetings."  *Id.*

When Defendant Bruton first looked at Resolution 191 in April 2018, he stated "[s]o I think employees, according to this document are well entitled to a check.  We should have been picking that up the entire time.  According to this.  Right?"[9]  Doc. 177 at 8, ¶ 7.

As Acting Clerk, Plaintiff believed her duty was to the Mayor and Village residents and she had no duty or obligations to the Village Council.  Doc. 144 at 8, ¶ 4a; Doc. 177 at 4, ¶ 1. Plaintiff did not go to the Village Council with information about the PERA reimbursement checks because she thought Mayor Chavez was the boss and she was following orders.  Doc. 144 at 8, ¶ 4b; Doc. 177 at 4, ¶ 1.   Plaintiff testified she feared Mayor Chavez would discipline her if she went to the Village Council about the PERA reimbursement checks and that Plaintiff "liked her job and wanted to keep it."  Doc. 144 at 8-9, ¶ 4c; Doc. 177 at 4, ¶ 1.  Mayor Chavez testified she would not have disciplined Plaintiff for doing so.  Doc. 144 at 8-9, ¶ 4c; Doc. 177 at 4, ¶ 1.

### F.   OSA Forensic Report

In the spring of 2018, the Office of the State Auditor ("OSA") received "communications through its special investigations intake process from a concerned Senator, the media and from Village council members expressing concerns about the Village of Tijeras' issuance of refunds to employees of alleged overpayments of PERA deductions."[10]  Doc. 144 at 3, ¶ 2.  Defendant Bruton was the first person to call the OSA about the issuance of the PERA reimbursement checks.  Doc. 177 at 9, ¶ 12.  Defendant Wilson told the OSA that Plaintiff had decided to issue the PERA reimbursement checks, to not bring the matter to the Village Council, and to not seek the Village Council's approval.  Doc. 177 at 9-10, ¶ 12.  The purpose of the special audit was to

---

[9] Defendant Bruton testified that he made this statement "at first blush" and then "clearly read it somewhat different because [he] started questioning it and trying to determine whether it was valid or not."  Doc. 177-6 at 6.

[10] Plaintiff does not dispute the accuracy of what the Forensic Report states, but asserts that Defendant Bruton was the first person to call OSA regarding the PERA reimbursement checks and "instigated" the OSA's audit.  Doc. 177 at 2, ¶ 2.

determine if certain PERA reimbursement checks issued by the Village on January 8, 2018, totaling $64,423.65 delivered to thirteen Village employees and officials, including $10,624.55 to Plaintiff and $6,745.91 to Mayor Chavez, were proper and in accordance with state law.[11] Doc. 144 at 3, ¶ 3.

Melissa Santistevan, Special Investigations Division Director of the OSA extensively participated in the formal audit.  Doc. 144 at 3, ¶ 4.  A true and correct copy of a formal Forensic Report dated June 4, 2018, regarding its "Special Audit of the Village's PERA and payroll records from January 1, 2006, through May 5, 2018," ("Forensic Report") is attached to the Affidavit of Melissa Santistevan as Exhibit A.  Doc. 144 at 3, ¶ 1, Doc. 177 at 2, ¶ 1. Ms. Santistevan prepared or approved all of the facts and opinions in the Forensic Report. Doc. 144 at 3, ¶ 4.

In preparing the Forensic Report, Ms. Santistevan relied in part on a letter from PERA Deputy Executive Director Greg Trujillo.  Doc. 144 at 3-4, ¶ 4.  Mr. Trujillo's letter referenced and relied upon a 2013 Village Resolution No. 314 ("Resolution 314").  *Id.*  Ms. Santistevan separately reviewed Resolution 314.  *Id.*  The Forensic Report concluded that Resolution 314 reflected the proper PERA contribution rates for Village employees, and that a previous 2006 Resolution No. 193 was never implemented with respect to any PERA contributions.  Doc. 144 at 4, ¶ 5.

Plaintiff testified she was aware of Resolution 314 and never mentioned this resolution in her conversations with Ms. Grannemann, Mayor Chavez, or the PERA representative.  Doc. 144 at 6, ¶ 5e; Doc. 177 at 4, ¶ 4e.  Village Resolution 314 concerned the Village's agreement to

---

[11] "In the course of the special audit, additional findings were uncovered which are set forth in the audit report."  Doc. 144-2 at 2.

increase the amount of PERA deductions in order to comply with a change in State law intended to shore up the PERA retirement fund.  Doc. 177 at 11, ¶ 16.  Plaintiff did not mention Resolution 314 in her discussions with PERA about the issuance of PERA reimbursement checks because she was directed by Mayor Chavez to seek out PERA's position on the propriety of issuing PERA reimbursement checks and Plaintiff did not believe Resolution 314 was relevant to the issuance of the PERA checks.  *Id.*

The Forensic Report concluded that the PERA contributions were not supposed to have been paid by the Village under Resolution 191 and that the PERA reimbursements checks should not have been issued.  Doc. 177 at 5, ¶ 1. The Forensic Report included a determination that the $64,423.65 in payments were improper and not supported by the Village's historical payroll documentation and that this amount included overpayment of $10,624.55 to Plaintiff .  Doc. 144 at 3, ¶ 3.  The Forensic Report concluded that whether to issue the PERA reimbursement checks should have been submitted to the Village Council for approval.  Doc. 144 at 7, ¶1; Doc. 177 at 4, ¶ 1.  The Forensic Report concluded that the failure to present and seek approval from the Village Council to issue the PERA reimbursement checks resulted in a potential violation of the Governmental Conduct Act.[12]  *Id.*  The Forensic Report states that Mayor Chavez made an "executive decision" to issue the PERA reimbursement checks without taking the issue before the Village Council.  Doc. 177 at 10, ¶ 13; Doc. 177 at 12, ¶ 20.  Plaintiff agrees with the OSA's conclusion that issuance of the PERA reimbursement checks required Village Council approval.  Doc. 144 at 7, ¶1; Doc. 177 at 4, ¶ 1.

---

[12] The Forensic Report stated that "[a]n apparent lack of oversight at the Village and inadequate internal controls over financial transactions" and "[i]nsufficient supervision and/or employee's failure to understand policy, laws, rules, and regulations" resulted in "[n]on-compliance with the Village's policies and procedures and states statutes.  The Mayor and the Acting Village Clerk have improperly received public funds through their own acts, and without approval of the legislative body."  Doc. 144-2 at 12-13.

Ms. Santistevan concluded that Plaintiff "played an instrumental role in locating an alleged error in the payroll records that resulted in the improper issuance of these checks."[13] Doc. 144 at 5, ¶ 4.  Plaintiff admits that but for her "finding" Resolution 191, the PERA reimbursement checks would not have been issued.  Doc. 144 at 5, ¶ 5b; Doc. 177 at 3, ¶4b. Ms. Santistevan attested that she did not encounter any other Village employees who understood the purported basis for the PERA reimbursements other than Mayor Chavez, Plaintiff, and Ms. Grannemann.  Doc. 144 at 5, ¶ 4.

Expert Witness Jack Emmons testified that the official action Plaintiff took to enhance her personal financial interest was related to miscalculating the amount of the PERA reimbursements and that the OSA was "led to believe that she had a hand in calculating the $10,000 refund to her."  Doc. 177 at 12, ¶ 20.  Mr. Emmons also testified that Plaintiff took official action by incorrectly preparing overpayments to the Mayor and herself and that neither of the checks were approved by the Village Council.  Doc. 177 at 12-13, ¶ 20.

G.     **Plaintiff's Termination**

In September 2017, Defendants began a two-and-a-half-years long series of efforts to terminate Plaintiff's employment.  Doc. 177 at 8, ¶ 9.  Initially, Defendants contended Plaintiff's termination was justified because she was allegedly rude and confrontational to people doing business with the Village, was retaliatory against her co-workers, and because she engaged in allegedly improper acts such as changing a person's water rights application without notice and evicting a citizen from the Senior Center without authority.[14]  Doc. 177 at 8-9, ¶ 9.  When

---

[13] Plaintiff asserts that sworn testimony supports that it was Mayor Chavez's decision's to issue the PERA checks without first advising or obtaining the approval of Village Council.  Doc. 177 at 3, ¶ 3.

[14] Plaintiff asserts that Defendants used a complaint from Floy Watson to support their contention that Plaintiff was a terrible employee.  Doc. 177 at 12, ¶ 19.  The complaint alleged that Plaintiff had improperly called the police on Ms. Watson and had her removed from the Village's Senior Center.  *Id.*  Plaintiff asserts that Defendants knew this

Defendants' attempt to terminate Plaintiff failed, Defendants then claimed that Plaintiff needed to be terminated because the Village Council had not approved her return to the position of Deputy Clerk after a brief stint as the Village's Finance Director.  Doc. 177 at 9, ¶ 9.

Defendants received the Forensic Report in June 2018.  Doc. 177 at 10, ¶ 13.  Defendant Johnson testified he did not believe the Forensic Report's conclusions regarding Mayor Chavez making the "executive decision" to issue the PERA reimbursement checks and to not go before the Village Council because, in his opinion, the decision to issue the checks and to not advise or seek approval of the Village Council was "a group effort on both their parts, Diane Klaus and the Mayor." *Id.*  Defendant Wilson testified that he dismissed the Forensic Report's statements on this issue because he believed Mayor Chavez's statements to the OSA were her opinions.  *Id.*

A year or so later after receiving the Forensic Report, Defendants agreed Plaintiff should be given a more than fifty percent raise.  Doc. 177 at 10, ¶ 13.

On March 10, 2020, Defendant Bruton gave Plaintiff a Notice of Personnel Action: Recommendation to Terminate Employment, signed by himself as newly-elected Mayor and by Village Clerk Michael Wismer.  Doc. 177 at 9, ¶ 10.  The Notice of Personnel Action advised Plaintiff that she was being terminated as a salaried employee and that there was also cause for her termination.  *Id.*  The Notice of Personnel Action included concerns about the PERA reimbursement checks.  Doc. 144 at 10, ¶ 4; Doc. 177 at 5, ¶ 4.  The Notice of Personnel Action also included concerns regarding reimbursements the Village made to Plaintiff for personal purchases and car repairs.  Doc. 144-14 at 3.

_____

complaint was baseless because the decision to call the police to remove Ms.  Watson had been made by Defendants at a prior Council meeting.  *Id.*

Prior to Defendant Bruton issuing the Notice of Personnel Action, the Village auditors refuted the Forensic Report findings that Plaintiff had been improperly reimbursed for car repair expenses or that she had used Village funds to make personal purchases.  Doc. 177 at 9, ¶ 11.

The Village Council terminated Plaintiff effective April 15, 2020, for the reasons stated in its Final Decision.  Doc. 144 at 9, ¶ 1; Doc. 177 at 4, ¶ 1.  A copy of the Final Decision is attached as Exhibit G to Defendants' Motion.  144 at 9, ¶ 3; Doc. 177 at 5, ¶ 2.  The Final Decision included the following findings regarding the PERA reimbursement checks:

> a.  . . . [Mayor] Chavez and Klaus continued their practice of hiding information from the Council by neglecting their duty to provide the council with information regarding unbudgeted expenditures, namely the January 5, 2018 unlawful PERA expenditure of $64,523.65, including $10,752.58 paid Klaus and $8,707.99 paid Chavez, done without prior budget authority, which is in violation of § 3-12-3A NMSA 1978 and the Governmental Conduct Act, § 10-16-3(A-B) . . . [15]

> b.  The checks were cosigned by Klaus ostensibly under the authority of VOT resolution 2006-191 and despite contrary advice by the Village Attorney that said resolution was a cafeteria plan resolution, and was not relevant to issues surrounding potential PERA [reimbursements] and that before any checks were issued, PERA must approve and the Council must be advised.[16]

> c.  Together Chavez and Klaus signed the illegal PERA payments without informing the Council that the amounts were not budgeted in the Council's approved budget, or that a budget adjustment resolution would be necessary and failed to inform the Council of the issuance of the checks depriving the Council of its opportunity to exercise its lawful authority to approve and have lawful oversight over Village finances as required by NMSA 1978, § 3-12-3A also depriving the public of its right to notice and opportunity to attend the council meeting to discuss the issuance of the checks . . . [17]

---

[15] Plaintiff does not dispute that the language from the Council's Final Decision is accurately quoted, but asserts that this finding of fact is not supported by the evidence presented in Defendants' Motion or presented at Plaintiff's termination hearing.  Doc. 177 at 5, ¶ 2.

[16] Plaintiff does not dispute that the language from the Council's Final Decision is accurately quoted, but asserts that this finding of fact is not supported by the evidence presented in Defendants' Motion or presented at Plaintiff's termination hearing.  Doc. 177 at 5, ¶ 2.

[17] Plaintiff does not dispute that the language from the Council's Final Decision is accurately quoted, but asserts that this finding of fact is not supported by the evidence presented in Defendants' Motion or presented at Plaintiff's termination hearing.  Doc. 177 at 5, ¶ 2.

d.  The checks issued January 5, 2018, were not payroll checks, there was no withholding, those checks had to have been payment for services outside the employee payroll thus they constituted payments falling within Klaus' responsibilities as "procurement person" in the job description.[18]

e.  Upon the election of Mayor Bruton in November 2019, and the subsequent appointment of Michael Wismer as Village Clerk, Mr. Wismer was instructed to do an accounting of all Village personnel and property.[19]

f.  During Mr. Wismer's accounting of Village personnel and property, Mr. Wismer, in his capacity as Clerk, upon review of documentation related to the illegal PERA payments and his personal observations did reach a determination that there was cause for termination and a recommendation to Mayor Bruton that Klaus be terminated and was in the best interests of the Village.[20]

Doc. 144 at 9-10, ¶¶ 3a-f; Doc. 177 at 5, ¶¶ 2-4.

Section 11 of the Village Personnel Ordinance provides that "[e]mployees may be dismissed for unsatisfactory performance, misconduct or other reasons deemed appropriate by the Village."  Doc. 144 at 10, ¶ 5; Doc. 177 at 5, ¶ 4.  The Village Personnel Ordinance provides that only the Village Council could fire Plaintiff after a recommendation by the Mayor.  Doc. 144 at 8-9, ¶ 4c; Doc. 177 at 4, ¶ 1.

None of the other Village employees who received and cashed PERA reimbursements checks and who had not refunded the money to the Village had disciplinary action taken against them.  Doc. 177 at 9, ¶ 11.

As of September 2021, Plaintiff had reimbursed the Village for the PERA reimbursement payment she received.  Doc. 177 at 11, ¶ 15.

---

[18] Plaintiff disputes.  Doc. 177 at 5, ¶ 3.

[19] Plaintiff does not dispute.  Doc. 177 at 5, ¶ 4.

[20] Plaintiff does not dispute.  Doc. 177 at 5, ¶ 4.

## IV.  ARGUMENTS

### A.      Defendants' Motion

Defendants argue that the Court should grant summary judgment for all Defendants against Plaintiff's First Amendment claim because her admitted involvement in the improper PERA reimbursement checks is an affirmative defense as a matter of law.  Doc. 144 at 12-15. Defendants argue that whether as part of a qualified immunity analysis against the individual Defendants, or as part of a more "generic" summary judgment motion by the Village, Plaintiff bears the burden to show a violation of the First Amendment.[21]  *Id.*  Defendants argue Plaintiff also bears the burden of showing that her alleged political association was a "substantial motivating factor" in Defendants' decision to terminate her.  *Id.*  If able to do so, Defendants argue they may yet prevail by way of affirmative defense if they can provide by a preponderance of the evidence that they would have reached the same adverse employment decision even in the absence of the alleged protected conduct.  *Id.*

Here, Defendants argue that the undisputed material facts establish that Plaintiff played a large role in the entire process leading to the issuance of the improper PERA reimbursement checks; that the issuance of the checks indisputably required Village Council approval; and that Plaintiff should have informed the Village Council and failed to do so.  *Id.*  Defendants argue that it is undisputed that the Village terminated Plaintiff for these reasons.  *Id.*  Defendants further argue (1) that the Village Council relied on neutral determinations of the OSA in making its employment decision which are directly supported by Plaintiff and former Mayor Chavez's deposition testimony; (2) that no reasonable employer should retain an employee who flouted

---

[21] The individual Defendants have brought a separate Motion for Partial Summary Judgment on Count V (Contracts Clause Rights) and Count VI (First Amendment Political Association) on grounds of qualified immunity.  Doc. 125.

internal controls for their significant gain; (3) that the gravity and scope of Plaintiff's misconduct, which involved over ten thousand dollars of personal improper gain and warranted a recommendation by the OSA of violations of Governmental Conduct Act, argue in favor of Defendants' affirmative defense; and (4) that Plaintiff's actions fall within the scope of "unsatisfactory performance, misconduct or other reasons deemed appropriate by the Village" as grounds for termination in the Village Personnel Ordinance.  *Id.*

For these reasons, Defendants assert that a reasonable factfinder presented with these incontrovertible facts could only conclude that a preponderance of the evidence supports that the Village Council would have terminated Plaintiff even in the absence of Plaintiff's alleged protected conduct, *i.e.,* her political association with Mayor Chavez.  *Id.*  Defendants further assert that as a matter of law no reasonable factfinder could conclude that Plaintiff's political association with former Mayor Chavez was a substantial motivating factor in her termination and it would be "arbitrary and require rampant speculation to so decide in Plaintiff's favor."  *Id.*

## B.   **Plaintiff's Response**

Plaintiff contends that disputed issues of material fact exist whether Plaintiff played a large or instrumental role in the issuance of the PERA reimbursement checks without the Village Council's knowledge or approval.  Doc. 177 at 13-15.  Plaintiff contends that the undisputed material facts establish that her role was limited and she played no role at all in making the decisions to (1) issue the checks; (2) not tell the Village Council about issuing the checks; and (3) not obtain the Village Council's approval.  *Id.*  Plaintiff contends her limited role involved coming across Resolution 191 while scanning documents, reading it, asking the Village's contract accountant to read it, and then bringing it to the Mayor's attention.  Doc. 177 at 13-14. Plaintiff then, at the direction of Mayor Chavez, spoke to the Village attorney and a PERA

representative about it and inquired whether payments could be made to employees.  Doc. 177 at

14. Thereafter, Plaintiff contends that it was Mayor Chavez who made the unilateral decision to

issue the PERA reimbursement checks and to not take the matter to the Council for approval.  *Id.*

Plaintiff contends that disputed issues of material fact exist whether Plaintiff had a duty

to report Mayor Chavez's actions and decision relating to the PERA reimbursements checks to

the Village Council.  Doc. 177 at 15-19.  Plaintiff contends that the evidence supports she

worked for and was directly supervised by the Mayor.  *Id.*  She contends that none of the duties

described in either the Village Clerk or Deputy Clerk job descriptions create or impose a duty to

inform the Council about the Mayor's decisions or actions, and that the State statute defining the

responsibilities of municipal clerks does not impose any such obligation.  *Id.*  Plaintiff contends

that the evidence supports her only obligations to the Council involved answering questions and

providing documents if requested.  *Id.*

Plaintiff contends that there is no evidence that she knew or thought something was

wrong with the issuance of the PERA reimbursements checks that would have triggered any

alleged obligation to tell the Council that "something was wrong."  *Id.*  Plaintiff contends that

she relayed Mr. Coppler's advice to Mayor Chavez that the matter should be brought before the

Council, but that once Mayor Chavez made her decision not to she had no authority to override

Mayor Chavez's decision.  *Id.*

Plaintiff contends that Melisa Santistevan's Affidavit does not support the assertion that

Plaintiff played an instrumental role in the issuance of the PERA reimbursement checks.  Doc.

177 at 19-21.  In her Affidavit, Ms. Santistevan states only that "the then Acting Clerk, Diane

Klaus, played an instrumental role in locating an alleged error in payroll records that resulted in

the improper issue of [the PERA reimbursement] checks,"[22] and offers no indication of what facts she relied upon in reaching this conclusion.  *Id.*  Plaintiff asserts that Ms. Santistevan's conclusion is contrary to the sworn testimony of the only individuals involved in the events leading to Mayor Chavez's decision to issue the checks without telling or obtaining the approval of the Village Council, *i.e.,* Plaintiff, Theresa Grannemann and Mayor Chavez, that Plaintiff's involvement was limited.  *Id.*

Plaintiff contends that the Forensic Report does not support the assertion Plaintiff played an instrumental role in the issuance of the PERA checks or engaged in misconduct.  Doc. 177 at 21-24.   Plaintiff contends that the Forensic Report indicates she received a check, may have violated criminal provisions of the Governmental Conduct Act by receiving a check, may have violated the Anti-Donation Clause of the New Mexico Constitution by receiving a check, may have violated the Anti-Donation Clause by receiving reimbursement from the Village for car repair expenses, and may have violated the Anti-Donation Clause by using Village funds to purchase certain personal items.  *Id.*  Plaintiff contends that none of these references demonstrate she was instrumental in the issuance of the PERA reimbursement checks.  *Id.*

Plaintiff contends that the facts show that her actions taken with respect to the issuance of the checks do not and cannot evidence any official actions.  *Id.*  Plaintiff reiterates that other than finding Resolution 191, all actions taken to issue the PERA reimbursement checks were done so at the direction of Mayor Chavez and that the Forensic Report specifically states that Mayor Chavez made the decision to issue the checks without telling Council or obtaining its approval. *Id.*

---

[22] Plaintiff notes that she [Plaintiff] did not find any "error in payroll records" and instead found Resolution 191. Doc. 177 at 19, fn. 7.  Plaintiff assumes Ms. Santistevan's affidavit refers to Resolution 191.  *Id.*

Finally, Plaintiff contends that the credibility of Defendants' current, proffered justification for Plaintiff's termination and whether the justification is pretextual are in dispute. Doc. 177 at 24-29.  Plaintiff asserts that Defendants' current alleged justification for firing her is different from prior justifications which began two-and-a-half years before.  *Id.*  Plaintiff contends that Defendants first attempted to terminate her in 2017 for various work-related behaviors and that their efforts failed.  *Id.*  Then Defendants claimed that Plaintiff needed to be terminated because the Village Council had not approved her return to the position of Deputy Clerk after a brief stint as the Village's Finance Director.  *Id.*  Then, after Defendant Bruton was elected as mayor, Defendants advanced yet another justification for Plaintiff's termination as outlined in the March 2020 Notice of Personnel Action.  *Id.*  Yet Plaintiff has shown that many of the justifications for her termination as described therein were baseless and inconsistent.  *Id.*

In addition, Plaintiff asserts that Defendants received the Forensic Report in June 2018, yet agreed one year later to give Plaintiff a fifty percent raise.  *Id.*  Thus, Plaintiff contends that Defendants' granting of a large raise while knowing of her alleged involvement in the PERA reimbursement checks is wholly inconsistent with their justification for the adverse employment action and creates disputed issues of material fact whether Defendants' justification is a pretext.

Last, Plaintiff asserts that the credibility of Defendants' justification for the adverse employment action is questionable because (1) Defendant Johnson testified not believing the Forensic Report with respect to Mayor Chavez's "executive decision"; (2) Defendant Wilson testified dismissing the Forensic Report believing Mayor Chavez's statement regarding her "executive decision" was just an opinion; and (3) Darlene Coleman knew about, signed the PERA reimbursement checks, and did not tell the Village Council about the PERA reimbursement checks before doing so, yet no disciplinary action was taken against her.  *Id.*

Based on the foregoing, Plaintiff asserts that she has created disputed issues of material fact regarding the credibility of the Defendants' justification for their adverse employment action. *Id.*

### C.   Defendants' Reply

Defendants contend that Plaintiff has conceded that the checks should not have been issued and that the issuance of the checks should not have been hidden from the Village Council. Doc. 184 at 1-6. Defendants contend that Plaintiff's Response misrepresents the evidence before the Court regarding her involvement with the improper checks. Doc. 184 at 6-7. Defendants contend that Plaintiff lacks any grounds to challenge the personal knowledge of Ms. Santistevan. Doc. 184 at 7-8. Defendants contend that Plaintiff was instrumental in the entire process leading to the issuance of the improper checks. Doc. 184 at 8-10. Defendants contend that there is no genuine issue of material fact suggesting that the Village's reliance on the check "scandal" for termination was pretextual. Doc. 184 at 10-11. Finally, Defendants contend they are entitled to summary judgment against Plaintiff's First Amendment claim because her response fails to offer any evidence whatsoever that she was terminated for political association with Mayor Chavez. Doc. 184 at 12

### IV.  ANALYSIS

"The First Amendment protects public employees from discrimination based upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." *Mason v. Okla. Tpk. Auth.*, 115 F.3d 1442, 1451 (10th Cir. 1997) (citing *Rutan v. Republic Party of Ill.*, 497 U.S. 62, 68-69, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) ("First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not

associate.")).  For First Amendment purposes, "there [is] no meaningful distinction . . . between

nonpartisan political alignment and membership in a political party." *Bass v. Richards*, 308 F.3d

1081, 1091 (10th Cir. 2002) (citing *Green v. Henley*, 924 F.2d 185, 187 (10th Cir. 1991)).

      In cases of retaliation or discrimination based on political affiliation, courts apply the test

developed in *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v.*

*Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980).  *See Jantzen v. Hawkins,* 188 F.3d

1247, 1251 (10th Cir. 1999).  The *Elrod/Branti* framework provides a two-part inquiry.  *See*

*Trujillo v. Huerfano Cnty. Bd. of Cnty. Comm'rs*, 349 F. App'x 355, 359-60 (10th Cir. 2009).

"To survive summary judgment, an employee needs to show a genuine dispute of fact that

(1) political affiliation and/or beliefs were 'substantial' or 'motivating' factors in h[er] demotion,

and (2) h[er] position did not require political allegiance."[23] [24] *Poindexter v. Bd. of Cnty.*

*Comm'rs*, 548 F.3d 916, 919 (10th Cir. 2008) (internal quotation marks omitted).  Once a

plaintiff proves that her political affiliation was a substantial or motivating factor behind her

termination, the burden of persuasion shifts to the defendant to prove, as an affirmative defense,

---

[23] A "substantial" factor is the same as a "motivating" factor, for purposes of the element of § 1983 retaliation claim under the First Amendment requiring a plaintiff to show that the plaintiff's political association was a substantial motivating factor for the decision to terminate public employment.  *Walton v. New Mexico State Land Office*, 2016 WL 9021835, *12 (D.N.M. Dec. 31, 2016).

[24] Plaintiff's Complaint alleges, *inter alia*, that (1) Plaintiff was not a policymaking official with or for the Village of Tijeras; and (2) Plaintiff's political loyalty or affiliation was not an appropriate requirement for the effective performance of the Plaintiff's duties as Deputy Clerk.  Doc. 1-1 at 18, ¶¶ 114, 115.  Defendants bear the burden of proof on the issue of whether party affiliation and support is an appropriate requirement for the effective performance of the public office.  *See Dickeson v. Quarberg*, 844 F.2d 1435, 1441 (10th Cir. 1988) (explaining that after *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), the issue whether an employee was in a confidential or policymaking position is not controlling and that the ultimate question is whether "party affiliation is an appropriate requirement for the effective performance of the public office involved," which is defendant's burden of proof).  Defendants fail to address this issue at all in their briefing on this Motion or to incorporate their arguments on this issue found in their *Motion for Partial Summary Judgment on All Federal Claims* (Doc. 125).  That aside, in its Memorandum Opinion and Order deferring in part and denying in part Defendants' *Motion for Partial Summary Judgment on All Federal Claims* filed concurrently herewith, the Court has found that Defendants failed to meet their burden of proving that political loyalty is an appropriate requirement for the effective performance of the Deputy Clerk position.

that the discharge would have occurred regardless of any discriminatory political motivation. *Gann v. Cline*, 519 F.3d 1090, 1092-93 (10th Cir. 2008) (citing *Mason*, 115 F.3d at 1452).  A defendant seeking to prevail at summary judgment must show a reasonable factfinder either would have to reject the plaintiff's claim on the merits or accept its affirmative defense.  *Walton v. Powell*, 821 F.3d 1204, 1211 (10th Cir. 2016) (citing *McCue v. Bradstreet*, 807 F.3d 334, 344-47 (1st Cir. 2015) (applying *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

Plaintiff's First Amendment claim is brought pursuant to 42 U.S.C. § 1983.[25]  In Count VI of her Complaint, Plaintiff alleges (1) that she was not a policy making official with or for the Village of Tijeras and (2) that her political loyalty or affiliation was not an appropriate requirement for the effective performance of her duties as Deputy Clerk.  Doc. 1-1 at 18, ¶¶ 114, 115.  She further alleges (1) that she was a supporter of and closely associated with Mayor Chavez, who opposed the Individual Defendants on a number of issues related to Village governance; (2) that Plaintiff's political association with Mayor Chavez was a substantial and motivating factor behind Defendants' termination of her; and (3) that Defendants' proffered reasons for her termination are pretextual.  *Id.* at ¶¶ 116-118.

A.   **Substantial or Motivating Factor**

Defendants' Motion seeks summary judgment on its affirmative defense that their discharge of Plaintiff would have occurred regardless of any discriminatory political motivation. Before consideration of Defendants' affirmative defense, however, the Court must first

---

[25] That statute provides: "Every person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress . . . ."  42 U.S.C. § 1983.

determine whether Plaintiff has shown a genuine dispute of fact that her political affiliation and/or beliefs were substantial or motivating factors in her termination. *Poindexter*, 548 F.3d at 919. Defendants argue in their Reply that Plaintiff's Response is "completely devoid of any summary judgment evidence that the Council was motivated by her political association with the former Mayor." Doc. 184 at 12. Defendants further argue that Plaintiff has failed to demonstrate that Defendants' prior attempts to terminate her reflected political animus as opposed to personal animus, that she has failed to submit any evidence by any Council members indicating political animus, or even that the political parties of the Village Council members differ from Plaintiff's. *Id.* The Court is not persuaded.

To begin, the Individual Defendants' prior attempts to terminate Plaintiff are not relevant to whether or not Plaintiff's political affiliation and/or beliefs were a substantial or motivating factor in her ultimate termination. Additionally, the right to political affiliation does not extend solely to the right to affiliate with a specific political party or ideology, but also includes the right to associate with a particular political figure. *Walton v. New Mexico State Land Office*, 49 F.Supp.3d 920, 984 (D.N.M. 2014) (citing *Dickeson v. Quarberg*, 844 F.2d 1435, 1445 (10th Cir. 1988) and *Laidley v. McClain*, 914 F.2d 1386, 1393 (10th Cir. 1990)). The question, therefore, is whether Plaintiff's affiliation with Mayor Chavez – a publicly elected political figure and Defendant Bruton's predecessor – was a substantial or motivating factor in newly elected Mayor Bruton and the Village Council's decision to terminate Plaintiff's position. If so, she would have suffered a constitutional violation.

Viewing the evidence in a light most favorable to Plaintiff, the Court finds that Plaintiff has produced sufficient evidence to show genuine disputed material facts for a reasonable jury to conclude that she was terminated because of her political affiliation with Mayor Chavez in

violation of her First Amendment rights.  Here, it is undisputed that from the date Plaintiff was

hired until January 3, 2020, Gloria Chavez was the Mayor of the Village of Tijeras and was

Plaintiff's direct supervisor.  It is also undisputed that the Individual Defendants were members

of the Village Council for some numbers of years while Plaintiff worked for the Village of

Tijeras and prior to Plaintiff's termination.  Plaintiff has presented evidence that in her positions

as Acting Clerk and Deputy Clerk she worked for Mayor Chavez and only indirectly for the

Village Council, *i.e.,* to answer questions and get documents if requested.  Mayor Chavez

testified that she would be the person to tell the Council if something was wrong and that

Plaintiff as Acting Clerk would not necessarily have an obligation to do so.

In June 2018, the Village Council received the Forensic Report related to, *inter alia,* the

issuance of the PERA reimbursement checks.  The Forensic Report, attached to Defendants'

Motion, made certain findings as follows:

> Since the fall of 2017, the Village Council and the Mayor [had] been at odds with
> each other regarding the operation of the Village, and the employment of the Acting
> Village Clerk [Plaintiff].   In January 2018, the Village Council terminated the
> Acting Village Clerk.   The Mayor refused to recognize that termination and has
> continued to employ the person who is the subject of the dispute.  The Mayor and
> Village Council have both stated that they intend to litigate the issue regarding that
> person's employment.

Doc 144-2 at 8.[26]  The Forensic Report also found:

> With regard to the primary audit of the PERA refunds, *the Village Mayor did not
> submit the reimbursements to the Village Council for approval, and failed to
> maintain adequate supporting documentation to support all payroll disbursements
> and related payroll reimbursements of the Village.*
>
> . . .

---

[26] On April 20, 2018, the individual Defendants filed a Petition for Writ of Mandamus seeking to force then Mayor
Chavez to terminate Plaintiff.  Doc. 131 at 8, ¶ 17.  On June 29, 2018, District Court Judge Shannon Bacon issued an
*Order Quashing Alternative Writ of Mandamus* in which she stated, *inter alia,* that "[t]he authority to discharge an
employee is provided only to the mayor and not to the council under sections 1, 2, and 16 of the Ordinance No. 157,
the village's personnel ordinance."  Doc. 126-17.

The OSA identified two possible violations of the Governmental Conduct Act. First, the Village's Mayor made an *"executive" decision* to issue checks to current employees for an alleged payroll calculation error regarding the PERA deduction that had not been brought before the Council. . . . The *Mayor*, in an interview with OSA, indicated that she had *made the decision* to reimburse the monies without taking the issue before the Village Council because the Council had been "postponing" agenda items and she did not believe the Council would take action on the reimbursements. . . .

. . .

The Mayor will publicly apologize to staff and the residents for taking *unilateral* action based on misinformation and bad communication that impacted the lives and finances of so many employees and the financial standings of the Village along with the misuse of public monies.

. . .

The Village finance administrators, *acting under the direction of the Mayor*, improperly calculated the PERA reimbursements by referring only to PERA records and failing to review the Village's own payroll records. *The Mayor then made the decision* to issue the checks to employees and officials without requesting or obtaining the approval of the Village Council.

Doc. 144-2 at 6, 10, 12, 14, 15, 20 (emphasis added).  Mayor Chavez provided similar deposition testimony that she made the decision to issue the PERA reimbursement checks and to not bring it to the Village Council and that Plaintiff did not have any role in making those decisions.  Doc. 177-3 at 5-7.

Defendant Bruton testified that he did not agree with the Forensic Report findings that Mayor Chavez made an executive decision to issue the checks and not bring them to the Village Council's attention and instead believed "it was a collaboration between Gloria Chavez and Diane Klaus."  Doc. 165-2 at 5.  Defendant Bruton also testified that he believed it was both

Mayor Chavez and Plaintiff who agreed to withhold giving him his check until April.[27]  Doc. 177-6 at 5.

Defendant Johnson testified that he did not believe Mayor Chavez made an executive decision to issue the checks and not bring it to the Village Council's attention and instead believed that "it was a group effort on both their parts, Diane Klaus and the mayor."  Doc. 165-6 at 2.  Defendant Johnson testified that he did not believe that Mayor Chavez had made the decision to reimburse the monies without taking the issue before the Village Council because the Council had been "postponing" agenda items and that she used that as an excuse.  Doc. 177-6 at 4.  Defendant Johnson also testified that the Village Council took disciplinary action against Plaintiff for the PERA reimbursement checks, and not Darlene Coleman, because "Ms. Klaus was in charge of the building and that's where I knew the responsibility landed and that's why that happened."  *Id.*

Defendant Wilson testified that she thought Mayor Chavez's statement to the OSA that she made the decision to reimburse the monies without taking the issue before the Village Council was Mayor Chavez's "opinion."  Doc. 165-3 at 4.

It is undisputed that Mayor Chavez and Defendant Bruton became political opponents in 2019 during the Village of Tijeras mayoral election.  Mayor Chavez testified that Defendant Bruton raised the PERA reimbursement checks as a campaign issue.  It is undisputed that Defendant Burton won the election and took office on or about January 8, 2020.  It is undisputed on March 10, 2020, approximately two months after taking office, that Defendant Bruton, as the newly elected mayor, and Michael Wismer, as the new Village Clerk, recommended Plaintiff's

---

[27] Mayor Chavez testified that she made the decision not to give Defendant Bruton his check because "at that time, meetings were being canceled.  There was just chaos, and I made the decision of when to give it to him."  Doc. 177-3 at 10.

termination based in large part on her failure to advise the Council regarding the issuance of the PERA reimbursement checks.  *See Ortiz v. San Miguel Cnty.*, 955 F.Supp. 1338, 1343 (D.N.M. 1996) (noting that close temporal proximity between election and employee's termination was evidence of retaliation based on political affiliation).

It is undisputed that the Individual Defendants Wilson, Johnson and Garcia voted in favor of Defendant Burton's recommendation and signed the Village Council's Findings of Fact and Conclusions of Law.  The Village Council's Findings of Fact and Conclusions of Law stated, *inter alia*, that

> 9.  Emboldened by *their* victory in the District Court, *Chavez and Klaus continued the practice of hiding information from the Council by neglecting their duty to provide the Council with information regarding unbudgeted expenditures*, namely the January 5, 2018, unlawful PERA reimbursement expenditure of $64,523.65, including $10,752.58 paid Klaus and $8,707.99 paid Chavez, done without prior budget authority, which is in violation of § 3-12-3A NMSA 1978 and the Governmental Conduct Act Section 10-16-3(A-B).
>
> . . .
>
> 19.  *Together Chavez and Klaus signed the illegal PERA payments without informing the Council* that the amounts were not budgeted in the Council's approved budget, or that a budget adjustment resolution would be necessary *and failed to inform the Council of the issuance of the checks* depriving the Council of its opportunity to exercise its lawful authority to approve and have oversight over Village finances as required by NMSA 1978, § 3-12-3A also depriving the public of its right to notice and opportunity to attend the Council meeting to discuss the issuance of the checks, or to view a record of the Council's decision.

Doc. 144-13 (emphasis added).

Here, Plaintiff has provided evidence that despite the Forensic Report's findings and relevant testimony to the contrary, the Individual Defendants viewed Plaintiff as acting in collaboration with Mayor Chavez.  The Court, therefore, concludes that Plaintiff has provided evidence creating genuine issues of material fact, which is better left resolved by a jury, whether Plaintiff's association with Mayor Chavez was a substantial or motivating factor in newly elected

Mayor Bruton and the Village Council's decision to terminate Plaintiff for her alleged failure to inform the Village Council regarding the PERA reimbursement checks.

###    B.    <u>**Affirmative Defense**</u>

Defendants argue that the undisputed material facts establish that Plaintiff played a "large role" in the entire process leading to the issuance of the PERA reimbursement checks which indisputably should have gone before the Village Council for approval.  Defendants contend that it is undisputed that the Village Council terminated Plaintiff for her failure to provide any information to the Village Council.  Defendants contend that no reasonable factfinder presented with these incontrovertible facts could conclude that a preponderance of the evidence supports that the Village Council would have terminated Plaintiff even in the absence of Plaintiff's alleged protected conduct.  The Court disagrees.

Plaintiff has provided evidence creating genuine issues of material fact regarding whether she had a duty or obligation to inform the Village Council about the issuance of the PERA reimbursement checks in light of Mayor Chavez's decision not to do so.  Plaintiff has also produced evidence that the Financial Director, Ms. Coleman, who was involved in issuing and signing the PERA reimbursements checks, and who also did not inform the Village Council before doing so, was not disciplined.  Moreover, Plaintiff has presented evidence that Defendants were in possession of the Forensic Report in June 2018, and that one year later in July 2019, the Village Council voted to increase Plaintiff's salary by approximately 50%.  It was only after Defendant Bruton became mayor, and within two months of doing so, that proceedings were initiated to terminate Plaintiff's employment based in large part on the PERA reimbursement issue.  The Court, therefore, concludes that Plaintiff has produced sufficient evidence for a

reasonable jury to not accept that Plaintiff's discharge would have occurred regardless of any discriminatory political motivation.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that Plaintiff has provided evidence creating genuine issues of material fact that Plaintiff's association with Mayor Chavez was a substantial or motivating factor in newly elected Mayor Bruton and the Village Council's decision to terminate Plaintiff for her alleged failure to inform the Village Council regarding the PERA reimbursement checks. The Court further finds that Plaintiff has produced sufficient evidence for a reasonable jury to not accept that Plaintiff's discharge would have occurred regardless of any discriminatory political motivation.

**IT IS THEREFORE ORDERED** that Defendants' *Motion for Partial Summary Judgment Against WPA and First Amendment Claims*, Doc. 144, is deemed **MOOT IN PART** and **DENIED IN PART**.

**JOHN F. ROBBENHAAR**
**United States Magistrate Judge**
**Presiding by Consent**

31